**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ROYCE J. HASSELL** | § | **Case No. 19-30694** |
| | § | |
| **Debtor.** | § | **(Chapter 11)** |

---

**COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**
**OF ROYCE J. HASSELL**

---

**JONES MURRAY BEATTY, LLP**
Erin E. Jones
State Bar No. 24032478
erin@jmbllp.com
4119 Montrose Suite 230
Houston, Texas 77006
Telephone: 713-529-1999
Fax: 713-529-3393
**COUNSEL TO ROYCE J. HASSELL, DEBTOR IN POSSESSION**

Dated: June 4, 2019

**PLEASE READ THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION CAREFULLY. THIS DOCUMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION WHICH IS ENCLOSED WITHIN THIS COMBINED DOCUMENT. THE PURPOSE OF THIS DISCLOSURE STATEMENT IS TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE CONSIDERING THE PLAN. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE ENTIRE DISCLOSURE STATEMENT AND PLAN CAREFULLY. ROYCE HASSELL BELIEVES THAT ACCEPTANCE OF THE PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE DEBTOR AND ITS CREDITORS AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO HOLDERS OF ALLOWED CLAIMS AGAINST THE DEBTOR. ROYCE HASSELL BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S CREDITORS AND INTEREST HOLDERS AND RECOMMEND THAT ALL HOLDERS OF CLAIMS VOTE TO ACCEPT THE PLAN.**

**ROYCE HASSELL'S COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION HAS BEEN SET FOR A FINAL HEARING ON APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN OF**

**REORGANIZATION ON _____, 2019 AT _____ __.M., COURTROOM 404, 515 RUSK, HOUSTON, TEXAS 77002.**

**CREDITORS AND INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE COMPLETED BALLOT INCLUDED WITH THE DISCLOSURE STATEMENT AND ACCORDING TO THE DIRECTIONS SET FORTH IN THE ORDER CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT. VOTES WILL BE TABULATED WITH RESPECT TO THE PLAN AND CLAIMS WILL BE CLASSIFIED AND DISTRIBUTIONS MADE IN ACCORDANCE WITH THE PLAN, TO THE EXTENT THE DEBTOR DOES NOT RECEIVE SUFFICIENT VOTES FOR CONFIRMATION OF HIS PLAN, THE PLAN MAY BE WITHDRAWN.**

Royce J. Hassell ("Royce Hassell" or "Debtor") – the debtor-in-possession in this chapter 11 case – respectfully submits this Combined Joint Disclosure Statement and Plan of Reorganization (the "Plan" or the "Disclosure Statement", as the context requires) pursuant to §§ 1125 and 1129 of Title 11 of the United States Code, as amended (the "Bankruptcy Code").

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

2

**ARTICLE I**
**DESCRIPTION OF THE PLAN AND DISCLOSURE STATEMENT**

**A.      Summary of Plan**

The plan of reorganization is the contractual document which, when approved by the Bankruptcy Court, governs the treatment of the Debtor's pre-petition claims (claims that arose prior to the date of filing of bankruptcy of the Debtor (the "Petition Date")) and, in some instances, post-petition claims (claims that arose after the Petition Date).  Upon the Effective Date of the Plan, the Reorganized Debtor will liquidate all non-exempt assets of Royce J. Hassell (the "Debtor"), to the extent necessary, including but not limited to any real or personal property, assets, and causes of action, the proceeds of which will be distributed under the Plan to pay the holders of Administrative Claims against the Debtor, to pay the administrative expenses of the Reorganized Debtor, and to pay holders of Allowed Secured, Priority, and Unsecured Claims against the Debtor.

After entry of the Confirmation Order, all objections to claims and all causes of action, avoidance actions, and subordination claims shall be prosecuted by the Debtor or Reorganized Debtor unless otherwise provided herein.  The Debtor or Reorganized Debtor, as provided herein,  may object to the allowance of claims for which liability, in whole or in part, is disputed for whatever reasons, even if claims were not scheduled by the Debtors as disputed, contingent or unliquidated.  All objections to claims must be filed within one year following entry of a Confirmation Order, unless extended by the Bankruptcy Court.

As the debtor-in-possession, Royce Hassell has presented this Plan and is proceeding to confirmation of the Plan either under Bankruptcy Code § 1129(a) or § 1129(b).  Royce Hassell believes that the treatment afforded creditors of the Debtor under this Plan is far superior to a treatment the creditors would receive under a chapter 7 of the Bankruptcy Code. Royce Hassell urges creditors to vote in favor of the Plan and support confirmation of the Plan.

The purpose of this Combined Disclosure Statement and Plan of Reorganization (the "Disclosure Statement" or "Plan") is to provide creditors and interest holders of the Debtor with adequate information to enable them to make an informed judgment concerning the method by which the Debtor plans to reorganize and pay its creditors.  The Disclosure Statement describes: (i) the Debtor and significant events during the chapter 11 case (the "Bankruptcy Case"); (ii) how the Plan proposes to treat claims or interests of the type you may hold; (iii) classification of claims and/or interests as well as who can vote on or object to the Plan; (iv) the factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the plan; (v) Why Royce Hassell believes the Plan is feasible and how the treatment of your claim or interest under the Plan compares to what  you would receive on account of your claim or interest in a hypothetical chapter 7 bankruptcy case; and (vi) the effects of confirmation of the Plan.

The Plan contains the exclusive and final statement of the rights of the Debtor, its creditors, interest holders and other interested parties, and sets forth what (if anything) each of those groups will receive and how they will receive it.  It is strongly recommended that the Disclosure Statement

be read in its entirety.  If the Bankruptcy Court confirms the Plan, it will become binding on the Debtor, all creditors, interest holders and other interested parties.

You are also urged to read the contents of the Disclosure Statement in order to determine what rights you may have to vote on or object to the method by which the Debtor plans to reorganize and before making any decision on any such course of action.  ***Particular attention should be directed to the provisions of the Plan affecting or impairing your rights, as they existed before the institution of this case.  Please note, however, that this document cannot tell you everything about your rights. You are also encouraged to consult with your lawyers and/or advisors as you review and consider the Plan to enable you to obtain more specific advice on how the Plan will affect you.***

Creditors whose claims are impaired have the right to vote to accept or reject the Plan. Generally speaking, a claim or interest is impaired if the legal, contractual or equitable rights of the holder of the claim or interest is altered by the plan of reorganization. A class of creditors accepts the plan of reorganization when creditors holding two-thirds in amount of such class and more than one-half in number of the claims in such class who actually cast their ballots votes to accept the Plan.  The record date for purposes of voting on this Plan shall be the same date as the Disclosure Statement Order ("Record Date").

In this case, the Plan contains four (4) classes of claims.  The Plan impairs holders of Class 2, 3, and 4 Claims. ***Accordingly, votes will be solicited from Class 2, 3, and 4.***

The following materials are included with this Plan and Disclosure Statement:

- A copy of an order (the "Disclosure Statement Order") that establishes: (a) the date by which objections to confirmation of the Plan and Disclosure Statement must be served and filed, (b) the date by which all votes with respect to the Plan must be cast, (c) the date of the hearing in the Bankruptcy Court to consider confirmation of the Plan and final approval of the adequacy of information contained in the Disclosure Statement, and (d) other relevant information; and

- A Ballot for holders of Claims to vote with respect to the Plan.

The adequacy of the disclosures in the Disclosure Statement was approved by the Bankruptcy Court by the Disclosure Statement Order, entered on _____, 2019 after notice and hearing pursuant to § 1125 of the Bankruptcy Code.  The Bankruptcy Court found that the information contained herein is of the kind, and is sufficiently detailed, to enable a hypothetical, reasonable investor typical of the class being solicited to make an informed judgment concerning the Plan.  **HOWEVER, THE BANKRUPTCY COURT HAS NOT CONFIRMED THE PLAN, NOR IS THIS DOCUMENT OR THE DISCLOSURE STATEMENT ORDER TO BE CONSTRUED AS APPROVAL OR ENDORSEMENT OF THE PLAN AND DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT.**

As stated in the Disclosure Statement Order, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan _____, 2019 at [__]:00 [__]. m. (the "Confirmation Hearing"). Holders of claims and interests, as well as other parties in interest, may attend this hearing. Objections to confirmation of the Plan and Disclosure Statement, if any, must be in writing and filed with the Bankruptcy Court and served, so as to be received no later than 5:00 p.m. on _____, 2019, upon all of the following parties:

> Jones Murray & Beatty LLP
> Counsel to Royce J. Hassell
> 4119 Montrose, Suite 230
> Houston, Texas 77006
> Attn:   Erin E. Jones (erin@jmbllp.com)

---

All Ballots must be completed in full and signed to be counted in the tabulation of the votes and must be **received** no later than 5:00 p.m. on _____, 2019.

---

> Jones Murray & Beatty LLP
> Counsel to Royce J. Hassell
> 4119 Montrose, Suite 230
> Houston, Texas 77006
> Attn:   Erin E. Jones (erin@jmbllp.com)

This document contains a description of the assets, liabilities and affairs of the Debtor, a description and analysis of the Plan and an analysis of alternatives to the Plan.

## B.      Representations/Limitations

**NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT OR THE SOLICITATION OF VOTES THEREON TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DOCUMENT AND THE EXHIBITS ANNEXED HERETO OR INCORPORATED HEREIN BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.**

**THE INFORMATION CONTAINED HEREIN HAS BEEN PREPARED BY THE DEBTOR IN GOOD FAITH, BASED UPON UNAUDITED INFORMATION AVAILABLE TO THE DEBTOR AS OF THE DATE HEREOF. ALTHOUGH THE DEBTOR HAS USED ITS BEST EFFORTS TO ENSURE THAT SUCH INFORMATION IS ACCURATE, THE INFORMATION CONTAINED HEREIN IS UNAUDITED. THE DEBTOR BELIEVES THAT THIS PLAN AND DISCLOSURE STATEMENT COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE.**

**THE STATEMENTS CONTAINED IN THIS PLAN AND DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS PLAN AND DISCLOSURE STATEMENT SHALL NOT CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DOCUMENT AND THE DATE THE MATERIALS RELIED UPON IN PREPARATION OF THIS PLAN AND DISCLOSURE STATEMENT WERE COMPILED.**

**THIS DOCUMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS OR INTERESTS AGAINST THE DEBTOR.**

**FAILURE BY A CREDITOR OR INTEREST HOLDER TO TIMELY CAST A BALLOT OR FILE AN OBJECTION TO CONFIRMATION OF THE PLAN AND DISCLOSURE STATEMENT IN ACCORDANCE WITH THE DISCLOSURE STATEMENT ORDER AND THE BANKRUPTCY CODE SHALL CONSTITUTE AN AGREEMENT BY SILENCE TO ACCEPT THE TERMS CONTAINED IN THE PLAN AND DISCLOSURE STATEMENT.**

**THIS PLAN AND DISCLOSURE STATEMENT PROVIDES FOR INJUNCTIVE RELIEF AS TO THE DEBTOR AND HIS ASSETS.   THE PERMANENT INJUNCTIONS SET FORTH IN THE PLAN AND DISCLOSURE STATEMENT WILL APPLY TO HOLDERS OF ANY CLAIM, INTEREST, LIEN, ENCUMBERANCE OR DEBT, WHETHER SECURED OR UNSECURED, GRANTED PRIORITY STATUS, INCLUDING PRIORITY TAX (FEDERAL OR STATE), NON-PRIORITY UNSECURED CLAIM OR ANY INTEREST IN THE DEBTOR. CREDITORS AND INTEREST HOLDERS WILL BE BOUND BY THIS INJUNCTIVE PROVISION UNLESS CREDITORS TIMELY FILE OBJECTIONS IN ACCORDANCE WITH THE PROVISIONS SET FORTH IN THE DISCLOSURE STATEMENT ORDER OR HEREIN AND APPEAR AT THE CONFIRMATION HEARING, TO PROSECUTE ANY OBJECTION.**

**ROYCE HASSELL URGES ALL HOLDERS OF CLAIMS TO ACCEPT THE PLAN.**

## ARTICLE II
## DEFINITIONS AND INTERPRETATION

      1.1   <u>Rules of Interpretation</u>.  For purposes herein:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine,

6

feminine and the neutral gender; (ii) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference herein to an existing document or exhibit having been filed or to be filed means that document or exhibit, as it may thereafter be amended, modified or supplemented; (iv) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (v) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby. All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

      1.2    <u>Exhibits and Schedules.</u>  All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into, and are a part of the Plan, as if set forth herein.  All exhibits and schedules to the Plan, including the Plan Supplement, shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) ten (10) days prior to the commencement of the Confirmation Hearing and (ii) five (5) days prior to the deadline for filing objections to confirmation of the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court or is available pursuant to a written request made directly to Erin E. Jones at <u>erin@jmbllp.com</u>.

      1.3    <u>Definitions</u>.  Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code or the Bankruptcy Rules, have the meanings ascribed to them in the Bankruptcy Code or the Bankruptcy Rules.  Unless otherwise provided in this Plan, the terms defined in this Section (which appear in this Plan as capitalized terms) have the respective meanings as set forth herein, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

      2.3.2    "<u>Administrative Expense Claim</u>" means Claims that have been timely filed before the Administrative Claims Bar Date, pursuant to the deadline and procedure set forth in the Plan or Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b) (including claims under sections 503(b)(3)(F) and 503(b)(9)), 507(b) or 1114(e)(2) of the Bankruptcy Code), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and

7

(ii) all fees and charges assessed against the Estate under chapter 123 of title 28 of the U.S. Code, 28 U.S.C. §§ 1911–1930); provided, however, that such Administrative Claims shall not include claims for Accrued Professional Compensation.

2.3.3    "Administrative Claims Bar Date" means the first Business Day that is thirty (30) days after the entry of the Confirmation Order and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim.

2.3.4    "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

2.3.5    "Allowed" means, means, with respect to any Claim or Interest, except as otherwise provided herein: (i) a Claim or Interest that has been scheduled by the Debtor in its Schedule as other than disputed, contingent or unliquidated; (ii) a Claim or Interest that has been allowed by a Final Order; (iii) a Claim or Interest that is allowed: (a) in any stipulation of amount and nature of such Claim or Interest executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (b) in any stipulation with the Debtor or the Liquidating Trustee, as applicable, of the amount and nature of such Claim or Interest executed on or after the entry of the Confirmation Order; or (c) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (iv) a Claim or Interest that is allowed pursuant to the terms of this Plan; or (v) a Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Bar Date.  Any claim that has been or is hereafter listed in the Schedule as contingent, unliquidated, or disputed, and for which no proof of claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor or the Liquidating Trustee, as applicable.  For the avoidance of doubt, a proof of claim filed after the General Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim. "Allow" and "Allowing" and "Allowed" shall have correlative meanings.

8

2.3.6    "<u>Assets</u>" means all property of the Estate and causes of action as defined in the Bankruptcy Code and provided by State and Federal law.

2.3.7    "<u>Avoidance Actions</u>" include all avoidance actions under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

2.3.8    "<u>Bankruptcy Case</u>" means the bankruptcy case initiated by the Debtor when he filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on February 4, 2019, enumerated as Case No. 19-30694.

2.3.9    "<u>Bankruptcy Code</u>" means sections 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time and as applicable to the Chapter 11 Cases.

2.3.10   "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

2.3.11   "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas, the Local Rules of the Bankruptcy Court, and general orders and chamber procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

2.3.12   "<u>Bar Date</u>" means June 12, 2019, the last date set by the Bankruptcy Court for filing non-governmental Claims in this Bankruptcy Cas

2.3.13   "<u>Royce Hassell</u>" means Royce J. Hassell, the debtor-in-possession in the Bankruptcy Case.

2.3.14   "<u>Business Day</u>" means any day which is not a Saturday, Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

2.3.15   "<u>Cash</u>" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of

America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

2.3.16 "Causes of Action" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims and cross claims, now owned or hereafter acquired by the Debtor, the Debtor in Possession, and/or the Estate that are or may be pending or on or have accrued prior to the Effective Date against any person or entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that "*Causes of Acton*" shall exclude any Causes of Action released in the Plan.

2.3.17 "Chapter 11 Case" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned Case No. 19-30694.

2.3.18 "Claim" means a claim against the Debtor or its property; as such term is defined in Section 101(5) of the Bankruptcy Code.

2.3.19 "Claimant" means the holder of any Claim against the Debtor or its property, or of any Equity Interest.

2.3.20 "Claim Objection Bar Date" means the deadline for objecting to scheduled Claims or proofs of Claim, which shall be thirty (30) days after the Effective Date; provided, however, that the Liquidating Trustee may seek one or more extensions of this date by filing an appropriate motion with the Bankruptcy Court.

2.3.21 "<u>Class</u>" means a category of Claims or Interests as set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

2.3.22 "<u>Collateral</u>" means any property or interest in property of the Estate subject to a Lien, not otherwise subject to avoidance under the Bankruptcy Code, to secure the payment or performance of a Claim.

2.3.23 "<u>Confirmation</u>" or "<u>Confirmation of the Plan</u>" means the approval of this Plan pursuant to Section 1129 of the Bankruptcy Code by the Bankruptcy Court.

2.3.24 "<u>Confirmation Date</u>" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket in the Chapter 11 Case.

2.3.25 "<u>Confirmation Hearing</u>" means the hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider Confirmation of this Plan as such hearing(s) may be continued, rescheduled or delayed.

2.3.26 "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which order shall be in form and substance satisfactory to the Debtor and the Creditors' Committee.

2.3.27 "<u>Consummation</u>" means the occurrence of the Effective Date.

2.3.28 "<u>Creditor</u>" has the meaning set forth in section 101(10) of the Bankruptcy Code.

2.3.29 "<u>Court</u>" means either the Bankruptcy Court presiding in the Bankruptcy Case or court of competent jurisdiction.

2.3.30 "<u>Contingent Claim</u>" means any Claim that has not matured and is dependent upon an event that has not occurred or may never occur.

2.3.31 "<u>Debtor</u>" means Royce J. Hassell, as debtor-in-possession, under Case No. 19-30694.

2.3.32 "<u>Deficiency Claim</u>" means a General Unsecured Claim to the extent the the amount by which an Allowed Secured Claim exceeds the value of any Collateral securing such Claim as may

11

be determined by the Bankruptcy Court in accordance with section 506(a) of the Bankruptcy Code.

2.3.33 "<u>Disclosure Statement</u>" means those portions of the *Combined Disclosure Statement and Plan of Reorganization*, dated _____ [__] 2019, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time in compliance with the Disclosure Statement Order, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

2.3.34 "<u>Disclosure Statement Order</u>" means the order conditionally approving the Disclosure Statement entered by the Bankruptcy Court on _____ [__], 2019 [ECF No. [●]].

2.3.35 "<u>Disputed</u>" means any Claim or Interest or any portion thereof: (i) that is listed on the Schedule as unliquidated, disputed or contingent; (ii) as to which the Debtor, or any other party in interest with standing has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (iii) otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

2.3.36 "<u>Disputed Reserve</u>" means the reserve fund created pursuant to Article VI herein.

2.3.37 "<u>Distributions</u>" means the distributions of Cash or other consideration on account of Allowed Claims to be made under and in accordance with the Plan.

2.3.38 "<u>Effective Date</u>" means the date specified by the Debtor in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be no later than 10 days after entry of a Confirmation Order.

2.3.39 "<u>Entity</u>" has the meaning set forth in section 101(15) of the Bankruptcy Code.

2.3.40 "<u>Estate</u>" means the estate of Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

2.3.41  "<u>Executory Contracts and Unexpired Leases</u>" means all contracts and leases between the Debtor and any third-parties that are "executory contracts" or unexpired leases as such terms are used in section 365 of the Bankruptcy Code.

2.3.42  "<u>Exculpated Person</u>" means Royce Hassell and his agents, attorneys, and representatives.

2.3.43  "<u>Executory Contracts</u>" mean all "executory contracts," as such term is used in Section 365 of the Bankruptcy Code, to which the Debtor was party as of the Effective Date.

2.3.44  "<u>Final Decree</u>" means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

2.3.45  "<u>Final Order</u>" means an order, determination or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket in the Debtor's Chapter 11 Case (or on the docket of such other court of competent jurisdiction) which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no appeal or petition for certiorari or appropriate motion has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order, determination or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice and as to which the time for any subsequent appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no such subsequent appeal or petition for certiorari or appropriate motion has been timely taken, or has been resolved by the court to which the order, determination or judgment was so subsequently appealed.

2.3.46  "<u>General Unsecured Claims</u>" means all unsecured Claims asserted against the Debtor.

2.3.47  "<u>Governmental Unit</u>" means the same as provided in section 101(27) of the Bankruptcy Code.

2.3.48  "<u>Impaired</u>" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

2.3.49  "<u>Insider</u>" has the meaning set forth in section 101(31) of the Bankruptcy Code.

13

2.3.50 "Insider Claims" means Claims or Causes of Action held by the Debtor against any Insider of the Debtor and vice-versa.

2.3.51 "Interest Holder" means any holder or owner of an equity interest in the Debtor.

2.3.52 "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.3.53 "Litigation Assets" means any and all claims or causes of action which a trustee, the Debtor, the Estate or the Reorganized Debtor or other appropriate party in interest may assert on behalf of the Estate under applicable State or Federal law or Chapter 5 of the Bankruptcy Code, including but not limited to any avoidance, recovery, subordination action, or objection to any Claim.

2.3.54 "Person" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or any other entity as such term is defined in section 101(15) of the Bankruptcy Code.

2.3.55 "Petition Date" means February 4, 2019, the date on which the Debtor filed the Chapter 11 Case.

2.3.56 "Plan" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all applicable exhibits, supplements, appendices and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, which shall be in form and substance acceptable to the Debtor.

2.3.57 "Plan Assets" means all property of the Estate, as of the Effective Date, and all interest and earnings thereon.

2.3.58 "Plan Documents" means such other documents required to be filed pursuant to this Plan or filed as a Plan Document by the Royce Hassell.

2.3.59 "Plan Supplement" means, collectively, (i) the exhibits to any *Notice of Supplement to the Debtor's Plan of Reorganization*, including, among other documents relevant to the implementation of the Plan, and (ii) any additional

14

supplement(s) to the Plan which additional supplement(s) shall in each case be in form and substance acceptable to the Debtor.

2.3.60  "Priority Claims" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code.

2.3.61  "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.3.62  "Pro Rata" or "Pro Rata Portion" means, at any time, the proportion that the dollar amount of an Allowed Claim in a particular Class bears to the aggregate dollar amount of all Allowed Claims in such Class.

2.3.63  "Professional" means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

2.3.64  "Professional Fees" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

2.3.65  "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

2.3.66  "Professional Fee Claim Bar Date" means the date that is forty-five (45) days after the Effective Date.

2.3.67  "Professional Fee Reserve" means a reserve funded on the Effective Date from the Reorganized Debtor's Available Cash, as of the Effective Date, which shall initially be funded in an amount equal to the estimated Accrued Professional Compensation for the Debtor through the Effective Date provided by each Professional before the Effective Date. The Professional Fee Reserve shall not be encumbered.

2.3.68  "Releasees" mean the respective Professionals of the Debtor in this Chapter 11 Case; *provided*, *however*, that each such Person or Entity shall only be released as specifically set forth in the Plan.

15

2.3.69 "<u>Representatives</u>" means, with regard to an Entity, its direct and indirect shareholders, managers, officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals) and each of their predecessors, successors and assigns

2.3.70 "<u>Schedule</u>" means the schedule of assets and liabilities, schedule of executory contracts and statement of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code.

2.3.71 "<u>Representative</u>" means, with respect to any specified Entity, the officers, directors (or the functional equivalent, if any), employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, affiliates or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended.

2.3.72 "<u>Secured Claim</u>" means a Claim that is (i) secured as provided by Section 506(a) of the Bankruptcy Code, in whole or in part, by a Lien on any Asset or Property of the Debtor that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Collateral securing such Claim; or (ii) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the amount subject to such setoff.

2.3.73 "<u>Subordination Claims</u>" means Unsecured Claims that are subordinated in payment to other Unsecured Claims by either contract or by an order of the Court.

2.3.74 "<u>Taxing Authorities</u>" means any state or local governmental entities who have Claims for unpaid taxes against the Debtor.

2.3.75 "<u>U.S. Trustee</u>" means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Southern District of Texas

2.3.76 "<u>Unsecured Claims</u>" means Claims against the Debtor, whose repayment is not supported by any property of the Estate under section 541 of the Bankruptcy Code.

2.3.77 "<u>Unimpaired</u>" means, with respect to a Claim, Interest, or Class of Claims or Interests, not Impaired.

16

2.3.78 "<u>Unliquidated Claim</u>" means any Claim that is undetermined as to amount.

2.3.79 "<u>Unsecured Claim</u>" means any Claim that is not an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a Subordinated Claim, or an Assumed Liability.

**ARTICLE III**
**BACKGROUND**

**A.      Chapter 11 Bankruptcy Case**

On February 4, 2019, the Debtor filed a voluntary petition for relief (the "<u>Chapter 11 Case</u>") under Chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Bankruptcy Court</u>"). The Debtor continues to administer its assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

A 341 meeting of creditors was conducted by the United States Trustee on March 14, 2019, the Bankruptcy Court set June 12, 2019 as the deadline for filing proofs of claim in the Chapter 11 Case (the "Bar Date").

On February 4, 2019, the Debtor filed schedule D, E, F and the List of 20 Largest Creditors (Docket No. 4).  On February 19, 2019, the Debtor filed his schedule A, B, C, G, H, I, J and Statement of financial affairs (Docket No. 14)(Docket Nos. 4 and 14 are referred to collectively as the "Schedules").  The Schedules set forth the Assets of the Debtor, various claims against the Estate as well as other information pertaining to transactions and litigation to which the Debtor was a party prior to the Petition Date.

On April 3, 2019, the Court entered an Order Authorizing the Debtor to Employ Jones Murray & Beatty, LLP as its general bankruptcy counsel ("JMB Employment Order", Docket No. 27).

The Debtor filed a monthly operating report for February 2019 (Docket No. 23) and for March 2019 (Docket No. 42).

On March 29, 2019, AMI Lenders, Inc., a creditor with a secured claim against real property of the Debtor located in Walker County, filed a Motion for Relief from Stay ("AMI Lift Stay Motion", Docket No. 26).

The Court held a preliminary hearing on the AMI Lift Stay Motion on April 12, 2019 and continued the hearing to May 9, 2019.  The Court instructed counsel for the Debtor to initiate an adversary proceeding against James C. Hassell by May 3, 2019 if he refused to agree to release liens on the Debtor's real property.  On May 3, 2019, counsel for James C. Hassell agreed that James C. Hassell would file releases of liens on the Debtor's real property by May 17, 2019. James C. Hassell released his lien on the Walker County property before the hearing on the Ranch Sale

Motion (as defined herein) on May 9, 2019. The balance of the lien releases were still not recorded as of May 28, 2019. As of the June 4, 2019, counsel for James C. Hassell has not confirmed that lien releases have been filed for the remainder of the Debtor's property. The Debtor believes that such liens are wrongful and have no basis in law or fact, that James C. Hassell's continued failure to release such liens is a willful and intentional violation of the stay, and that such liens could be avoided in an adversary proceeding. The Debtor expressly retains all claims against James C. Hassell relating to his liens on the Debtor's property, including but not limited to claims for violation of the automatic stay under section 362 of the Bankruptcy Code.

On April 26, 2019, the Debtor filed an emergency motion to sell real property located in Walker County for $1,402,239 ("Ranch Sale Motion"). An order authorizing the Debtor to sell the Walker County real property for $1,402,239 as set forth in the Ranch Sale Motion ("Ranch Sale Order", Docket No. 38) was entered on May 9, 2019.

On May 3, 2019, the Debtor removed two state court cases, initiating adversary proceedings 19-03452 and 19-03453 ("Removed Cases").

On May 28, 2019, Randy Williams, the chapter 7 trustee in the bankruptcy cases of R. Hassell Holding Company Inc. ("RHHC"), R. Hassell & Co. Inc. ("RHC"), and R. Hassell Builders, Inc. ("RHB", together with RHHC and RHC, the "Trustee Estates" or the "R. Hassell Entities"), filed a motion to compromise a multi-party dispute ("9019 Motion", Docket No. 41). A hearing on the 9019 Motion is set for June 11, 2019. If the 9019 Motion is approved, certain claims belonging to the Trustee Estates will be abandoned to the R. Hassell Entities. The Debtor believes such claims are valuable and as the 100% owner of the R. Hassell Entities, he intends to prosecute such claims. Any recovery by the R. Hassell Entities will be distributed in accordance with the corporate governance documents of the respective entity and the funds available after payment of income taxes and administrative expenses, if any, will be used for Distribution to holders of allowed claims and interests in this Chapter 11 Case.

Royce Hassell is seeking to confirm this Plan under Bankruptcy Code section 1129(a) or section 1129(b). Royce Hassell believes that the treatment afforded creditors under his Plan is far superior to a treatment the creditors would receive under a chapter 7 of the Bankruptcy Code or under any alternate plan that could be proposed by any other party. After the claims resolution process is complete and upon liquidation of non-exempt assets, Royce Hassell believes that there will be sufficient funds available to pay the administrative expenses in this Chapter 11 Case, the expenses associated with the liquidation of his interests in real property and litigation claims, and to pay creditors with allowed claims in full.

## B.    Events Leading to Bankruptcy

The Debtor has a number of business interests in the construction industry and successfully operated construction businesses in the Houston area for decades. Three entities in which the Debtor owns an interest are currently debtors in a chapter 7 bankruptcy case due to financial difficulties set into motion by the tortious actions of various third parties and the ensuing litigation. Those three entities in chapter 7 are: (i) R. Hassell Holding Company Inc. ("RHHC"); (ii) R. Hassell & Co. Inc. ("RHC"); and (iii) R. Hassell Builders Inc. ("RHB"). Randy Williams

18

("Trustee") was appointed as the Chapter 7 Trustee for RHHC, RHC, and RHB after conversion of the case to chapter 7 from chapter 11 of the Bankruptcy Code. As a result of the conversion of chapter 11 cases of RHHC, RHC, and RHB, the Debtor lost control over a valuable asset, which the Trustee has now proposed to settle at a fraction of its value. The conversion of those three cases to cases under chapter 7 was a significant factor leading to the bankruptcy filing of the Debtor. The inability to earn regular income due to the destruction of the value of RHHC, RHC, and RHB (which included interests in various joint ventures) was caused by the malicious and tortious conduct of various third parties and the negligence of other third parties and this was a significant factor leading to the Debtor filing this Chapter 11 Case.

The Debtor also has an interest in a number of operating entities not controlled by him, including Hassell Construction Co. Inc. ("HCCI") and Hassell Construction Group, LLC ("HCG"), both of which are believed to have value. HCCI and HCG are controlled by James C. Hassell, who is the Debtor's father. HCCI and HCG have disregarded the Debtor's interest in those entities and have stripped the value out of them to deprive the Debtor of valuable property interests. Such conduct by HCCI, HCG, and James C. Hassell was a significant factor leading to the Debtor filing this Chapter 11 Case.

The Debtor has an interest as a beneficiary of the James C. Hassell Intervivos Trust (the "JCH Trust"), which is also believed to have value. The trustee of the JCH Trust (a sibling of the Debtor) and James Hassell conspired to strip assets from the JCH Trust and to deprive the Debtor of valuable property interests. Such conduct by the JCH Trust, its trustee, and James C. Hassell was a significant factor leading to the Debtor filing this Chapter 11 Case.

As a result of complex and acrimonious litigation over many years between the Debtor and various third parties, which largely include his father and his siblings (in various capacities and through various entities) and other parties in league with them, the value of the Debtor's business interests have been severely damaged. The Debtor expended substantial resources paying attorneys and the costs of litigation in an effort to save the value of his business interests, but the financial strain became too much and it became necessary to seek bankruptcy protection in order to protect other valuable assets, such as his real property interests.

Additionally, James C. Hassell refused to release liens on the real property of the Debtor, which liens the Debtor believes had no basis in law or fact. Despite repeated requests for years before the Petition Date, James C. Hassell refused to release such liens. The Debtor even obtained an arbitration award voiding such liens, which award was later confirmed by the state district court. But James C. Hassell still refused to release his liens. The Debtor attempted for years to sell the real property but the cloud on title from James C. Hassell's wrongful liens prevented the Debtor from being able to sell his real property in a non-distressed manner and required the Debtor to carry all the costs associated with ownership of the real property. Eventually those costs became overwhelming and the Debtor needed to seek bankruptcy protection in order to avoid James C. Hassell's liens so that the real property could be liquidated and creditors could be paid. James C. Hassell's conduct in refusing to release the liens on the Debtor's real property has resulted in significant diminution in the value of the real property and this was a significant factor leading to the Debtor filing this Chapter 11 Case.

19

While the foregoing is not intended to be an exhaustive description of all factors leading to the filing of this Chapter 11 Case, it is intended to provide an overview of some reasons why the Debtor experienced financial difficulties and legal challenges that resulted in the filing of this Chapter 11 Case.

## ARTICLE IV
## SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

The formulation of a chapter 11 plan is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the holders of claims against and interests in a debtor's estate. A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors and interest holders, and the prior obligations owed by the debtor to such parties are compromised and exchanged for the treatments specified in the plan. If all classes of claims and equity interests accept a plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied.

Chapter 11 of the Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a chapter 11 plan in order for the bankruptcy court to determine that the class has accepted the plan. Rather, a class of claims will be deemed to have accepted the plan if the bankruptcy court determines that the plan has been accepted by more than a majority in number and at least two-thirds in amount of those claims actually voting in such class. Only the holders of claims who actually vote will be counted as either accepting or rejecting the plan.

In addition, classes of claims or equity interests that are not "impaired" under a chapter 11 plan are conclusively presumed to have accepted the plan under § 1126(f) of the Bankruptcy Code and, thus, are not entitled to vote. Furthermore, classes that are not to receive or retain any property under the plan are conclusively deemed to have rejected the plan under § 1126(g) of the Bankruptcy Code and are also, therefore, not entitled to vote. Accordingly, from those persons who hold claims or equity interests in an impaired class that receive or retain property are entitled to vote with respect to a plan.

Classes 2, 3, and 4 are impaired under the Plan and holders of claims in Classes and are entitled to vote on this Plan.

A.      **Brief Overview of the Plan Structure**

Subject entirely to the full disclosures made throughout this Plan and Disclosure Statement, the basis of the Debtor's Plan is vest all non-exempt assets of the Debtor in a Reorganized Debtor upon the Effective Date of the Plan, which will be liquidated as needed to preserve the assets under the Plan, to pay the Administrative Claims in the Chapter 11 Case, and to pay holders of Allowed Claims as set forth in the Plan.

B.      **Summary of Debtor's Plan to Reorganize**

The following chart provides a summary of treatment of each class of claims (other than administrative and priority tax claims) and an estimate of the recoveries of each class.   The treatment provided in this chart is for informational purposes only.

| Class | Estimated Allowed Claims[1] | Treatment | Estimated Recovery to Holders of Allowed Claims |
|---|---|---|---|
| Class 1 –Secured Claims | $4,165,000 | Not Impaired – Not entitled to vote | Secured by Collateral, Paid in full according to terms. |
| Class 2 -Priority Tax Claims | $44,500 | Impaired – entitled to vote | Paid 100% over time under the Plan from the proceeds of Assets liquidated by the Reorganized Debtor. |
| Class 3 -General Unsecured Claims | $628,998.91[2] | Impaired – entitled to vote | Paid 100% over time under the Plan from the proceeds of Assets liquidated by the Reorganized Debtor. |

---

[1] The claim amounts listed in this chart are estimates based on the claims filed in the official claims register in this Chapter 11 Case and the Debtor's Schedules.  Nothing herein shall be construed as an admission that any such claim should be allowed in a particular amount and the Debtor reserves the right to file claim objections as set forth in the Plan.

[2] Approximately $340,000 of this amount are claims filed in the claims register in this chapter 11 case that are disputed.

| Class 4 – Late Filed General Unsecured Claims | Unknown/None as of time of filing Plan and Disclosure Statement | Impaired – entitled to vote | Paid 100% over time under the Plan from the proceeds of Assets liquidated by the Liquidating Trust. |
|---|---|---|---|

The Debtor believes that the foregoing claims will be reduced substantially through the claim resolution process.  The Debtor's non-exempt assets consist primarily of real property holdings, business interests, and claims against third parties.  The Schedules reflect approximately $8,536,000 in value in real property, which are subject to various secured claims.  The Debtor believes that after payment of secured claims associated with the real property, there is approximately $4.3 million in equity.  The value of the Debtor's personal property, including but not limited to his business interests and claims against third parties is unknown but is expected to be significant.

**C.      Treatment of Fees of the United States Trustee, Administrative Claims and Priority Claims**

There are fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), which is a non-classified category of Claims.  All statutory fees, to the extent unpaid through the Confirmation Date, shall be paid by the Debtor within 30 days after the Effective Date.  From and after the Confirmation Date through the closing of the Chapter 11 Case, all statutory fees shall be paid by the Debtor (if prior to the Effective Date) or the Reorganized Debtor (if after the Effective Date). All such funds are anticipated to be paid from the proceeds from the sale of non-exempt assets of the Debtor.

Except for statutory fees and to the extent any entity entitled to payment of an allowed administrative expense claim agrees to a different treatment, each holder of an allowed administrative expense claim shall receive cash in an amount equal to any unpaid portion of such allowed administrative expense claim within seven (7) business days after the Effective Date and entry of a final non-appealable order approving the administrative expense.  All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, that have not been paid, released or otherwise settled, including all requests for payment of Professional Fees, must be filed with the Bankruptcy Court and served upon counsel for the Debtor and Reorganized Debtor no later than the Administrative Expense Claims Bar Date.  The Administrative Expense Claims Bar Date shall be thirty (30) days after entry of the Confirmation Order.  Any request for payment of Administrative Expense Claims that are not filed by the Administrative Expense Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Estate, the Debtor, or Liquidating Trustee or any of their respective Affiliates or Representatives.

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, release and discharge of and in exchange for such Claim, the amount of such Allowed Priority Tax Claim, in deferred cash payments, over a period not exceeding five (5) years after the date of assessment of such claim, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such

Claim.  The Plan reserves the right to pay Section 507(a)(8) Claims from cash available from sale of any Assets after payment of any closing costs and Allowed Secured Claims; providing however, that sufficient funds as has been determined by the Court are set aside for Allowed Claims holding a priority superior to the Priority Tax Claims.

## D.     Classification and Treatment of Claims

**Class 1 –Secured Claims:**  Class 1 consists of Secured Claims against the Debtor. Class 1 Claims are not impaired and not entitled to vote on the Plan.  Class 1 Claims are Secured Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim. Holders of Allowed Secured Claims in Class 1 shall receive payment in an amount equal to the amount of their Allowed Secured Claim upon the sale of Collateral securing its claim.

**Class 2 –Priority Tax Claims:**  Class 2 consists of Priority Tax Claims against the Debtor. At this time, only one Class 2 claim exists as set forth in the proof of claim filed by the Internal Revenue Service.  Class 2 claims will be paid over a period not exceeding five (5) years after the date of assessment of such claim, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim. Class 2 Claims are impaired and are entitled to vote on the Plan.

**Class 3 –General Unsecured Claims:**  Class 3 consists of holders of Allowed General Unsecured Claims. To date, there are approximately $628,998.00 in claims filed against the Debtor and/or scheduled by the Debtor.  At least three claims filed in the claims register, totaling $340,000 are disputed and the Debtor expects to object to such claims.  Under the confirmed Plan, Class 3 Claims shall be treated as follows: each holder of an Allowed General Unsecured Claim in Class 3 shall receive a pro-rata distribution from the proceeds of the sale of the Debtor's non-exempt by the Reorganized Debtor, subject to the administrative expenses of the Debtor, the administrative expenses of the Reorganized Debtor, which include professional fees and the actual and necessary costs of preserving and maintaining the value of the assets pending an orderly liquidation, and payment of claims in Class 1 and 2.  Class 3 claims will be paid over a period not exceeding five (5) years.  The holder of Class 3 Claim is impaired and is entitled to vote to support the Plan. Royce Hassell urges holders of General Unsecured Claims to vote in favor of the Plan.

**Class 4 – Late Filed General Unsecured Claims:**  Class 4 consists of all General Unsecured Claims whose amounts were disputed, unliquidated or contingent **AND** who filed a proof of claim after the Bar Date. At this time, no such claims are filed. No such claims exist at this time.

23

## ARTICLE V
## MEANS FOR IMPLEMENTATION, CONFIRMATION REQUIREMENTS, EFFECT OF CONFIRMATION, RISKS ASSOCIATED WITH PLAN, AND GENERAL PROVISIONS

**5.1 Post Confirmation Management**

Royce Hassell will be the responsible party for carrying out the terms of the Plan, upon confirmation of the Plan as the Reorganized Debtor. The Reorganized Debtor will be responsible for, among other things, (i) filing, prosecuting, and settling claim objections; (ii) prosecuting and settling the estate's causes of action; (iii) winding-up and closing the estate; (iv) abandoning any assets that are of no benefit to the creditors or the estate; (v) enforcing the payment of notes or other obligations of any person; (vi) opening and maintaining bank accounts on behalf of the Reorganized Debtor, if required; (vii) paying all lawful expenses, debts, charges, liabilities or claims of the Debtor as contemplated by the Plan and determining when such distributions shall be made with the time periods prescribed under the Plan; (viii) taking any and all action necessary to preserve and maximize the value of assets, including but not limited to undertaking necessary repairs, purchasing insurance with coverage and limits necessary to preserve the value of any assets pending liquidation, paying expenses associated with maintenance of the assets, and maintaining current on financial obligations associated with the assets; (ix) appointing, engaging, employing, supervising, and compensating consultants, accountants, technical, financial, real estate, or investment advisors or attorneys, agents or brokers, corporate fiduciaries, or depositories; (x) delegating any or all of the discretionary power and authority conferred with respect to all or any portion of the estate's property to any one or more reputable individuals or recognized institutional advisers or investment managers without liability for any action taken or omission made because of any such delegation except for such liability as is provided in the Plan; (xi) executing, delivering, and performing such other agreements and documents and to take or cause to be taken any and all such other actions as may be necessary or desirable to effectuate and carry out the purposes of the Plan; (xii) undertaking any action necessary to ensure that the Debtor is and remains in good standing and compliance with applicable federal, state, and local laws; (xiii) filing any federal, state, or local tax returns and provide for the payment of any related taxes; (xvi) filing any necessary reporting in the Bankruptcy Case; and (xv) undertaking any action necessary to perform any obligation provided for or required under the Plan.

Upon the Effective Date, the  Reorganized Debtor will be authorized to employ professionals, including but not limited to legal and accounting professionals, without Court authorization, including without limitation employment of professionals on a contingent fee basis.

Upon the Effective Date, the Reorganized Debtor will be authorized but is not required to settle and compromise claims, causes of action, claim objections, disputes and controversies without the need for further Court Order.

## 5.2  Risk Factors

While the risk of non-payment is diminished because the Debtor believes the value of the Assets will exceed the amount of Allowed Claims, the Plan is dependent upon the sale of the Debtor's non-exempt assets, which can always be subject to market forces. While the Debtor believes it is unlikely, there is potential risk as to full payment if the amount of Allowed Claims turns out to exceed the value of the Assets.

## 5.3  Tax Consequences of the Plan

***Creditors and Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.***

## 5.4  Taxation Generally

This discussion is for informational purposes and does not constitute tax advice. The federal income tax consequence of implementation of the Plan to a holder of a Claim will depend on (i) whether the Claim constitutes a debt or security for federal income tax purposes, (ii) whether the holder of the Claim receives consideration in more than one tax year, (ii) whether the holder of the Claim is a resident of the United States, (iv) whether the consideration received by the holder of the Claim is part of an integrated transaction, (v) whether the holder of the Claim utilizes an accrual or cash method of accounting, and (iv) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

The federal, state, and foreign tax consequences of the Plan are complex and in many areas, uncertain, therefore you are urged to consult a tax professional. The Debtor will not recognize any income to the extent of forgiveness of debt under this Plan.  The Debtor will pay any tax liability associated with the sale of any non-exempt assets, if any, from the proceeds of the sale of such Assets.

## 5.5  Alternatives to the Plan

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan.  However, the additional costs, including, among other things, additional Professional Fees, which could constitute Administrative Claims against the Estate, may be so significant that one or more parties could request that the Chapter 11 Case be converted to one under Chapter 7.

Accordingly, the Debtor believes that this Plan enables creditors to realize the very best return under the circumstances. The Plan is being funded from the non-exempt assets of the Debtor, the value of which is expected to be at least equal to if not exceeded by the amount of Allowed Claims entitled to a Distribution under the Plan, which is what makes this Plan feasible. No other party other than Royce Hassell has sponsored a plan of reorganization for the Debtor to emerge from this Chapter 11 Case.

**5.6  Best Interests Test and Liquidation Analysis**

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an Impaired Claim or Interest either (a) accept the Plan, or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less that the value such holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

The Debtor believes that holders of Claims in all impaired classes of Claims will support confirmation of the Plan and thereby meets the requirement of Section 1129(a)(7) of the Bankruptcy Code. The Plan proposed by Royce Hassell is principally a liquidation plan.  Under the Plan, creditors will retain an amount that is not less than the value such holder would receive in hypothetical chapter 7 liquidation case.

While delayed, all the creditors of the Debtor identified either in the Schedules in an undisputed capacity or by a Proof of Claim can be paid in full under the Plan if the assets of the Debtor are liquidated.  Such assurances cannot be made upon conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or under any plan sponsored by anyone other the Debtor.  Accordingly, Royce Hassell believes that the "best interests" test of Bankruptcy Code Section 1129 is satisfied.

**5.7  Feasibility**

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization.  Because the Debtor anticipates paying in full all Impaired and Unimpaired Claims and Interests, the Plan is feasible.

**5.8  No Unfair Discrimination**

A chapter 11 plan "does not discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to the legal rights of the non-accepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests.  Royce Hassell believes that under the Plan all impaired classes of claims and interests are treated in a manner that is consistent with the treatment of other classes of claims and interests that are similarly situated, if any, and no class of claims or interests will receive payments or property with an aggregate value greater than the aggregate value of the allowed claims and allowed interests in such class. Accordingly, the Plan does not discriminate unfairly as to any impaired class of claims or interests.

**5.9  Bar Dates for Professional Fee Claims and Administrative Claims**

Professionals or other entities asserting a fee claim for services rendered before the Effective Date must file and serve on the Reorganized Debtor, its counsel, and such other entities designated by the Bankruptcy Rules, the Confirmation Order or such other orders of the Bankruptcy Court a final fee application no later than thirty (30) days after entry of the Confirmation Order.  Services provided by Professionals after the Effective Date are not subject

26

to this provision.  The Debtor estimates that professional fees for services rendered before the Effective Date will not exceed $100,000.

Any person or entity asserting an Administrative Claim, other than a Professional Fee Claim, against the Debtor must file and serve on the Reorganized Debtor, its counsel, and such other entities designated by the Bankruptcy Rules, the Confirmation Order or such other orders of the Bankruptcy Court a motion or application, as required by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, no later than thirty (30) days after entry of the Confirmation Order. Any objection to a motion or application for an Administrative Claim shall be filed in accordance with the local rules of the Court and as set forth in the negative notice provision in the objection or application, as agreed in writing with the applicant, and/or by further order of the Court.  The Debtor is only aware of Administrative Claims, as described in this paragraph, for fees due to the United States Trustee.  The Debtor estimates that United States Trustee Quarterly Fees incurred prior to the Effective Date will not exceed $10,000.

## 5.10  United States Trustee Fees

Fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) to the extent unpaid through the Confirmation Date, shall be paid by the Debtor or Reorganized Debtor within thirty days after the Effective Date.  From and after the Confirmation Date through the closing of the Chapter 11 Case, all statutory fees shall be paid by the Debtor or Reorganized Debtor.

## 5.11  Treatment of Executory Contracts

As of the date of entry of the Confirmation Order (the "Confirmation Date"), all executory contracts that were not assumed as of the Confirmation Date will be deemed rejected.  Any executory contracts and unexpired leases that have not previously been assumed and assigned or rejected under section 365 of the Bankruptcy Code will be rejected pursuant to the Plan.  Each counterparty to an executory contract that has not already been assumed or rejected in the Bankruptcy Case shall be entitled to file, no later than thirty (30) days following the Confirmation Date, a proof of claim for any damages arising from the rejection of the contract pursuant to § 365 of the Bankruptcy Code.  The failure of the counterparty to a rejected contract to file a proof of claim within the proscribed time period will forever bar such person from asserting any claim for rejection damages.  The filing of any such proof of claim on account of rejection damages will not preclude the estate from objecting to such claim if appropriate. The Debtor does not anticipate any claims arising from this provision of the Plan.   If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline set forth herein.

## 5.12  Retention of Claims and Causes of Action by the Debtor

The Debtor on behalf of itself and its estate shall retain any and all claims, rights and/or causes of action under Chapter 5 of the Bankruptcy Code, any and all claims, rights and/or causes of action under fraudulent conveyance and fraudulent transfer laws, and any and all claims, rights and/or causes of action under non-bankruptcy laws vesting in creditors rights to avoid, rescind, or recover on account of transfers including but not limited to all preference laws and any other causes

of action against third parties. All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of Section 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, claims for subordination, and causes of action arising under Chapter 5 of the Bankruptcy Code (including without limitation Avoidance Actions, Subordination Claims, and Claim Objections) with respect to the Debtor or his Estate, shall be and hereby are preserved for the benefit of the Reorganized Debtor, and shall be and hereby are deemed to be part of the Assets which shall vest in the Reorganized Debtor and which shall be managed for the benefit of holders of Allowed Claims and Interests as set forth in the Plan. The foregoing includes, but is not limited to, all claims and causes of action referenced in the Debtor's bankruptcy schedules, statement of financial affairs, and disclosure statement as presently existing or as may be amended hereafter. For purposes of standing to assert and prosecute claims and causes of action, the Reorganized Debtor is the successor to the Debtor under the Bankruptcy Code.

Confirmation of the Plan effects no settlement, compromise, waiver, or release of any claim, cause of action, right of action or claim for relief of the Debtor, his Estate, or the Reorganized Debtor unless expressly and unambiguously provided for in the Plan or the Confirmation Order. The non-disclosure or non-discussion of any particular claim, cause of action, right of action or claim for relief of the Debtor, his Estate or the Reorganized Debtor shall not be construed as a settlement, compromise, waiver or release of such claim, cause of action, right of action or claim for relief.

**5.13  Effect of Confirmation of the Plan**

The Confirmation Order will be the final determination of the rights of all claimants and interest holders to participate in the distributions under the Plan, whether or not (a) a proof of claim or interest is filed, (b) such claim or interest is allowed, or (c) the holder of such claim or interest has accepted the Plan.

**5.14  Discharge of the Debtor**

Upon completion of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Upon discharge, the distributions, rights, and treatment provided for in the Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether know or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor of any of his assets or properties, regardless of whether the property has been distributed or retained per the Plan. The Debtor will not be discharged from any debts as to any creditors that have timely filed dischargeability complaints and which were deemed non-dischargeable by order of the Bankruptcy Court. After the Effective Date of the Plan your claims against the Debtor will be limited to the treatment imposed by the Plan.

Except as expressly provided in the Plan or Confirmation Order, all persons who have held, hold, or may hold claims or interests that have been released, discharged, or subject to exculpation under this Plan against the Debtor are permanently enjoined on or after the Effective Date from (i) commencing or continuing in any matter any action or other proceeding of any kind against the Debtor, or his assets or property, with respect to any such claim; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or its property; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property with respect to such claim; (iv) asserting any right of subrogation, setoff, or recoupment of any kind against any obligation due from the Debtor or its property with respect to any such claim or interest unless such holder has filed a motion requesting court approval of the right to perform the setoff, subrogation, or recoupment; and/or (v) commencing or continuing in any manner, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

## 5.15  Injunction

On the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, all persons shall be deemed to be bound by the terms of the Plan, including holders of claims or interests not listed on the Debtor's Schedules but who have notice of the Chapter 11 Case, or listed on the Schedules as disputed, unliquidated or contingent, who did not file proofs of claim or interest by the applicable Bar Date, and, to the extent permitted under section 1141(d)(3) of the Bankruptcy Code, will be prohibited from:

a)  commencing or continuing any suit, action or other proceeding of any kind or nature or employing any process against the Debtor, the estate, the Debtor's assets, the Debtor's relatives, the Debtor's affiliates, any direct or indirect successor to the Debtor including the Reorganized Debtor, or to interfere with the consummation or implementation of this Plan or the distributions to be made hereunder;

b)  enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the Debtor, the estate or the Debtor's assets or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor,

c)  creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien against the Debtor, the estate or the Debtor's assets, or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor other than as contemplated by the Plan,

d)  except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the estate or the Debtor's assets, or any direct or indirect successor in interest to the Debtor, or any assets or property of such successor, and

29

e)      proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan and Disclosure Statement.

## 5.16  Exculpation

From and after the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, Royce Hassell and his professionals, agents and representatives shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with the Chapter 11 Case, including the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan and Disclosure Statement; *provided, however*, that the foregoing provisions (a) shall not affect the liability of any person that otherwise would result from any such act or omission to the extent that act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct and (b) shall not abrogate any applicable disciplinary rules.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and Disclosure Statement.

## 5.17  Final Decree

Once the Estate has been fully administered, as provided in Federal Rule of Bankruptcy Procedure 3022, the Reorganized Debtor or the Debtor shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## 5.18  Modification of the Plan

The Debtor may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or re-voting on the Plan.  The Debtor may also seek to modify the Plan at any time after confirmation of the Plan only if (i) the Plan has not been substantially consummated; and (2) the Court authorizes the proposed modifications after notice and a hearing.

## 5.19  Legally Binding Effect

The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan. On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan and (ii) any derivative claims, including against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

## 5.20  Anti-Discrimination Provisions of the Bankruptcy Code

A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect

30

to such a grant against the Debtor or another person with whom the Debtor has been or are associated or affiliated solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtor based upon any requirement that the Debtor place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtor.

**5.21  Conditions Precedent**

This Plan shall not become effective unless and until the following conditions have occurred or been waived in writing by the Debtor" (i) the Bankruptcy Court shall have entered the Confirmation Order in a form and substance satisfactory to the Debtor.

**5.22  Cramdown**

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan does not discriminate unfairly and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests. Per section 1129(b)(2) of the Bankruptcy Code, the Debtor believes that the Bankruptcy Court will find at the Confirmation Hearing that the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims.  If necessary, the Debtor will see confirmation under the Bankruptcy Code section 1129(b) "cramdown" provisions.

**5.23  Calculation of Deadlines**

The provisions of Federal Rule of Bankruptcy Procedure 9006 shall govern the calculation of any dates or deadlines referred to in the Plan.

**5.24  Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law.

**5.25  The Absolute Priority Rule**

The "absolute priority rule" is the rule that states that the holder of any claim or interest that is junior to the claims of an impaired unsecured class of creditors will not receive or retain under the plan on account of their junior claim or interest any property (in this case, the ownership of the Debtor) if the unsecured class of creditors oppose the Plan. Pursuant to the liquidation analysis, the unsecured creditors would receive very little if this bankruptcy proceeding was

converted to a Chapter 7 proceeding, but in this Chapter 11 proceeding, they will be receiving a much larger distribution.

**5.26  Conflict**

Except as provided for in the Plan, to the extent there are any inconsistencies between the Confirmation Order and the Plan, the Confirmation Order controls.  Except as provided for in the Plan, to the extent there are any inconsistencies between the Plan and the Disclosure Statement, the Plan controls.

**5.27  Retention of Jurisdiction by the Court**

The Bankruptcy Court will retain exclusive jurisdiction over the Chapter 11 Case to the maximum extent provided by law for the following purposes after Confirmation of the Plan: (i) to determine any and all objections to the allowance of a claim, classification of a claim, or distribution on account of a claim or interest; (ii) to determine the validity and priority of any lien; (iii) to determine the allowed amount of any claim; (iv) to hear, determine, and allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate; (v) to determine any and all applications or motions pending before the Court on the Effective Date or filed after the Effective Date, including but not limited to, any motions for the rejection, assumption and or assignment of any executory contract or unexpired lease; (vi) to consider and approve any modification of the Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order or any transactions or payments contemplated in the Plan; (vii) to consider and act on the compromise or settlement of any claim or cause of action by or against the Debtor; (viii) to enforce the provisions of the Plan and Disclosure Statement and to issue orders in aid of the execution and implementation of the Plan and Confirmation Order; (ix) to hear and determine matters concerning federal or local taxes; (x) to hear any and all controversies, suits and disputes filed in the Court; (xi) to hear and enter orders in any adversary proceeding pending before the Court.

**ARTICLE VI**
**CLAIMS RESOLUTION PROCEDURES**

**6.1  Procedures for Resolving and Treating Contested Claims Under The Plan**

The Debtor or Reorganized Debtor may file objections to claims prior to and after the Effective Date of this Plan.  No other party may file objections to claims after the Effective Date of this Plan except for the Debtor or Reorganized Debtor as stated herein.

The Debtor or Reorganized Debtor shall have the exclusive right to settle all objections to claims after the Effective Date. The Debtor or Reorganized Debtor reserve the right to contest and object to any claim asserted against the Debtor, including, but not limited to, any claim not listed in the Schedules or listed therein as undisputed, disputed, contingent and/or unliquidated in amount or listed therein at a lesser amount than asserted in a Proof of Claim.  The Debtor or Reorganized Debtor reserve the right to contest and object to any claim asserted against the Debtor even if it is

listed as undisputed in the Schedules. Except as otherwise provided in the Plan, any proof of claim filed after the Bar Date, is disallowed.

The Debtor and Reorganized Debtor may reserve (in lieu of) payment for any claim that they may, in good faith, dispute and with respect to which they have a right to object as provided herein. The Debtor and Reorganized Debtor through this Plan reserve any and all set-off rights to any claim. A claimant whose claim is the subject of the objection must file with the Court, and serve upon the Debtor and Reorganized Debtor, a response to the objection.

All objections to any claims shall be filed by the Debtor or Reorganized Debtor on the later of (i) one year after entry of the Confirmation Order, unless otherwise ordered by the Court; (ii) or 90 days after the Court enters and order deeming a late-filed claim timely filed, unless otherwise ordered by the Court. Failure to file and serve a response within the applicable period required by the Bankruptcy Code, Bankruptcy Rules or any order of the Bankruptcy Court shall allow the Bankruptcy Court to enter a default judgment against the non-responding Claimant and thereby grant the relief requested in the objection.

If a claim is listed in the Schedules as disputed, unliquidated, or contingent, all claimants must file a proof of claim in the official claims register in the Chapter 11 Case by the Bar Date or such claim shall otherwise be forever barred. Moreover, any proofs of claim filed after the Bar Date shall be deemed disallowed in full and expunged without any action by the Debtor or Reorganized Debtor, unless the claimant or the Debtor or Reorganized Debtor obtains, after notice and hearing, an order of the Bankruptcy Court authorizing a late filing. Nothing herein shall affect, amend or modify any Bar Date in this Chapter 11 Case.

## 6.2  Disputed Claims

Notwithstanding any other provision of this Plan, no payment or Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim; and no payment or Distribution shall be made with respect to a Claim other than an Allowed Claim. If a Disputed Claim later becomes an Allowed Claim in whole or in part, the Reorganized Debtor shall make the Distributions required by the provisions of this Plan to be made in respect to the Allowed portion of such Claim, as and when, and in the installments, if any, required by such provisions; provided that, if and to the extent that such provisions would have required an earlier Distribution or Distributions had such Claim been Allowed earlier, each Distribution that would have been made earlier shall be made as soon as reasonably practicable after such Claim becomes an Allowed Claim.

The Reorganized Debtor shall make no Distributions upon a Claim held by a Claimant against whom the Debtor or Reorganized Debtor asserts any Avoidance Action until resolution of the Avoidance Action by settlement or judgment or as otherwise provided by Bankruptcy Court order.

## 6.3  Undeliverable Distributions

Distributions to holders of Allowed Claims will be made to the address of each such holder as set forth on the proof of claims filed by these holders of Allowed Claims or as set forth in the

Schedules if no proof of claim was filed, unless Debtor or Reorganized Debtor received written notification of a change in address. If the holder's Distribution is returned undeliverable, the Debtor or Reorganized Debtor will file a notice of undeliverable Distribution with the Bankruptcy Court within thirty (30) days of the returned Distribution. All claims for undeliverable Distributions must be made no later than forty-five (45) days from the date of the filing of the notice, and after such date, the claim for which the unclaimed Distribution was made will be disallowed and the unclaimed Distribution will be distributed *pro rata* to holders of Allowed Claims.

Checks issued with respect to Distributions for Allowed Claims will be null and void if not negotiated within 180 days after the date of issuance. Any unnegotiated check shall be deemed an undeliverable Distribution on the 181st day after the date of issuance if the check has not been negotiated and the procedures relating to an undeliverable Distribution shall apply and if such Distribution is not claimed in accordance with such procedures, the underlying Claim shall be disallowed and the unclaimed Distribution will be distributed *pro rata* to holders of Allowed Claims.

## CONCLUSION AND CONFIRMATION REQUEST

Royce Hassell believes that the Plan is in the best interests of all holders of Claims and Interests and urges all holders of Impaired Claims against the Debtor to vote to accept the Plan and to evidence such acceptance by returning their ballots in accordance with the instructions accompanying this document. Royce Hassell respectfully requests confirmation of this Plan pursuant to Section 1129 of the Bankruptcy Code.

Dated:  June 4, 2019.                                    Respectfully submitted,

**ROYCE J. HASSELL**

By: */s/ Royce J. Hassell*
Royce J. Hassell
Debtor-In-Possession

34