UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| IN RE: | |
|---|---|
| ROYCE J. HASSELL, | NO. 19-30694 |
| Debtor | Chapter 11 |

**OBJECTION OF ELBAR INVESTMENTS, INC.
TO CONFIRMATION OF THE DEBTOR'S FIRST AMENDED
PLAN OF REORGANIZATION
(doc 71)**

TO THE HONORABLE MARVIN ISGUR UNITED STATES BANKRUPTCY JUDGE:

Comes now Elbar Investments, Inc. ("Elbar") and objects to confirmation of the Debtor's First Amended Plan of Reorganization (doc 71, the "Plan") and respectfully represents.

**Background Facts**

1. Elbar Investments, Inc. holds an allowed secured claim in the amount of $1,445,153.75 plus post-petition interest at the note rates, pursuant to the Order Granting Elbar Investments, Inc. Post-Petition Interest(doc 66), secured by mortgages and deeds of trust upon two of the Debtor's properties: 3417 Buffalo Speedway and 3421 Buffalo Speedway, Houston, Texas. The loans are cross secured. Unpaid property taxes, penalties and interest assessed upon the properties, which are also liens upon the properties, are 6417 Buffalo Speedway: $235,805.19, and 6421 Buffalo Speedway: $104,715.22.

**The Plan is not Feasible**

2. The Plan is speculative and is not feasible. The plan will be financed by two sources: construction projects on 6417 and 6421 Buffalo Speedway from which the Debtor hopes to achieve profits, and 2. Speculative lawsuits against family members and entities which they

control, to redress real or perceived wrongs which Royce Hassell feels that he suffered a their hands.

    3.  11 U.S.C. § 1129(a)(11) requires that to be confirmed the plan must be feasible. The requirement that the plan must be feasible prevents confirmation of speculative plans that promise more than the plan proponent can provide. *In re Sea Garden Motel*, 195 B.R. 294, 304 (Bankr. D.N.J. 1996). It is the responsibility of the court to examine the plan carefully to determine whether it is workable and has a reasonable prospect of succeeding. *United Properties, Inc. v. Emporium Department Stores, Inc.*, 379 F.2d 55, 64 (8th Cir. 1967). "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possible attain after confirmation." Colliers on Bankruptcy, Paragraph 1129-02 [11], at 1129-59 (15th ed., 1993); *Matter of Pizza of Hawaii*, 761 F.2d 1374, 1382 (9th Cir. 1985). Where there is no ability to measure whether the plan is susceptible of achievement after confirmation, the plan is not feasible under 1129(a)(11). *In re Huffman*, 52 B.R. 212, 215 (Bankr. D.N.D. 1985); *In re Bergman*, 585 F.2d 1171 (2nd Cir. 1978).

    4.  The Debtor currently has in the estate approximately $850,000 realized from the sale of another property. Instead of using that money to pay his creditors, Royce Hassell proposes to use that money to finance construction of improvements to 6417 and 6421 Buffalo Speedway and to finance lawsuits against his relatives and entities which the relatives control for real and perceived injuries. The plan provides for him to use the money to pay for construction of improvements on 6417 Buffalo Speedway, sell it, and then use the profits from the sale to finance construction of a new house on 6421 Buffalo Speedway, and then sell it, in stair step fashion.

5. The Plan is not feasible for the reason that Elbar's mortgage liens on the two properties are cross secured. If the construction project results in a profit upon sale of 6417 Buffalo Speedway, then all of the profits will go to pay Elbar and the property tax liens upon the property, and there will be no funds available to pay for construction of a new house on 6421 Buffalo Speedway.

6. The proposed construction projects are risky and subject to risks of cost overruns, delays, liens by unpaid subcontractors, and market fluxuations. There is no guarantee that Royce Hassell will actually achieve profits. The projects would take a long time to complete, and property taxes, penalties, and interest would continue to accrue. The creditors should not be made unwilling partners of the Debtor in these construction projects.

7. Creditors would be better off if the properties are sold in their current condition 6417 and 6421 Buffalo Speedway are two 10,000 square foot adjoining lots and the lot value of the properties at current West University market prices would be $2 million to 2.5 million. Creditors would be better served if the properties are sold in their present condition.

8. The lawsuits which Royce Hassell plans to file against family members for real and perceived wrongs are speculative and would require large expenditures for attorney's fees and costs of litigation, with no guarantee of any recovery. Since Royce Hassell is motivated by revenge, he may pursue these lawsuits without a proper cost/benefit analysis. The creditor should not be made unwilling financers of the Debtors speculative lawsuits against his relatives.

### The Plan is not in the Best Interest of Creditors

9. 11 U.S.C. § 1129(a)(7)(A)(ii) requires that the plan must provide that creditors will receive at least as much as they would from a Chapter 7 liquidation. For the reasons discussed above, the proposed plan is too speculative for the debtors to be able to assure that unsecured

creditors will be better off under the plan than if the estate is liquidated in Chapter 7 and 6417 and 6421 Buffalo Speedway are sold by a trustee. The creditors would be better off if the $850,000 presently in the estate plus proceeds of sale of the Buffalo Speedway properties in their present condition would be distributed to creditors, rather than spending the $850,000 upon the proposed construction projects and lawsuits.

10. Prompt payment of creditors is a primary objective of a Chapter 11 reorganization. *In re Kemp*, 134 B.R. 413, 415 (Bankr. E.D.Cal. 1991); *In re Hoosier Hi-Reach, Inc.*, 64 B.R. 34, 38 (Bankr. S.D.Ind. 1986). The construction projects and lawsuits would take a long time to complete, whereas sale of the Buffalo Speedway properties in their present condition can be accomplished soon. The West University real estate market is hot, and if properly priced, the properties could be sold promptly.

### The Plan is not Proposed in Good faith

11. Whether a plan is filed in good faith is a matter to be assessed in view of the totality of the circumstances which necessitated the plan, in perspective of the Bankruptcy Code. *Matter of Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984).

12. The failure of the debtor to use the full reach of its disposable resources to repay creditors is evidence that a plan is not proposed in good faith. *In re Walker*, 165 B.R. 994. 1001 (E.D.Va. 1994); *In re Kemp*, 64 B.R. 134 413, 415 (Bankr. E.D.Cal. 1991). The estate's money should be used to pay creditors, not to engage in speculative development of the properties and speculative lawsuits.

13. The primary beneficiary of the proposed Plan would be Royce Hassell for the compensation he would receive from the construction projects, the attorney's fees he would pay

to his wife Sylva Hassell for her services as his attorney to prosecute the lawsuits, and the emotional satisfaction of seeking revenge upon his relatives.

14. The long delay in payment of creditors so that Royce Hassell may seek to recover profits for himself is evidence of lack of good faith. In the case of *In re Love-Seeman Properties*, 49 B.R. 70 (Bankr. D.Hawaii 1985), the plan proposed sale of the debtor's property as a means of implementing the plan, and provide a two year period within which to achieve the sale based upon the debtor's subjective belief that the delay would result in a substantially higher price than an earlier sale. Defendant had received three offers after filing bankruptcy. The court concluded that, where the debtor was seeking to gain a financial windfall by delaying liquidation, the bankruptcy procedure has been abused, thereby precluding a finding of good faith

### Elbar's Claim is Impaired by the Plan Because There is No Outside Date for the Debtor to Sell the Properties Securing Elbar's Loans and Foreclosure is Enjoined Indefinitely.

15. The Bankruptcy Code provides that a class of claims is not impaired if "the [reorganization] plan ... leaves unaltered the legal, equitable, and contractual rights to which such claim ... entitles the holder." 11 U.S.C. § 1124. A creditor is impaired under Section 1124(1) if the plan alters the creditor's legal, equitable, or contractual rights. *In re Ultra Petroleum*, 913 F.3d 513, 539 (5th Cir. 2019).

16. Under the Plan, Elbar is a holder of a Class 1 Secured Claim. The Plan provides in Section D. that Class 1 Secured Claims are not impaired and that holders of allowed Secured Claims in Class 1 shall receive payment in an amount equal to the amount of their Allowed Secured Claim upon the sale of the Collateral securing its claim.

17. The discharge provisions of Section 5.14 of the Plan and the discharge injunction of Section 5.15 provide that upon confirmation all creditors are permanently enjoined from

commencing or continuing enforcement of any action or proceeding or any lien against the Debtor or the Debtor's assets.

18. But the Plan does not set an outside date or deadline by which the Debtor must sell the properties.  So, Royce Hassell could remain in possession of the properties indefinitely and never sell them, and Elbar Investments, Inc., and other lien holders, would be forever barred from foreclosing their liens.  The properties have already been on the market for a long time.

19. The right of Elbar to receive repayment of the principal, accrued interest, and other amounts due on its loans as of the petition date is indefinitely deferred, and Elbar is indefinitely enjoined from foreclosing its liens on the properties.  An injunction against enforcing its liens without end is the equivalent of a discharge of the liens.

21. Therefore Elbar's claim is impaired, as defined in 11 U.S.C. § 1124(1).

### The Plan Does Not Afford to Elbar the Right to Vote.

22. The Plan does not afford to Elbar Investments, Inc., or to other holders of Class 1 Secured Claims, whose claims are impaired, the right to vote to accept or to reject the Plan, and does not comply with 11 U.S.C. § 1126(a) and should not be confirmed.

### The Plan Does Not Afford Elbar the Indubitable Equivalent of its Collateral.

23. The Plan does not afford Elbar Investments, Inc., and other holders of Class 1 Secured Claims, the indubitable equivalent of its collateral.  The Plan does not comply with 11 U.S.C. § 1229(a)(7)(A)(ii), and § 1129(b)(1) and (2)(A) and should not be confirmed.

### Conclusion

The plan should not be confirmed.

    Respectfully submitted,

    ROSS, BANKS, MAY, CRON & CAVIN, P.C.

By: *John Mayer*
John Mayer
Texas Bar Number 13274500
7700 San Felipe, Suite 550
Houston, Texas 77063
Phone 713-626-1200
Email jmayer@rossbanks.com
Attorney for Elbar Investments, Inc.

**CERTIFICATE OF SERVICE**

I certify that true copies of the foregoing instrument were served upon all parties who have entered an appearance in this case by means of the Bankruptcy Court's CM/ECF system contemporaneously with filing on November 22, 2019.

. *John Mayer*
John Mayer