UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROYCE JAMES HASSELL | § | Case No. 19-30694 |
| | § | |
| Debtor. | § | Chapter 11 |

**OBJECTION TO FIRST AMENDED COMBINED
DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

TO THE HONORABLE MARVIN ISGUR UNITED STATES BANKRUPTCY JUDGE:

The Hanover Insurance Company ("Hanover"), an unsecured creditor and surety to the construction company owned by Royce J. Hassell (the "Debtor"), files this its objection to the *First Amended Combined Disclosure Statement and Plan of Reorganization* (the "Plan") of the Debtor.[1] In support, Hanover respectfully states as follows:

**Summary of Objection**

1.   Hanover holds a large unsecured claim in the bankruptcy, with a current loss of around $2.5 million on surety bonds issued on behalf of the Debtor's construction company. Hanover objects to the combined disclosure statement and plan for several reasons.  First, it is wholly speculative and is based on the hope of theoretical recoveries on vague and unspecified claims, as well as the hope of an improved real estate market that would generate more money years from now than it otherwise would today.  In addition, although the Plan is styled as a liquidating plan, in reality the Debtor wants to use estate assets to start new businesses with the hope and assumption that additional assets would be available to creditors several years down the road.

---

[1] Dkt. 71

2.     As the Court is also aware, there is a long history of family feuds involving the Debtor. The Debtor has made no secret of his desire to liquidate estate assets in order to create a war chest to finance certain unspecified claims. Indeed, the Debtor has fought hard in other related bankruptcies to try and preserve individual claims. Using estate assets to fund 5 to 10 more years of litigation is not in the best interest of the estate and is unfair to the creditors. The disclosure statement and plan do not adequately identify the claims that the Debtor intends to pursue; the cost of the litigation to the estate; the expected duration for resolution of any claims; or a realistic estimate of any recovery that could be generated from the claims. Rather, the Debtor's plan simply proposes that the creditors sit back and wait years for the Debtor to handle all of it himself – even though history has shown that this results in a significant loss of time and money.

3.     As a result, the disclosure statement is inadequate, and the plan is not confirmable because it is not feasible, it is not brought in the best interest of the creditors and is not proposed in good faith as a matter of law.

## Arguments and Authorities

4.     11 U.S.C. § 1129(a)(11) requires that the Plan be feasible in order to be confirmed. The purpose of this section of the Code is to "prevent confirmation of visionary schemes which promise creditors more under a proposed plan than that which the debtor can possibly attain after confirmation." *In re Trails's End Lodge, Inc.*, 54 B.R. 898, 903–04 (Bankr. D. Vt. 1985); *see also Matter of Pizza of Hawaii*, 761 F.2d 1374, 1382 (9th Cir. 1985). Where there is no ability to measure whether the plan is susceptible of achievement after confirmation, the plan is not feasible under 1129(a)(11*). In re Huffman*, 52 B.R. 212, 215 (Bankr. D.N.D. 1985); *In re Bergman*, 585 F.2d 1171 (2nd Cir. 1978). "The test is whether the things which are to be done after confirmation

can be done as a practical matter under the facts." *Chase Manhattan Mortgage and Realty Trust v. Bergman (In re Bergman)*, 585 F.2d 1171, 1179 (2d Cir.1978) (internal citation omitted).

5. The Plan is inherently speculative and is therefore not feasible. As noted, the Debtor proposes that in lieu of moving forward with an orderly and immediate liquidation of assets, the Debtor desires a reorganization that would not result in liquidation of assets until certain improvements are made to real property, as well as the operation of an investment business to supposedly generate income for the estate. The Debtor is thin on details, but under the timeline reflected in the Plan, some of the Debtor's strategies would not come to fruition until 2021. The face of the Plan reveals its speculative nature, as it is contingent upon (1) a real estate market improving and/or improvements to properties themselves generating more revenue than could otherwise be generated today without the improvements (and by extension, the cost of the improvements); (2) the hope that an investment business would generate more revenue down the road than the money that is otherwise available to the estate today (without investing any money in the business); and (3) most importantly, the theory that there is some viability to the claims between family members that have been litigated ad nauseam over the years preceding the bankruptcy. If the Debtor desires to liquidate assets for the benefit of creditors, then this is what should occur. It should occur now, and as was revealed in the related corporate bankruptcies, all claims should be settled.

6. For these same reasons, the plan is not in the best interest of the creditors. 11 U.S.C. § 1129(a)(7)(A)(ii) requires a plan to result in creditors receiving at least as much as they would from a Chapter 7 liquidation. The Plan is based on theoretical recoveries and the hope of positive market fluctuations; this is insufficient to demonstrate a recovery of at least what Hanover and other creditors would receive under a Chapter 7 scenario. Two of the primary objectives of

Chapter 11 are "the expeditious resolution of disputes and speedy payment to creditors." *In re Hoosier Hi–Reach, Inc.*, 64 B.R. 34, 38 (Bankr.S.D.Ind.1986). The Plan does neither.

7.  Finally, the Plan is not proposed in good faith as a matter of law. "According to the good faith requirement of section 1129(a)(3), the court looks to the Debtor's plan and determines, in light of the particular facts and circumstances, whether the plan will fairly achieve a result consistent with the Bankruptcy Code." *In re Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir.1984); *see also Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.),* 84 B.R. 167, 172 (Bankr. 9th Cir.1988). As detailed above, the Debtor is asking his creditors to finance his ongoing family squabbles; yet, the Plan does nothing to address the viability of these claims, the cost-benefit analysis to the estate, or the length of time necessary for the claims to achieve a resolution.

## Request for Relief

For the foregoing reasons, the Court should not conditionally approve the adequacy of the Disclosure Statement and/or the Plan. Hanover further requests any such other relief to which it may be justly entitled.

Respectfully submitted,

/s/ *Brandon K. Bains*
Brandon K. Bains
State Bar No. 24050126
LANGLEY LLP
1301 Solana Blvd
Building 1, Suite 1545
Westlake, Texas 76262
Telephone:     214.722.7160
Facsimile:     214.722.7161
bbains@l-llp.com

*Attorney for The Hanover Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served electronically by the Court's ECF System on all parties registered to receive such service on the 25th day November 2019.

    /s/ Brandon K. Bains
    Brandon K. Bains