IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: ROYCE J. HASSELL<br>Debtor. | §<br>§<br>§<br>§ | CASE NO. 19-30694 |

RESPONSE AND OBJECTION TO
MOTION TO APPOINT CHAPTER 11 TRUSTEE FILED BY HCCI
(Relates to Docket No. 78 and 79)[1]

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE MARVIN ISGUR:**

Royce J. Hassell, debtor-in-possession in this chapter 11 case (the "Debtor") hereby files this Response and Objection to the Motion to Appoint Chapter 11 Trustee filed by HCCI ("Objection") and in support thereof respectfully states the following:

**Background**

1. The Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 4, 2019 (the "Petition Date").

2. One of the primary drivers forcing the Debtor to file this chapter 11 case was his inability to sell certain non-exempt real property due to the fact that James C. Hassell ("James Hassell")[2], refused to remove wrongful liens on the Debtor's various properties despite the fact that such liens had been declared void by a panel of arbitrators in an arbitration award ("Arbitration Award"), which Arbitration Award was confirmed by an order of the state district court ("Judgment Confirming Arbitration Award").

---

[1] Hassell Construction Company, Inc. ("HCCI") filed a Motion to Appoint a Chapter 11 Trustee and Objections to the First Amended Plan of Reorganization twice, once at Docket No. 78 and again at Docket No. 79. Presumably, one is intended to be a "motion" and the other an "objection", but because both documents are identical, it is not clear which one is which. As such, this Response filed by the Debtor relates to both Docket No. 78 and 79.

[2] James C. Hassell is an owner of Hassell Construction Company, Inc. ("HCCI") and father of the Debtor. The Debtor is the eldest of five total siblings arising from various marriages of James Hassell, including Phillip Hassell, Michael Hassell, Shawn Hassell Potts, and Jason Hassell.

3. During the first few months of this bankruptcy case, there was a tremendous effort between the Debtor and other parties to resolve as many disputes as possible between them and the various affected bankruptcy estates. The Debtor participated in a two-day mediation in April 2019 in order to try to narrow the field of disputes to be resolved in this bankruptcy case (and other cases), one of which was the release of the voided liens on the Debtor's non-exempt real property so that it could be sold in this bankruptcy case. James Hassell did not agree at mediation to remove the already voided liens.

4. Before filing a plan, the Debtor obtained this Court's authority to sell one piece of non-exempt real property in Trinity, Texas ("Trinity Sale Order")(Docket No. 38). As of the time the Trinity Sale Order was entered, James Hassell, had not yet released the wrongful lien on that property. James Hassell only agreed to remove the liens after Debtor's counsel advised his counsel that the Debtor intended to file an adversary proceeding by May 31, 2019 if he did not agree to remove the liens from the various properties immediately. While James Hassell begrudgingly agreed to release the voided liens from the Debtor's real property, it still took months for lien releases to be properly completed and filed.

5. The Debtor filed a plan in this case on June 4, 2019 ("Plan")(Docket No. 43) which proposed a liquidation of non-exempt assets for the benefit of creditors. As of the time the Plan was filed, James Hassell still had not released the liens on the various properties owned by the Debtor, which he proposed to sell in the Plan. It was not until months later after a serious of "mistakes" and filing "mishaps" that, that the Debtor was able to confirm that James Hassell finally filed proper releases of liens on the various properties of the Debtor. The claims bar date in this case was set for June 12, 2019 ("Bar Date"), which was after the date the Plan was due to be filed. Between June 4, 2019 and June 12, 2019, additional claims were filed in the official claims register in this case, which significantly changed the total amount of claims in the claims register. However, several of these

claims were (i) facially objectionable; (ii) subject to state court litigation (where no stay relief was requested); (iii) named the wrong debtor; (iv) claimed an incorrect amount; and/or (iv) described frivolous and meritless claims against the Debtor. The larger of those claims include:

| Claimant | Amount | Claim No. | |
|---|---|---|---|
| Hassell Construction Co. Inc. | $465,740.00 | 16 | No basis; barred by res judicada and collateral estoppel |
| Jason Hassell | $1,000,000.00 | 17 | No basis; subject of removed lawsuit; duplicate. |
| Michael Hassell as Trustee | $1,000,000.00 | 18 | No basis; subject of removed lawsuit; duplicate. |
| Michael Hassell (Individually) | $1,000,000.00 | 19 | No basis; subject of removed lawsuit; duplicate. |
| Phillip Hassell | $1,000,000.00 | 20 | No basis; subject of removed lawsuit; duplicate. |
| Shawn Potts | $1,000,000.00 | 21 | No basis; subject of removed lawsuit; duplicate. |
| Pendergraft Simon | $142,316.20 | 23 | Wrong Debtor, incorrect amount, other substantive objections including claim for failure to manage conflicts/professional negligence. |
| Locke Lorde | $1,053,074.68 | 24 | Wrong Debtor, incorrect amount, other substantive objections including claim for failure to manage conflicts/professional negligence. |
| Procon | $202,317.48 | 25 | Wrong Debtor, incorrect amount, no basis, subject to state court litigation, no basis for personal liability. |
| Argos | $1,536,642.55 | 26 | Wrong Debtor, incorrect amount, no basis, subject to state court litigation, no basis for personal liability. |
| Hanover | $3,070,477.00 | 27 | Wrong Debtor, incorrect amount, amount remains unliquidated, no basis for personal liability. |
| Jasso | $182,799.11 | 28 | Wrong Debtor, incorrect amount, no basis, no basis for personal liability. |
| **TOTAL** | **$11,653,367.02** | | |

6. In late June 2019, the sale of the property authorized in the Trinity Sale Order closed. Shortly thereafter, the Debtor unexpectedly underwent two major medical procedures on an emergency basis. After recovering from the medical procedures, the Debtor began working the counsel to amend the Plan. Given the potential swing in claims, the Debtor attempted to conceptualize a plan that would expand the overall value of the estate.

7. The Debtor filed a First Amended Plan on November 12, 2019 ("First Amended Plan")(Docket No. 71). The Court held a hearing on conditional approval of the disclosure statement associated with the First Amended Plan on November 26, 2019, at which time approval of the disclosure statement was denied. Based upon creditor feedback as well as the Court's, the Debtor has instructed counsel to prepare a second amended plan to provide for a simple liquidation of all non-exempt assets and to preserve any of the Debtor's litigation claims but to ensure that no estate assets are used to pursue such litigation claims (i.e. such claims could only be pursued on a contingent fee basis and/or in the event there is any surplus to be returned to the Debtor after payment in full to all allowed claims in all classes of creditors).[3]

8. HCCI (James Hassell) and the Debtor's siblings together represent $5.465M or approximately half of the total claim amount filed in the claims register as unsecured claims. HCCI and the Debtor's siblings have asked for a chapter 11 trustee to be appointed based upon naked allegations already adjudicated in the arbitration proceeding and based on alleged facts that are not only circumspect but are taken out of context. The reality is that HCCI and the Debtor's siblings stand to lose the most by the Debtor continuing to manage his estate as a debtor-in-possession because their claims are frivolous and lack merit and will be eliminated in the claim objection process contemplated by the soon to be filed plan.

---

[3] The Second Amended plan will be filed shortly after filing this Response along with objections to various claims.

9. The Debtor's objective in this case is to sell his non-exempt real property to satisfy the claims of legitimate creditors. To that end, the Debtor worked diligently to obtain lien releases, which he eventually got, from James Hassell. While it was extremely difficult, the Debtor was able to obtain those lien releases without an adversary proceeding or protracted litigation. The Debtor has already sold one piece of property pursuant to the Trinity Sale Order and intends to sell the other property as quickly as possible to maximize the return to the estate through professional brokers under a second amended plan.

10. The Debtor urges this Court to deny the request of HCCI to appoint a chapter 11 trustee because HCCI's motive is to gain an unfair advantage against the Debtor and his estate. After conversion of the RHHC corporate bankruptcy cases to cases under chapter 7, the hard-fought award and judgment against HCCI of $1.2 million dollars was compromised by the chapter 7 trustee for $500,000.00 and HCCI's fraudulent transfers to avoid that judgment were effectively mooted. HCCI's claims filed in this case are frivolous and lack merit and dilute the claims of legitimate creditors. James Hassell is hoping that the appointment of a chapter 11 trustee will confer an advantage in the allowance and/or disallowance of HCCI's claim as well as the claims of the other family members because he knows and they know that the Debtor is the only person with the institutional knowledge who will be able to effectively demonstrate they are wrong on the facts and the law; just like the Debtor did in the arbitration proceeding. The reasons cited by HCCI for the appointment of a chapter 11 trustee are based on unsupported assertions, which the Debtor believes HCCI is unable to prove by clear and convincing evidence (or any evidence). For these reasons, the Debtor respectfully requests that the Court deny HCCI's Motion.

### Responses Pursuant to Fed. R. Bankr. P. 7008

11. Paragraph 1 of the Motion to Appoint Chapter 11 Trustee and Objections to the First Amended Plan of Reorganization ("Motion") is a statement of law, which is not an allegation that the

Debtor is required to admit or deny under Fed. R. Bankr. P. 7008. The Debtor, however, denies that HCCI is entitled to the relief requested under the statutes referenced in paragraph 1 of the Motion.

12. Paragraph 2 of the Motion is a verbatim recitation of a statute and which is not an allegation that the Debtor is required to admit or deny under Fed. R. Bankr. P. 7008. The Debtor, however, denies that HCCI is entitled to the relief requested under the statute referenced in paragraph 2 of the Motion.

13. Paragraph 3 of the Motion contains statements of the law, which are not allegations that the Debtor is required to admit or deny under Fed. R. Bankr. P. 7008. The Debtor denies, however, that the statements of law in paragraph 3 of the Motion constitute grounds for the relief requested in the Motion.

14. Paragraph 4 of the Motion contains statements of the law, which are not allegations that the Debtor is required to admit or deny under Fed. R. Bankr. P. 7008. The Debtor denies, however, that the statements of law in paragraph 4 of the Motion constitute grounds for the relief requested in the Motion.

15. Paragraph 5 of the Motion contains statements of the law, which are not allegations that the Debtor is required to admit or deny under Fed. R. Bankr. P. 7008. The Debtor denies, however, that the statements of law in paragraph 5 of the Motion constitute grounds for the relief requested in the Motion.

16. Paragraph 6 of the Motion contains statements of the law, which are not allegations that the Debtor is required to admit or deny under Fed. R. Bankr. P. 7008. The Debtor denies, however, that the statements of law in paragraph 6 of the Motion constitute grounds for the relief requested in the Motion.

17. As to paragraph 7 of the Motion, the Debtor admits the allegations in paragraph 7 of the Motion.

18. As to paragraph 8 of the Motion, the Debtor admits that the original bar date for filing claims was June 12, 2019.

19. In paragraph 9 of the Motion, the Debtor admits that a first proposed plan of reorganization was filed on June 4, 2019. The Debtor admits that in the first proposed plan, he estimated the value of his real estate holdings as well as the estimated amount of secured claims relating to such real estate. The Debtor admits that in the first proposed plan of reorganization, he estimated there would be significant equity available from the sale of his real estate holdings that could be used to pay allowed priority and unsecured claims. The Debtor admits that at the time of filing the first proposed plan of reorganization, the amount of priority and unsecured claims filed in the official claims register amounted to substantially less than the amount of estimated equity in the real estate holdings. The Debtor denies the final statement in paragraph 9 as the Debtor does not presume that any path toward reorganization is an "easy path." All other allegations in paragraph 9 are denied.

20. As to paragraph 10 of the Motion, the Debtor admits that the face amount of claims filed in the official claims register changed substantially after June 4th when the first proposed plan of reorganization was filed.

21. As to paragraph 11 of the Motion, the Debtor admits that on June 12, 2019, the total amount of claims filed in the claims register was approximately $15 million, but denies that all such claims are valid or accurate.

22. As to paragraph 12 of the Motion, the Debtor admits that four proofs of claim filed in the official claims register reference or allege "fraud" and/or "misapplication of trust funds." The Debtor denies that such claims (#13, #14, #25, and #26) have merit on the basis of "fraud" or "misapplication of trust funds." None of those four claims attach evidence in support of claims for "fraud" or "misapplication of trust funds." None of those four claims contain statement or allegations that comply with the strict pleading requirements under Fed. R. Bankr. P. 7009. Each of the four

referenced proofs of claim is the subject of an underlying lawsuit in state court against the Debtor and an affiliate, R. Hassell Properties, Inc. ("RHP"), which has defended against those creditors' allegations. The Debtor denies all allegations of fraud and/or misapplication of trust funds.

22. The Debtor denies the allegations contained in paragraph 13 of the Motion.

23. As to paragraph 14 of the Motion, the Debtor admits that a first amended plan was filed on November 12, 2019.

24. As to paragraph 15(a) of the Motion, the Debtor denies that the first amended plan "concentrated" on pursuit of litigation. As to paragraph 15(b) of the Motion, the Debtor admits that the first amended plan included a concept for some "residential construction." As to paragraph 15(c) of the Motion, the Debtor admits that the first amended plan included a concept for "commercial development."

25. The statements in paragraph 16 are too vague for the Debtor to determine exactly what allegations HCCI is adopting and for that reason, the Debtor denies same.

26, The Debtor denies that the reasons listed in subparagraphs (a) through (f) of paragraph 17 of the Motion support the appointment of a chapter 11 trustee. The statements in paragraph 17(a) through (f) of the Motion are mostly legal argument, which the Debtor is not required to admit or deny under Fed. R. Bankr. P. 7008. The Debtor, however, denies that HCCI is entitled to the relief requested in paragraph 17 of the Motion. Paragraph 17 (d), (e), and (f) of the Motion contain some factual allegations not previously mentioned in prior paragraphs and the Debtor denies those allegations.

27. Paragraph 18 of the Motion is legal argument, which the Debtor is not required to admit or deny under Fed. R. Bankr. P. 7008. The Debtor, however, denies that HCCI is entitled to the relief requested in the Motion for the reasons stated in paragraph 18 of the Motion.

28.     Paragraph 19 of the Motion is a request to the Court regarding setting a hearing on the Motion, which is not an averment that the Debtor is required to admit or deny.  While the Debtor denies that HCCI is entitled to the relief requested in the Motion, the Debtor admits that it is within this Court's discretion to set a hearing on the Motion and/or allow discovery regarding the Motion (no discovery has been sought yet) as requested by HCCI.

29.     The final un-numbered paragraph of the Motion is HCCI's prayer and is not an averment that the Debtor is required to admit or deny.  The Debtor, however, denies that HCCI is entitled to the relief requested in this paragraph and in this Motion.

### Prayer

WHEREFORE, Royce J. Hassell respectfully requests that HCCI's Motion be denied in its entirety and for such other and further relief to which he may be entitled.


Dated: December 16, 2019                    Respectfully submitted,

                                            JONES MURRAY & BEATTY LLP
                                             _/s/ Erin E. Jones_
                                            Erin E. Jones (TBN 24032478)
                                            4119 Montrose, Suite 230
                                            Houston, TX 77006
                                            Tel. 832-529-1999
                                            Fax. 832-529-3393
                                            erin@jmbllp.com
                                            *Counsel for the Debtor*

### CERTIFICATE OF SERVICE

On December 16, 2019, I caused the foregoing pleading to be filed through the Court's electronic case filing system on all parties registered to receive such service and/or to be sent via United States Mail first class postage pre-paid to all other parties entitled to receive notice.

                            _/s/ Erin E. Jones_