**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 19-30694** |
| **ROYCE J. HASSELL** | § | **(Chapter 11)** |
| | § | |
| Debtor. | § | |

**DEBTOR'S RESPONSE TO ELBAR INVESTMENT INC.'S**
**MOTION TO CONVERT CASE TO CHAPTER 7**
(Relates to Docket No. 81)

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE MARVIN ISGUR:**

Royce J. Hassell (the "Debtor") hereby files this Response ("Response") to Elbar Investment Inc.'s Motion to Convert Case to Chapter 7 ("Motion")(Docket No. 81) and respectfully represents as follows:

**<u>Summary of Argument</u>**

1.      Elbar Investments, Inc. ("Elbar") is an over-secured creditor with a lien on two pieces of real property owned by the Debtor, located at 6417 Buffalo Speedway and 6421 Buffalo Speedway in West University, Texas.  The Court entered an Agreed Order Allowing Elbar's Claim in the amount of $1,445,153.75 (Docket No. 66) as of February 4, 2019 (the "Petition Date") and clarifying the respective interest rates on the various notes upon which Elbar's claim is premised for purposes of calculating post-petition interest.  The amount of Elbar's claim in this case and the applicable contractual rates of interest are not disputed facts.

2.      The Motion appears to raise a dispute as to the value of the two properties on Buffalo Speedway and the point at which the equity in those properties could be exhausted by the passage of time if there is no sale.  Elbar alleged that the two properties on Buffalo Speedway together are worth between $1.8 million and $2.0 million (though no apportionment of value between the two properties is discussed).  If the Court accepts the range of values suggested by Elbar, there could be anywhere

1

from no equity in the two properties to approximately $85,000 in equity.  The Debtor disputes Elbar's valuation of the two properties.

3.       The Debtor has also filed a motion to employ Coldwell Banker United Realtors (Eric Campbell)("Motion to Employ", Docket No. 82) to assist him with the marketing and sale of the two properties.  Campbell has expertise in the West University market and has significant knowledge regarding these two particular properties.  Since filing the Motion to Employ, Campbell presented the Debtor with an offer to purchase 6421 Buffalo Speedway for $815,000 with a proposed closing date of February 14, 2020.  The Debtor has filed a motion to sell 6421 Buffalo Speedway based on that offer (See "Motion to Sell", Docket No. 91), which is currently pending.  In 2018, Harris County Appraisal District ("HCAD") assigned a value of $900,000 to 6421 Buffalo Speedway and then $1,068,000 in 2019.[1]  Campbell recommended a listing price of $865,000 for 6421 Buffalo Speedway. While the Debtor would like to sell this property for closer to the proposed listing price, the Debtor determined that it was in the best interests of his estate to pursue the offer made on that property for $815,000.  The Debtor is not trying to delay a sale by holding out for an above-market offer as suggested by Elbar in its Motion.

4.       Campbell has recommended that the Debtor list 6417 Buffalo Speedway for sale at a price point of $1,775,000 and the Debtor does not disagree with that recommendation.  In 2018, HCAD assigned a value of $2,074,000 to 6417 Buffalo Speedway and then $1,900,000 in 2019.[2]  The proposed listing price of $1,775,000 is a competitive price in light of the valuation from HCAD and it is a price point that is recommended by a top broker and real estate firm in the West University market.  Campbell believes that at or near this price point, 6417 Buffalo Speedway could sell within

---

[1] *See* Harris County Appraisal District: https://hcad.org/property-search/real-property/real-property-search-by-address/
[2] *See* Harris County Appraisal District: https://hcad.org/property-search/real-property/real-property-search-by-address/

four to six months.  The Debtor is eager to find a buyer for 6417 Buffalo Speedway and is not going to delay a sale by holding out for an above-market offer.

5.     The Debtor's plan is to liquidate non-exempt property to pay holders of allowed claims.  Based upon current market conditions and the advice of a professional broker, the Debtor anticipates that four to six months is a reasonable amount of time to market the properties at a fair price point.  The Debtor believes that the sale of the two properties on Buffalo Speedway will result in equity to the estate between $600,000 to $700,000 (which is net of payment of any broker commission and closing costs, payment of property taxes with any additional accrued interest, and payment of Elbar's claim).  Elbar is over-secured and more than adequately protected by an equity cushion in the two properties on Buffalo Speedway.  If the two properties sell at or near the average market prices, there is more than enough equity in the two properties to justify continuing to try to market those properties in an orderly fashion rather than in a more distressed sale scenario.  The Debtor does not believe that his plan puts Elbar's collateral at risk or that the amount of time he anticipates will be needed to market the properties is unreasonable.  The Debtor believes it is in the best interests of the estate to permit him to continue with his efforts to sell the properties in order to realize as much equity as possible for the bankruptcy estate through an orderly sale of these two properties.

6.     The Debtor disputes the assertion that the two properties on Buffalo Speedway are in disrepair and are not being maintained because the Debtor has actively maintained those properties before and during this case. There are almost always repairs and updates that could be done to a residential property that might make a house more attractive to prospective buyers or that could add value to a property; but that does not equate to property being in a state of disrepair.  A selection of photographs depicting the condition of 6417 Buffalo Speedway are attached hereto as **Exhibit "A"** and are incorporated herein for all purposes.  A selection of photographs depicting the condition of

6421 Buffalo Speedway are attached hereto as **Exhibit "B"** and are incorporated herein for all purposes. The photographs demonstrate that these two properties are well maintained and have been cared for by the Debtor. Additionally, neither of the two homes have ever flooded. The Debtor remodeled 6421 Speedway back in the mid-1990's and has had it rented ever since and the Debtor designed and constructed 6417 Buffalo Speedway himself in the late 1990's which has 3 stories (third stories are no longer allowed in West University Place, making it a unique property).

7.     Elbar expressed a concern in its Motion that it may take too long to sell the two properties on Buffalo Speedway and that the passage of time will result in diminishing the value of its collateral. Elbar's concern appears to stem from the perception that the two properties have already been marketed for a "long time" and that they have not been sold because of reluctance by the Debtor to do so. The reality is that the Debtor has wanted to sell these properties for quite some time but was not able to because title was clouded by James C. Hassell and prospective buyers, title companies, and brokers expressed reluctance to get in the middle of a title dispute. Despite the liens of James C. Hassell having been declared void in an arbitration award and state court judgment, he remained steadfast in his refusal to release the liens from the Debtor's properties. Indeed, one objective in this chapter 11 case was to compel James C. Hassell to remove his liens so that the properties could be liquidated; which belies the suggestion that the Debtor is reluctant to sell the properties. The Debtor participated in a global mediation in April that lasted two days and resulted in the resolution of a number of issues – except obtaining a release of the liens from James C. Hassell was not something that he was willing to do at that time. In May 2019, the Debtor was concerned about losing an offer to purchase his property in Walker County because the liens had not yet been removed. At that point, the Court instructed the Debtor to give James C. Hassell a deadline to either remove the liens or file an adversary proceeding to try to get that relief. Finally, in May 2019, James C. Hassell agreed to remove the liens from the Debtor's various properties and he did remove the lien on the Walker

County property first and the Debtor was able to consummate that transaction.  After a series of "failed" attempts to release the remaining liens, including the liens on the two Buffalo Speedway properties, the Debtor was finally able to confirm that the liens had been released in August 2019. Thus, the Debtor has only had a few months to truly market the properties without a threat of the lien issue chilling the interest of prospective buyers.  The Debtor is trying and has been trying to sell the properties, but there were delays caused by the fact that the Debtor had to clear up James C. Hassell's liens before he could do so.  The Debtor made every effort to get those liens removed without protracted and expensive litigation in this chapter 11 case and was successful in doing so.  The Debtor has every confidence that with the right amount of time to market the properties without the voided liens clouding title and with the assistance of a broker, that he can sell the properties for a fair price for the benefit of his estate.  The Debtor has no interest in prolonging the marketing process any longer than is absolutely necessary to obtain an offer within the range of the fair market value.

8.    The Debtor also disputes some of the facts and figures in Elbar's Motion and believes that some inaccurate data points resulted in inaccurate calculations.  The Debtor can demonstrate that there is substantially more equity or "runway" than is described by Elbar in its Motion.

9.    Elbar incorrectly asserts in its Motion that the properties are effectively uninsured because it alleges there are no vacancy endorsements in the insurance policies.  The Debtor's insurance policy through Chubb provides coverage in the event of vacancy but at an increased deductible.  *See* **Exhibit "C"** attached hereto setting forth the relevant excerpt from the Chubb policy.  The properties are insured by the Debtor to preserve their value for the estate.

10.    For these reasons, the Debtor respectfully requests that the Court deny Elbar's Motion requesting conversion of his case to a case under chapter 7.

**Response Under Fed. R. Bankr. P. 7008**

11.    The Debtor admits the allegations set forth in paragraph 1 of the Motion.

12.     The Debtor admits the allegations set forth in paragraph 2 of the Motion.

13.     The Debtor denies the allegations set forth in paragraph 3 of the Motion.

14.     The Debtor denies the allegations set forth in paragraph 4 of the Motion.

15.     The first sentence of paragraph 5 of the Motion is a statement of law and/or is a legal argument that the Debtor is not required to admit or deny.  The Debtor is an individual and therefore denies the remainder of the statements in paragraph 5 of the Motion.  To the extent that the last sentence of paragraph 5 of the Motion is referencing "income" from wages, the Debtor admits that there is no income from wages in his chapter 11 case.

16.     The Debtor denies the first sentence of paragraph 6 because it appears to be an absolute statement defining property of the estate but is incomplete and does not include everything. The Debtor denies the second sentence of paragraph 6 of the Motion regarding the two properties on Buffalo Speedway being in "disrepair" but the Debtor admits that the two properties are not occupied by tenants or generating income from rent.  The Debtor denies that the properties are not being maintained as the Debtor has actively maintained the two properties throughout the course of the case, including maintaining insurance on the properties at all times.  The Debtor admits that the two properties have been on the market but denies the implication that it has been too long.

17.     The Debtor admits the allegation in paragraph 7 that the two properties on Buffalo Speedway are each approximately 10,000 square foot lots that are adjoining lots in West University. The Debtor denies the allegation in paragraph 7 that the market prices would be approximately $1.8M to $2M for both lots.

18.     The Debtor admits the allegation in the first sentence of paragraph 8 of the Motion that his First Amended Chapter 11 Plan proposed to tear down the house on 6421 Buffalo Speedway and to construct a new house on that property after renting the residence for a year or less---however long it took to refurbish 6417 Buffalo and the house is currently listed for rent or sale The Debtor

6

denies that this provision in the First Amended Chapter 11 Plan is an admission that the structure has <u>no</u> value; but the Debtor admits that the value of the land at 6421 Buffalo Speedway exceeds the value of the improvement in its current condition. Furthermore, the current contract on the house, which the Buyers have expressed that they intend on living in the residence, proves that it does have value and is not in disrepair.  The Debtor admits the third sentence of paragraph 8.  The Debtor denies the fourth and fifth sentences of paragraph 8 of the Motion.

19.     The Debtor admits the allegation in paragraph 9 of the Motion that Elbar Investment Inc.'s claim as of the petition date was $1,445,153.75.  The Debtor denies the allegation in paragraph 9 regarding the claim amount attributed to Harris County, et. al., because it is not the amount reflected in the statements on the proof of claim field by Harris County *et. al.*.

20.     The Debtor admits the first sentence of paragraph 10 of the Motion.  The Debtor admits the second sentence of paragraph 10 of the Motion.  The Debtor admits the allegations in the third sentence of paragraph 10 of the Motion as to the fact that there are tax liens on the properties but denies the allegations as to the amount which is incorrect.  The fourth sentence of paragraph 10 is a statement of the law which the Debtor is not required to admit or deny.  The fifth sentence of paragraph 10 is admitted.  The sixth and seventh sentences of paragraph 10 are statements of the law and hypothetical statements about future events, which the Debtor is either not required to admit or deny or has insufficient information to admit or deny and therefore the Debtor denies same.

21.     The statements in paragraph 11 are statements of law and a summary of Elbar's argument, which the Debtor is not required to admit or deny.  However, the Debtor denies that Elbar is entitled to relief for the reasons argued in paragraph 11 of the Motion.  The Debtor denies that the calculation set out in the chart that appears after paragraph 11 of the Motion is accurate because some of the underlying data is incorrect.

22.     The Debtor denies the allegations in paragraph 12 of the Motion because the Debtor is without sufficient information to know what "promptly" means in terms of a point in time when the estate's equity in the properties on Buffalo Speedway would be exhausted; therefore the Debtor denies that allegation.

23.     The Debtor admits that the Buffalo Speedway properties can be sold and has sought the assistance of a professional real estate broker to advise regarding pricing.  The Debtor denies the allegations in the second and third sentences of paragraph 13 of the Motion.

24.     The Debtor denies the final sentence of the Motion in an unnumbered paragraph which is the prayer for relief.

### Prayer

WHEREFORE, the Debtor respectfully requests a brief continuance of the hearings currently set for January 8, 2020 and for such other and further relief as is just and proper.

Dated: January 3, 2020                         Respectfully submitted,

*/s/ Erin E. Jones*
Jones Murray & Beatty LLP
Erin E. Jones
Texas Bar No. 24032478
4119 Montrose Blvd. Suite 230
Houston, Texas 77006
Phone: 832-529-1999
Facsimile: 832-529-3393
Erin.jones@jmbllp.com

**ATTORNEYS FOR THE DEBTOR**

### CERTIFICATE OF SERVICE

Undersigned counsel certifies that on January 3, 2020, a copy of the foregoing was served electronically via the Court's electronic filing system for those parties registered to receive such service and/or via U.S. Mail first class pre-paid to those parties not registered for electronic service.

*/s/ Erin E. Jones*

8