**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ROYCE J. HASSELL** | § | **Case No. 19-30694** |
| | § | **(Chapter 11)** |
| Debtor. | § | |

**NOTICE OF VOTING AND OBJECTION DEADLINE**
**AND NOTICE OF CONFIRMATION HEARING**

A copy of a proposed plan, combined with its disclosure statement, is attached.  If you are the holder of a claim that is impaired by the plan, you have the right to vote by the enclosed ballot.  **The deadline for receipt of your ballot is [****************, 2020]**.  Late ballots will not be counted.

Please read the enclosed plan and disclosure statement in its entirety before you vote.  You may wish to retain your own attorney or accountant to assist you in determining whether to accept or reject the proposed plan.  Neither the Debtor nor his counsel can give you advice on how to vote.

The plan will not be binding on any person unless the United States Bankruptcy Court enters an order confirming the plan.  There are many requirements for confirmation of a plan.  These are contained in § 1129 of the Bankruptcy Code.  One of the requirements is that at least one class of impaired claims votes to accept the plan, by both a two-thirds majority (measured by the dollar amounts of claims that are voted) and a simple majority (measured by the number of persons who vote).  Accordingly, it is important that you return your ballot.  Mailing instructions are contained on the ballot.

You may also file a written objection to confirmation of the plan.  Written objections must be filed with the Clerk of the Bankruptcy Court.  **The deadline to file a written objection is [****************, 2020].  A vote rejecting the plan is not the same as an objection to the plan.**

You may also file an objection as to the adequacy of the disclosure statement that is attached.  The disclosure statement is required to contain "adequate information" to allow you to make an informed decision on how to vote on the plan.  If you object to the adequacy of the disclosure statement, you must file a written objection that is received by the Clerk of the Bankruptcy Court not later than **[****************, 2020]**.

A hearing on whether to confirm the proposed plan has been scheduled for **[****************, 2020 at ___.m.]** at the United States Courthouse, Courtroom 404, 515 Rusk Street, Houston, Texas 77002.  The hearing is open to the public.

# THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ROYCE J. HASSELL** | § | **Case No. 19-30694** |
| | § | **(Chapter 11)** |
| Debtor. | § | |

## DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION AND SECOND AMENDED DISCLOSURE STATEMENT

Royce J. Hassell (the "Debtor") files this Second Amended Plan of Reorganization and Second Amended Disclosure Statement ("Plan"). The Debtor is seeking to repay his debts over time from the orderly sale of non-exempt assets pursuant to the terms of this Plan. As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

The Bankruptcy Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Bankruptcy Court later confirms the Plan, then the Plan will be binding on the Debtor and on all creditors and interest holders in this case.

The Debtor represents that everything in this document is true to the best of his knowledge. **READ THIS DOCUMENT CAREFULLY IF YOU WANT TO KNOW:**

- Who can vote or object.

- The treatment of your claim is (*i.e.*, what your claim will receive if the plan is confirmed).

- The history of the debtor and significant events during the bankruptcy.

- How the court will decide whether to confirm the plan.

- The effect of plan confirmation.

- Whether this plan is feasible.

## 1. Background

The Debtor filed a voluntary petition on February 4, 2019 (the "Petition Date") that commenced this chapter 11 bankruptcy case ("Chapter 11 Case" or "Bankruptcy Case"). The filing of the petition constituted an order for bankruptcy relief under § 301 of the Bankruptcy Code. Upon the filing of the case, an automatic stay was imposed pursuant to § 362(a) of the

Bankruptcy Code. The automatic stay prohibits most collection activities against the Debtor and his property. There are certain exceptions set forth in § 362(b) of the Bankruptcy Code.

The first date scheduled for the meeting of creditors under § 341(a) of the Bankruptcy Code was March 14, 2019. The meeting took place as scheduled and was concluded on that date. The deadline for filing claims in this case was June 12, 2019 ("Claims Bar Date").

When the Debtor filed this Bankruptcy Case, all of his property became property of the bankruptcy estate (the "Estate"). The Debtor was allowed to claim that certain property should be treated as exempt property and excluded from the bankruptcy estate. On February 19, 2019, the Debtor filed his list of claimed exempt property. Federal Rule of Bankruptcy Procedure 4003(b) requires that all objections to the claimed exemptions be filed not later than 30 days after the conclusion of the § 341 meeting of creditors. No objections were filed. The Debtor later amended Schedules B, C, and F on October 24, 2019. No exemptions were changed in the amended schedule of exemptions filed on October 24, 2019; rather it was filed in tandem with the amendments to the amendments to the personal property schedule so that the schedules B (personal property) and schedule C (exemptions) would match. No objections to exemptions were filed in this case. Accordingly, the exemptions were allowed.

The following bankruptcy cases are related to this Bankruptcy Case:

| Case Name | Case Number | Date Filed | Nature of Relationship |
|---|---|---|---|
| R. Hassell Holding Company, Inc. ("RHHC") | 18-33541 (Lead Case, jointly administered with RHC case) | June 29, 2018 | Business owed by the Debtor. Pending in Chapter 7. |
| R. Hassell & Co., Inc. ("RHC") | 18-33608 | July 2, 2018 | Business owed by the Debtor. Pending in Chapter 7. |
| R. Hassell Builders, Inc. ("RHB") | 18-33619 | July 2, 2018 | Business owed by the Debtor. Pending in Chapter 7. |
| Hassell 2012 Joint Venture | 18-31189 | March 8, 2018 | Businesses owned by Debtor have an interest in this joint venture partnership. Involuntary Filing – No order for relief entered. Currently abated. |

## 2. Description of Assets

The Debtor filed schedules of all of his assets and liabilities on February 19, 2019 and later amended his schedule of personal property on October 24, 2019. Complete copies of the

schedules are available from the Clerk of the Court.  The primary assets of the bankruptcy estate, their estimated values and associated liens are:

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| 6417 and 6421 Buffalo Speedway – Residential Real Property | $2,565,000.00 | $1,850,000 | $0.00 | **$715,000.00** | HCAD Bank Appraisal Offer(s) Broker Opinion |
| 10181 Valley Drive S. – Residential Real Property | $2,150,000.00 | $299,680.76 | $0.00 | **$ 1,850,319.24** | MCAD Broker Opinion |
| Trinity Ranch Property | $879,248.30 | $0.00 | $0.00 | **$879,248.30** | Sold Per Order at Docket No. 38[1] |
| Koontz Rd. – Real Property | $74,000.00 | $74,000.00 | $0.00 | **$74,000.00** | Walker County Appraisal District |
| Interest in RHHC, RHC, RHB | Unknown | None known | $0.00 | **$  0.00** | RHHC, RHC, and RHB are debtors in pending chapter 7 cases. Value unknown. To the extent there is any value, it would be contributed to this plan.[2] |
| JCH Intervivos Trust – 20% Beneficiary | Unknown | None known | $0.00 | **$  0.00** | Debtor has not been provided with information from trustee |

[1] The Debtor retained half of the mineral interests in the Trinity Ranch Property.  The value of that interest is unknown but if there is any value, it would be contributed to the plan for payment of allowed claims.

[2] Pursuant to the 9019 Order entered by this Court, the chapter 7 trustee for the bankruptcy estates of RHHC, RHC, and RHB has abandoned all claims or potential claims, including but not limited to those against Springwoods Realty, HCID 18, Trunkline, Issacks Directional Drilling, Sea Robin *et. al.*.  To the extent that those claims are pursued and there is a recovery into RHHC, RHC, and RHB, any distribution to which the Debtor is entitled would be contributed to this Plan.  No estate assets would be used to pursue any of these claims.

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| | | | | | sufficient to evaluate value of interest in trust.  To the extent there is any value, it would be contributed to this plan. |
| Claims/Lawsuits against various parties | Unknown | None known | $0.00 | $   0.00 | Claims against third parties would only be pursued on a contingent fee basis or from a non-estate source. Value of claims to estate is unknown and is contingent upon retention of counsel on a contingent fee basis. To the extent that the Debtor's interest is a community property interest in a claim that belongs to his spouse, his community property interest is preserved for the estate.  To the extent there is any value, it would be contributed to |

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| | | | | | this plan. |
| 101 Shares in HCCI | Unknown | None known | $0.00 | $  0.00 | Debtor has insufficient financial information from HCCI to determine if this asset has any value. Upon belief the assets of HCCI have been transferred to an affiliate of James C. Hassell. To the extent there is any value, it would be contributed to this plan. |
| 5302 Maple | $2,175,000.00 | $1,008,363.71 | 100% - Homestead | $  0.00 | HCAD Bank Appraisal |
| **TOTAL** | | | | **$3,518,567.54** | |

All claims against any party that are identified in the Debtor's schedules are preserved under this plan.  However, the Debtor has identified the following lawsuits that are most likely to be filed if counsel can be retained on a contingent fee basis and/or if funded from a non-estate source.

___X___ Lawsuits to recover fraudulent transfers:

| Potential Defendant | Date(s) of Transfer(s) | Amount of Claim |
|---|---|---|
| None known. | | |

___X___ Lawsuits to recover preferences:

| Potential Defendant | Date(s) of Transfer(s) | Amount of Claim |
|---|---|---|
| None known. | | |

___X___ Lawsuits arising under other provisions of the Bankruptcy Code:

| Potential Defendant | Description of claim | Amount of Claim |
|---|---|---|
| HCCI, James Hassell, Michael Hassell (as Trustee), Michael Hassell, Jason Hassell, Phillip Hassell, Shawn Hassell Potts | Turnover 11 U.S.C. §542 Declaratory Judgment – Regarding ownership rights in HCCI and JCH Intervivos Trust. Claims are pending in Adversary No. 19-03452. The Debtor removed this claim from state court and the Bankruptcy Court recently entered an order denying the motion to remand filed by HCCI *et. al.*. The proofs of claim filed by HCCI *et. al.* will be resolved in this adversary proceeding as well. | Unknown. Debtor has insufficient financial information to determine value. Resolution of the claims of HCCI *et. al.* against the Debtor will be resolved in this adversary proceeding as an offset against the claims and possibly could result in an affirmative recovery. Counsel for the Debtor will prosecute the objections to these claims in the adversary proceeding on the terms approved by the Court. |

___X___ Lawsuits arising under non-bankruptcy law:

All claims against any party that are identified in the Debtor's schedules are preserved under this plan. However, the Debtor has identified the following lawsuits that are most likely to be filed if counsel can be retained on a contingent fee basis and/or if funded from a non-estate source. The Debtor would pursue claims primarily on a contingent fee basis absent further order of the Bankruptcy Court authorizing him to retain counsel on an hourly basis.

| Potential Defendant | Description of claim | Amount of Claim | Describe Whether Debtor Intends to Pursue Lawsuit and, if not, Why |
|---|---|---|---|
| Methodist Hospital | Personal injury claim relating to IVC filter and urethral stent. | Unknown. | Perdue & Kidd retained on a contingent fee basis pursuant to Order at Docket No. 61. |
| Liberty Mutual *et. al.* | Breach of Contract. Negligent and/or Fraudulent inducement of various agreements to benefit insurers, tortious interference with contract rights and conspiracy to defraud, | Total amount unknown but in excess of $1,000,000 | Yes, intend to pursue but only on contingent fee basis and/or with non-estate resources. |

| Potential Defendant | Description of claim | Amount of Claim | Describe Whether Debtor Intends to Pursue Lawsuit and, if not, Why |
|---|---|---|---|
| | failure to defend and failure to negotiate in good faith. | | |
| Coats Rose, Richard Rose, Patrick Gaas, Heather Asselin, and David Lynch | Claims filed in Case No. 2015-29275 in 234th Judicial District Harris County against parties listed for negligence, negligent misrepresentation, legal malpractice, breach of fiduciary duty, fraud and fraudulent concealment. Claims were dismissed based upon Texas Anti-Slapp statute, which the Debtor appealed. The appeal is pending as Case No. 14-17-00208-cv before the 14th Court of Appeals. All briefing is complete on appeal but appeal was stayed as a result of bankruptcy filing. | Total amount unknown but in excess of $1,000,000 | The Debtor would like to lift the stay to allow the Court of Appeals to make a decision regarding the appeal. The Debtor would only continue with this lawsuit if successful on appeal and if he is able to retain counsel on a contingent fee basis. |

### 3. Events Leading Up to Bankruptcy / Significant Events During Bankruptcy

**3.1    Significant Events Leading Up To Bankruptcy.**  The Debtor filed bankruptcy after the following events caused him to determine that bankruptcy was the best course of action for himself and his creditors:

### 3.1.1   Introduction

From 2013 to 2019, while locked out of revenues from multi-million dollar construction contracts to which they were entitled, the Debtor, his spouse and his companies were forced to defend themselves against fabricated, unmerited, and malicious allegations of wrongdoing as set out in a false narrative crafted by Hassell Construction Company, Inc.'s conflicted corporate counsel, Coats Rose. Although the Debtor, his spouse and his companies eventually defeated that narrative, which included allegations of breach of fiduciary duty, negligence, incompetence and fraud, the years of litigation took a financial, physical and emotional toll on the Debtor leading to this Chapter 11 case.

Three of the Debtor's companies, R. Hassell Holding Company, Inc. ("RHHC"), R. Hassell & Company, Inc. ("RHC") and R. Hassell Builders, Inc. ("RHB")(herein jointly referred to as the "R. Hassell Entities"), filed Chapter 11 cases in June/July of 2018, but when their attorney failed to appear at a status conference, the cases were converted to Chapter 7. Thereupon, the Debtor, as President of the R. Hassell Entities, lost the ability to control a hard-fought valuable asset (*i.e.,* a final Judgment confirming the arbitration award in favor of RHC and RHB against HCCI in the approximate amount of $1.2 million plus post judgment interest). The Chapter 7 Trustee settled that judgment for only $500,000. The conversion of the Chapter 11 cases of the R. Hassell Entities to Chapter 7 cases was a significant factor leading to the personal bankruptcy filing of the Debtor causing the Debtor to suffer personal harms including costing him the ability to earn regular income in large part due to the destruction of the value of RHHC, RHC and RHB (which included interests in various joint ventures).

### 3.1.2   The Arbitration, The Arbitration Award, And HCCI's Subsequent Transfer of Assets

Beginning in 2013 HCCI and its controlling managers demanded that the Debtor and the R. Hassell Entities submit to a costly arbitration, which they knew the Debtor and his companies could ill afford. As the revenues of the Hassell 2012 Joint Venture continued to flow exclusively through HCCI's bank accounts, and having successfully locked the Debtor and his companies out of all ongoing partnership contracts, the HCCI parties had millions to spend on attorneys. On unconscionability and fraud grounds the Debtor and the R. Hassell Entities objected to the jurisdiction of the arbitrators but were eventually coerced to defend claims against them individually under protest. Despite the fact that there was no arbitration clause in the Springwoods Project contract, Coats Rose continued to press the arbitrability of such claims as being "inextricably intertwined" with claims related to the Hassell 2012 Joint Venture. In January of 2015, in addition to representing HCCI, Hassell Management Services, LLC and James C. Hassell, individually, Coats Rose also agreed to represent the Debtor's siblings Michael Hassell, Phillip Hassell and Shawn Hassell Potts individually in the arbitration. Of the three, eventually only Shawn Hassell Potts was named as a party in the arbitration. The Debtor's siblings are equal beneficiaries of the JCH Trust with the Debtor. The JCH Trust, of which Michael Hassell is Trustee, is the majority shareholder of HCCI. Hassell Management Services LLC is a company owned by James C. Hassell, the Settlor of the JCH Trust, as well as JCH Trust beneficiaries Michael Hassell, Phillip Hassell and Shawn Hassell Potts.

Following an eight-day arbitration hearing before a three-member panel of American Arbitration Association construction industry experts wherein the testimony of seven witnesses, including two opposing experts, and hundreds of exhibits were introduced, RHC and RHB were awarded $1.2 million, and deeds of trust on the Debtor's personal real estate were declared void. After the arbitration award was confirmed in a final judgment, HCCI was denuded of its assets while the Debtor's siblings filed new claims in a new lawsuit filed in Harris County District Court making many of the same false allegations which had already been defeated in the arbitration.

Additionally, after the arbitration award was announced, HCCI's managers initiated a new involuntary bankruptcy petition against the Hassell 2012 Joint Venture partnership while appealing the arbitration award on grounds which included allegations that the award should have been issued against the Hassell 2012 Joint Venture rather than HCCI. In the meantime, the Trustee of the JCH Trust and other siblings of the Debtor began operating HCCI under a new name, Hassell Construction Group, LLC, using HCCI's equipment, employees and contracts.

### 3.1.3   HCCI's Involuntary Bankruptcy Petition Against The Hassell 2012 Joint Venture

It was HCCI which successfully opposed the Debtor's attempts to add the Hassell 2012 Joint Venture partnership as a party to the arbitration.  Significantly, the Hassell 2012 Joint Venture is not a party to the 9019 compromise of the arbitration award. Resultingly, the Hassell 2012 Joint Venture partnership has not been wound down in accordance with Texas law.  The compromise approved by the 9019 Order excludes resolution of derivative claims and abandons all unsettled claims back to the R. Hassell Entities, expressly including any claims against the Hassell 2012 Joint Venture. [3]

In the arbitration it was determined that the Hassell 2012 Joint Venture's 31 projects generated approximately $100,000,000 in revenues and approximately $20,000,000 in joint venture profits.  The partnership revenues flowed almost exclusively through HCCI's bank accounts but the partnership funds have not been fully accounted for since HCCI declined to comply with the arbitrators' orders to produce its full general ledger. HCCI's apparent use of nearly two million of partnership revenues to pay its own attorneys' fees, with the attendant failure of the partnership to reimburse the Debtor and his companies their attorneys' fees, requires HCCI to reimburse the partnership or the partnership to reimburse the Debtor and his companies.  The Hassell 2012 Joint Venture's failure to reimburse the Debtor and his companies their attorneys' fees is a significant factor leading to the Debtor's chapter 11 filing.

### 3.1.4   Liberty Mutual, AIG, Alliant, CHS, Scott Chapman, Rhesa Boulton and Rosalyn Hassell Participated in Obstructing the Debtor From Pursuing Claims Related to the Springwoods Project and the Hassell 2012 Joint Venture

The failure of various insurers, sureties and their agents to take responsibility for, much less recompense the Debtor and his companies for harms caused by their tortious involvement in the business of the Debtor, including HCCI, and their failure to intervene or defend against claims were significant factors causing cash flow difficulties for the Debtor and his entities. Agents of Liberty Mutual and AIG, including particularly Rhesa Boulton and Rosalyn Hassell, induced the Debtor and his spouse and the R. Hassell Entities and RHP into various agreements for the benefit of the agents and their principals with actual or imputed knowledge of ongoing plots against the Debtor and his companies. Thereafter, such insurers and agents refused to even recognize the Debtor's and his

---

[3] The Hassell 2012 Joint Venture involuntary case is currently abated.

companies' role as principal on ongoing contracts wherein revenues were being dissipated. The insurers and their agents materially harmed the Debtor financially, refused to live up to their policies, bear responsibility for the eventual demise of the R. Hassell Entities and probably that of HCCI, and were significantly instrumental in causing the Debtor's filing of this Chapter 11 case.

### 3.1.5   Unreimbursed the Springwoods Project Costs and Obstruction Of Damage Claims

The R. Hassell Entities have claims against Harris County Improvement District No. 18 and its developers, Exxon and Springwoods Realty Company, for labor and equipment costs personally incurred by the Debtor to perform the Springwoods Project. The claims of the R. Hassell Entities have been abandoned pursuant to a 9019 compromise in the abated R. Hassell Entities bankruptcy cases. The Debtor's attempts to pursue such claims have been deliberately obstructed. Currently there are three cases on appeal and three related but abated cases in state court seeking recovery of the Springwoods Project damages.

At the direction of the Debtor, HCCI filed the initial lawsuit against Harris County Improvement District No. 18 (the "District") and Springwoods Realty Company, Inc. on July 26, 2012, by attorney Pascal Piazza. HCCI's suit against third parties, HCID 18 and Springwoods Realty Company, sought a recovery against the parties financially responsible for defective plans and delay costs associated with the Springwoods Project construction. After the lawsuit was filed- and purportedly while his siblings were assisting him in prosecuting claims against the District and its developers- the Debtor's siblings formed a purportedly "informal" and unpaid relationship with Coats Rose lawyers who had apparently agreed they would eventually seize the assets of the Debtor and his spouse to pay for the Springwoods Project losses. During that secret relationship the Debtor's siblings invited the Debtor to run HCCI's office operations as Chief Operating Officer and invited his companies into a $100,000,000 partnership whereby the management, assets, employees, contracts, offices and accounting of HCCI and the R. Hassell Entities were to be consolidated. Just ten months into that relationship the siblings locked the Debtor and his companies out of the partnership revenues leaving the Debtor with no ongoing projects outside the partnership. A few months later, on May 5, 2014, HCCI and James C. Hassell initiated frivolous and prohibitively costly arbitration claims the Debtor, his spouse, and the R. Hassell Entities. As negotiated by attorneys loyal to the Springwoods lawsuit defendants, any settlement discussions were conditioned on turning over control of the Springwoods lawsuit to HCCI's corporate counsel, Coats Rose, co-counsel to attorney Bogdan Rentea.

The division of loyalties caused by the appointment of Coats Rose as HCCI's corporate counsel eventually caused attorney Pascal Piazza to withdraw as HCCI's attorney in the Springwoods Project lawsuit against the Springwoods defendants. HCCI's management replaced Mr. Piazza with Bogdan Rentea who was Coats Rose's co-counsel in the arbitration. Shockingly, Mr. Rentea then non-suited the Springwoods defendants gratuitously. As a result, the Debtor and his companies were prevented from intervening

in the lawsuit the Debtor had directed Mr. Piazza to file.  Although the claims have yet to be tried, currently, there are three abated appeals and three abated state court cases dealing with unrecovered Springwoods Project costs and losses.

Unreimbursed costs to the Debtor incurred in performing the Springwoods Project are a significant factor in the Debtor's Chapter 11 filing and the Chapter 7 cases of the R. Hassell Entities.

### 3.1.6    The Failure of James C. Hassell to Release Invalid and Voided Liens on Real Property of the Debtor

James C. Hassell's failure to release invalid and even voided liens on the Debtor's properties was a significant factor leading to the Debtor filing this Chapter 11 case. Despite repeated requests for years before the Petition Date, James C. Hassell refused to release such liens from the Debtor's property.  Even when the arbitration panel entered an award voiding such liens in favor of James C. Hassell or HCCI, which award was later confirmed by the state district court, James C. Hassell persisted in his refusal to release his liens against the Debtor's property.  Wrongfully encumbering the Debtor's real property prevented the Debtor from being able to liquidate his interest in those properties to reduce his cash needs as HCCI and James C. Hassell prolonged their unfounded and vicious attack on the Debtor and his business interests.  The Debtor's attempts to sell the real property in a non-distressed manner was prevented by the cloud on title from James C. Hassell's wrongful liens and required the Debtor to carry all the costs associated with ownership of the real property during the years that James C. Hassell refused to release his wrongful liens.  Eventually those costs became overwhelming and the Debtor needed to seek bankruptcy protection in order to avoid James C. Hassell's liens so that the real property could be liquidated and creditors could be paid.    Even after this Chapter 11 Case was filed (and the automatic stay went into effect), James C. Hassell's refusal to release the liens continued as an intentional and flagrant violation of the automatic stay and the Bankruptcy Court's order for relief.  He refused to release the liens until the Bankruptcy Court instructed the Debtor's attorney to file an adversary proceeding unless the liens were released by a date certain.  Even after James C. Hassell agreed to release the voided liens, it took months to actually comply.

While the foregoing is not intended to be an exhaustive description of all factors leading to the filing of this chapter 11 bankruptcy case, it is intended to provide an overview of some reasons why the Debtor experienced financial difficulties and legal challenges that resulted in the filing of this Chapter 11 Case.

### 3.2    Significant Events in Related Bankruptcy Cases.

### 3.2.1  INCOMPLETE AND MISLEADING DISCOVERY RESPONSES ALTERED THE COURSE OF TWO INVOLUNTARY BANKRUPTCY CASES AGAINST THE HASSELL 2012 JOINT VENTURE AND THE SPRINGWOODS JOINT VENTURE

In February of 2015, in order to prevent the dissipation of the $100,000,000 in construction revenues on contracts they had been locked out of, and in order to salvage the Springwoods Project lawsuit in which Bogdan Rentea had substituted in for Pascal Piazza, the R. Hassell Entities filed an involuntary bankruptcy petition against which attorney Leonard Simon styled *In re the Hassell 2012 Joint Venture and the Springwoods Joint Venture.* The involuntary case alleged that the R. Hassell Entities had been locked out of partnerships with HCCI and that such partnerships were dissipating partnership assets while also failing to pay debts as they became due. HCCI and James C. Hassell opposed the involuntary alleging that the Debtor and the R. Hassell Entities owed HCCI a great debt as calculated by Shawn Hassell Potts which offset and exceeded the profits owed to them by the Hassell 2012 Joint Venture. Discovery responses omitted relevant accounts payable information which could have changed the outcome of the cases, and privilege log and payment information pertaining to Coats Rose which apparently omitted relevant information.

During the Spring of 2015, the Bankruptcy Court permitted limited discovery wherein documents evidencing that Hassell family members and their corporate counsel were involved in a relationship to intended to saddle the Debtor and his companies with the Springwoods Project losses. Following an evidentiary hearing during which HCCI's CPA, Mr. Steve Ligon, testified as to the notes on HCCI's financials regarding the Hassell 2012 Joint Venture, the Bankruptcy Court issued a memorandum opinion finding that the Hassell 2012 Joint Venture is a Texas general partnership.

In May of 2016, the Bankruptcy Court held a hearing on whether the Hassell 2012 Joint Venture was paying its debts as they became due. The documentary evidence available to the Debtor was limited to the documents withing HCCI's sole control and management. Document production of HCCI was supervised by HCCI's corporate counsel, Coats Rose Vice President, Patrick E. Gaas. Based on the evidence presented, the Bankruptcy Court ruled the R. Hassell Entities did not have sufficient evidence of unpaid debts to warrant granting the involuntary petition and dismissed the case. The R. Hassell Entities appealed the Bankruptcy Court's dismissal of the involuntary petition, and months later discovered during the arbitration that HCCI's accounts payable documents had been misrepresented and available documents had been withheld during the bankruptcy proceedings.

In June of 2017, the final arbitration hearing was held, and in July of 2017, while post arbitration briefs were underway, the United States District Court remanded a portion of the Bankruptcy Court's dismissal of the Hassell 2012 Joint Venture involuntary case for further hearings on two of the alleged unpaid debts. During the remand the R. Hassell Entities filed a Rule 60(b) motion for reconsideration of the involuntary dismissal based on the newly discovered evidence adduced during the arbitration. The Bankruptcy Court denied the Rule 60(b) as untimely. On October 27, 2017, the R. Hassell Entities appealed the Rule 60(b) denial.

In December of 2017, an arbitration award was issued in favor of RHC and RHB which, with modifications later requested by both sides, was finalized in January of 2017.

Thereafter, the R. Hassell Entities moved to dismiss their appeal of the Rule 60(b) denial which the District Court granted on February 12, 2018.

### 3.2.2   Although HCCI Had Opposed the Involuntary Case Filed by The R. Hassell Entities Against The Hassell 2012 Joint Venture For Over Three Years, Less Than a Month After That Case Was Closed, HCCI Initiated Its Own Involuntary Case Against The Same Partnership

Less than a month after the 2015 Hassell 2012 Joint Venture involuntary case was terminated, and after having opposed the R. Hassell Entities' involuntary petition against the Hassell 2012 Joint Venture for three years while dissipating the assets of the partnership, HCCI initiated a new involuntary case against the Hassell 2012 Joint Venture alleging the partnership owed HCCI $15,000,000.  In its involuntary petition claims, HCCI alleged that Arbitration Award should be interpreted to mean that HCCI is owed $15,000,000 in joint venture profits.  In addition, HCCI's controlling owners removed the arbitration case to the bankruptcy court, including a newly filed intervention by the Debtor's siblings alleging they had a justiciable interest in the controversy which warranted their intervention.

On March 9, 2018, the Bankruptcy Court ruled that HCCI's removal action was in bad faith and remanded the arbitration case to state court.  Thereafter, the Bankruptcy Court stayed the Hassell 2012 Joint Venture involuntary case.  Eventually the Chapter 7 Trustee of the R. Hassell Entities 9019 settlement of sanctions claims against the attorneys for HCCI included a payment to the estate by both attorney Ron Satija and attorney Bogdan Rentea.

On March 22, 2018, the state court struck the intervention petition of the siblings.

On March 26, 2018, the state court issued a Final Judgment confirming the Arbitration Award.

On April 27, 2018, the Debtor's siblings filed new claims against the Debtor, R. Hassell Properties, Inc. and Terry Tauriello related to their 2013 lockout of the Debtor.

On June 19, 2018, HCCI and James C. Hassell appealed the state court Final Judgment confirming the Arbitration Award after supporting its $100 cash deposit in lieu of supercedeas bond based with HCCI's unaudited financials indicating HCCI's negative net worth.

On appeal HCCI argued that the Arbitration Award and Final Judgment were issued against the wrong party and should have been issued against the Hassell 2012 Joint Venture.

On July 11, 2019, HCCI and James C. Hassell dismissed their appeal pursuant to the 9019 compromise they entered into with the Trustee for the R. Hassell Entities.

Thereafter, the Bankruptcy Court continued the abatement of the new Hassell 2012 Joint Venture involuntary case.

### 3.2.3   The Conversion of The R. Hassell Entities' Chapter 11 To Chapter 7 Cases To Chapter 7 Cases

On June 29, 2018, RHHC filed a Chapter 11 bankruptcy, as did the Debtor's companies RHC and RHB on and on July 2, 2018. Thereafter the R. Hassell Entities' Chapter 11 cases were converted to Chapter 7 cases when attorney Leonard H. Simon failed to appear for a status conference in the cases. After the cases were converted, Trustee Randy Williams was appointed Trustee of the Chapter 7  cases and settled the arbitration award for $500,000.

**3.3   Significant Events During The Bankruptcy.**  The Debtor has made significant progress in putting together this Plan, despite the fact that the Debtor has been hospitalized three times since filing this Chapter 11 case and that his bankruptcy attorney also suffered a serious health issue as well. Specifically, the Debtor has made significant progress in liquidating non-exempt assets, in obtaining a release of invalid liens, in successfully negotiating allowed amounts for certain creditor's claims, in filing the objections to significant claims that are diluting potential recoveries for holders of legitimate claims, and by successfully removing a state court lawsuit which will determine significant ownership rights of the Debtor in HCCI in a more expeditious fashion than would occur in the state court. The Debtor has taken steps throughout this Bankruptcy Case to limit unnecessary litigation and to advance as much as possible without unnecessary hostility or disputes. The Debtor approached this Bankruptcy Case in this manner to avoid incurring unnecessary fees and expenses and to administer this Estate as expeditiously as possible. The following significant events have occurred during this chapter 11 bankruptcy case

### 3.3.1   Schedules and Statement of Financial Affairs.

On February 4, 2019, the Debtor filed schedule D, E, F and the List of 20 Largest Creditors (Docket No. 4). On February 19, 2019, the Debtor filed his schedule A, B, C, G, H, I, J and Statement of financial affairs (Docket No. 14)(Docket Nos. 4 and 14 are referred to collectively as the "Schedules"). On October 24, 2019, the Debtor amended his Schedule B, C, F, and Statement of Financial Affairs to clarify the nature of various assets, to list claims existing on the Petition Date but unknown to the Debtor at the time (no changes were made to claimed exemptions), and to list additional litigation pending on the Petition Date but unknown to the Debtor at the time. The Schedules set forth the Assets of the Debtor and various claims against the Estate as well as other information pertaining to transactions and litigation to which the Debtor was a party prior to the Petition Date.

### 3.3.2   Employment of Professionals.

On April 3, 2019, the Court entered an Order Authorizing the Debtor to Employ Jones Murray & Beatty, LLP as its general bankruptcy counsel ("JMB Employment Order", Docket No. 27). On September 20, 2019, the Court entered an Order authorizing the employment of Perdue & Kidd as special litigation counsel for the Debtor to pursue personal injury claims of the Debtor on a contingent fee

basis ("Perdue Order", Docket No. 61). On December 16, 2019, the Debtor filed a Motion to Employ Coldwell Banker/Eric Campbell as a broker to sell two pieces of real property on Buffalo Speedway ("Coldwell Banker/Campbell Application", Docket No. 82). The Court entered an order authorizing the Debtor to employ Coldwell Banker/Campbell on January 7, 2020 ("Coldwell Banker/Campbell Order", Docket No. 108). On December 30, 2019, the Debtor filed a Motion to Employ Coldwell Banker/Beverly Smith as a broker to sell another piece of real property in Willis, Texas ("Coldwell Banker/Smith Application", Docket No. 90). As of the date of filing this plan, the deadline to respond to the Coldwell Banker/Smith Application has not run and therefore is still pending. On January 3, 2020, the Debtor filed a Motion to Employ the Wilson Law Firm as special counsel for tax matters ("Wilson Application", Docket No. 106). As of the date of filing this plan, the deadline to respond to the Coldwell Banker/Smith Application has not run and therefore is still pending.

**3.3.3   Operating Reports.**   The Debtor has filed monthly operating reports at Docket Nos. 23, 42, 50, 51, 59, 60, 69, 70, 83, 84, and 104. The Debtor will continue to file required reports as this case proceeds.

**3.3.4   Lift Stay Motion/Sale of Trinity Ranch Property/Release of Liens.**   On March 29, 2019, AMI Lenders, Inc., a creditor with a secured claim against real property of the Debtor located in Walker County, filed a Motion for Relief from Stay ("AMI Lift Stay Motion", Docket No. 26). The Court held a preliminary hearing on the AMI Lift Stay Motion on April 12, 2019 and continued the hearing to May 9, 2019. The Court instructed counsel for the Debtor to initiate an adversary proceeding against James C. Hassell by May 3, 2019 if he refused to agree to release liens on the Debtor's real property. On May 3, 2019, counsel for James C. Hassell agreed that James C. Hassell would file releases of liens on the Debtor's real property by May 17, 2019. James C. Hassell released his lien on the Walker County property before the hearing on the Ranch Sale Motion (as defined herein) on May 9, 2019. Since then, the balance of the lien releases were recorded over time in the real property records. The Debtor believes that such liens were wrongful and had no basis in law or fact, that James C. Hassell's failure to release such liens was a willful and intentional violation of the automatic stay, and that timely release of such liens could have avoided Royce Hassell's bankruptcy and would have been avoided in an adversary proceeding. The Debtor expressly retains all claims against James C. Hassell, and others acting in concert with him, relating to his liens on the Debtor's property, including but not limited to claims for violation of the automatic stay under section 362 of the Bankruptcy Code.

On April 26, 2019, the Debtor filed an emergency motion to sell real property located in Walker County for $1,402,239 ("Ranch Sale Motion") which, in the opinion of Royce Hassell, is a lower sales price that would be achieved in a non-distressed sale. The sale was distressed because of the liens James C. Hassell clouding title. An order authorizing the Debtor to sell the Walker County real property for $1,402,239.00 as set forth in the Ranch Sale Motion ("Ranch Sale Order", Docket No. 38) was entered on May 9, 2019.

**3.3.5    Motion to Sell 6421 Buffalo Speedway.**  The Debtor filed a Motion to Sell 6421 Buffalo Speedway ("Sale Motion 6421 Buffalo", Docket No. 91) for a sale price of $815,000 with a proposed closing date of February 14, 2020.  The prospective buyers have provided the Debtor with proof of approval for financing and the Debtor is awaiting a ruling authorizing him to consummate the proposed sale.

**3.3.6    Removal of State Court Cases.**  The Debtor successfully removed state court litigation to the Bankruptcy Court, which will promote the efficient administration of his Chapter 11 Estate.  On May 3, 2019, the Debtor removed two state court cases, initiating adversary proceedings 19-03452 and 19-03453 ("Removed Cases").  The non-removing parties, which include James C. Hassell, Hassell Construction Company, Inc., Jason Hassell, Philip Hassell, Michael Hassell (individually and as Trustee of the James C. Hassell Intervivos Trust), and Shawn Hassell Potts, filed motions to remand the Removed Cases.  The Debtor opposed remand of the Removed Cases because the controversies to be decided in the Removed Cases are the same as those set forth in the proofs of claim filed by the non-removing parties.  During the removal hearing counsel for non-removing parties advised the Court that the removed parties intended to effectuate service of the lawsuit on R. Hassell Properties, Inc. and Terry Tauriello.  Royce Hassell and Terry Tauriello are owners of R. Hassell Properties, Inc. all of which were injured as a result of the wrongful actions of HCCI and its owners.  On January 7, 2020, the Court entered an order and a memorandum opinion denying the motion to remand filed by the non-removing parties ("Order Denying Remand", Docket No. 109).

**3.3.7    Mediation with R. Hassell Entities et. al.**  The day following the Debtor's Chapter 11 filing, the Chapter 7 Trustee for the R. Hassell Entities filed an "Application to Compromise Controversy with Hassell Construction Company, Inc., Hassell Construction Group, LLC, and James C. Hassell."    The Debtor, along with the Trustee and other participated in two days of mediation in late April 2019.  On May 28, 2019, Randy Williams, the chapter 7 trustee in the bankruptcy cases of R. Hassell Holding Company Inc. ("RHHC"), R. Hassell & Co. Inc. ("RHC"), and R. Hassell Builders, Inc. ("RHB", together with RHHC and RHC, the "Trustee Estates" or the "R. Hassell Entities"), filed a motion to compromise a multi-party dispute ("9019 Motion", Docket No. 41).  A hearing on the 9019 Motion was held on June 11, 2019 and the compromise was approved by the Bankruptcy Court by entry of an order ("9019 Order", Docket No. 48) but the 9019 Motion itself was not granted because various parties, including the Debtor, did not agree with or adopt the recitation of facts made by the Trustee in support of the 9019.  As a result of the conversion of the Chapter 11 cases of R. Hassell Entities' Chapter 7, the Debtor (as President of those three companies) lost the ability to control a valuable asset (*i.e.,* a judgment confirming an arbitration award against HCCI in the approximate amount of $1.2 million plus post judgment interest), which the Trustee of the R. Hassell Entities settled for only $500,000 pursuant to a 9019 Order.  The 9019 Order does not address the Debtor's derivative claims as an owner and beneficial owner of HCCI through the JCH Trust.  Significantly, as part of the compromise approved by the 9019 Order, the Debtor negotiated abandonment of claims of the R. Hassell Entities not settled by the Trustee in the compromises approved by the 9019 Order.  The Debtor believes such claims are valuable and as the 100% owner of the R. Hassell Entities, he

intends to prosecute such claims through those entities, which may benefit his bankruptcy Estate as well as the R. Hassell Entities' affiliate, R. Hassell Properties, Inc. No estate property would be used to prosecute such claims.  Recovery of claims of the R. Hassell Entities will be distributed in accordance with the corporate governance documents of the respective entity and its affiliate, R. Hassell Properties, Inc. and funds available after payment of income taxes and administrative expenses, if any, will be used for distribution to holders of allowed claims in this chapter 11 case.  The conversion of the Chapter 11 cases of the R. Hassell Entities to Chapter 7 cases was a significant factor leading to the personal bankruptcy filing of the Debtor.  The Debtor lost the ability to earn regular income due to the destruction of the value of RHHC, RHC and RHB (which included interests in various joint ventures), and deliberate harm to the Debtor's personal reputation was caused.

**3.3.8   Claim Objections.**  The Debtor has filed objections to claims that he believes are frivolous and/or have no basis in law or fact.  In many instances, the Debtor objects to the claim because there is no basis for personal liability.  The Debtor believes the claims he objected to are incorrect and should be disallowed as those claims are diluting recoveries to holder of legitimate claims.  As of the date of filing this plan, the following claim objections are pending:

| Docket No. | Claim No. | Claimant | Amount of Claim Objected To by Debtor |
|---|---|---|---|
| 99 | 27 | Hanover Insurance Company | $3,070,477.00 |
| 101 | 23 | Pendergraft & Simon LLP | $142,316.20 |
| 102 | 24 | Locke Lorde, LLP | $1,053,074.68 |
| 103 | 16 | Hassell Construction Company, Inc. | $465,740.00 |
| Adv. No. 19-03425 | 17 | Jason Hassell | $1,000,000.00 |
| Adv. No. 19-03425 | 18 | Michael Hassell (as Trustee) | $1,000,000.00 |
| Adv. No. 19-03425 | 19 | Michael Hassell (Individually) | $1,000,000.00 |
| Adv. No. 19-03425 | 20 | Phillip Hassell | $1,000,000.00 |
| Adv. No. 19-03425 | 21 | Shawn Potts | $1,000,000.00 |
| 118 | 26 | Argos | $1,536,642.55 |
| 110 | 13 | Total Lime | $33,402.38 |

The Debtor reserves the right to file additional objections as identified in the chart in section 6 below.

**3.3.9   Claims Resolution**.  The Debtor had objections to some additional claims but after consultation with the claimants and/or their counsel, the Debtor has reached agreements regarding allowed claim amounts, subject to this Court's approval.   The Debtor anticipates filing motions to approve these agreements before a hearing on confirmation of this plan.  Those agreements are as follows:

| Claim No. | Claimant | Amount of Agreed Allowed Claim |
|---|---|---|
| 14 | Tejano Trucking | $64,500.00 |
| 25 | Procon Enterprises | $160,000.00 |
| 28 | Jasso Sawing | $54,839.73 |

At the time of filing the Debtor is in the process of negotiations to compromise the objection to the claim of Locke Lord, LLP and Total Lime, LLC.  The Debtor has initiated negotiations with several other creditors regarding their respective claims.  If agreements are reached with those claimants, the Debtor will file the appropriate motion to obtain the Court's approval.  If no agreement is reached with Locke Lord, LLP or Total Lime, LLC, the Debtor will continue to prosecute his objection to their respective claims.

## 4     Sources of Income

In the last three years, the Debtor's primary sources of income related to the operation of his construction businesses, which are no longer operating:

### Income from Employment

| Year | Employer | Amount of Income |
|---|---|---|
| 2019 | R. Hassell Properties, Inc. ("RHP") | $0.00 |
| 2018 | RHHC, RHC, RHB, RHP | $0.00 |
| 2017 | RHHC, RHC, RHB, RHP | $384,195.00 |

### Income from Operation of Business

| Year | Name and Nature of Business | Amount of Income |
|---|---|---|
| 2019 | None | |
| 2019 | Rental Income – Real Property | $17,000 |
| 2017 | Rental Income – Real Property | $93,845.00 |

## 5    Description of Reorganization

The Debtor intends to reorganize his finances by liquidating non-exempt assets to pay holders of allowed claims. The Debtor anticipates selling the following non-exempt assets to the extent of allowed claims:

| Description of Asset | Forecast Net Proceeds from Sale | Forecast Date of Sale |
|---|---|---|
| 6421 Buffalo Speedway and 6417 Buffalo Speedway | $715,000.00 | 2/14/2020 (6421 Buffalo)[4] 8/1/2020 (6417 Buffalo) |
| 10181 S. Valley Dr. | $1,850,319.24 | 8/1/2020 |
| Trinity Ranch Property | $879,248.30 | Sold 06/2019 |
| Koontz Rd. | $74,000.00 | 2/1/2021 |
| **TOTAL** | **$3,518,567.54** | |

The Debtor also owns affirmative litigation claims against third parties that he believes have value. As part of the Debtor's plan to reorganize, the Debtor intends to preserve all causes of action but will not pursue such causes of action with estate assets. The Debtor has been searching for counsel to investigate and prosecute his causes of action on a contingent fee basis and will continue to do so for the benefit of his estate. To the extent that the Debtor has equity in his bankruptcy estate and/or is able to retain counsel on a contingent fee basis to pursue litigation claims, the Debtor would contribute the proceeds from any recovery obtained to this plan to pay holders to the extent of allowed claims.

## 6    Classification, Impairment of Classes, and Resolution of Claim Controversies

**6.1 Summary of Class Descriptions, Impaired Status, and Treatment Under Plan.** The following is the classification and treatment of claims under this plan:

| Class | Description | # of Claims | Impaired Status | Treatment |
|---|---|---|---|---|
| 1(a) | Secured Claims/Mortgages (without arrearage) – Vehicle Loans | 1 | Not impaired | Paid in Full |
| 1(b) | Secured Claims/Mortgages (without arrearage) – Trustmark National Bank | 1 | Not impaired | Paid in Full |
| 2 | Secured Claims/Mortgages (with arrearage) | 2 | Impaired | Paid in Full |
| 3 | Other Secured Claims | 2 | Impaired | Paid in Full |
| 4 | Ad Valorem Tax Claims | 1 | Impaired | Paid in Full |
| 5 | Priority Tax Claims | 1 | Impaired | Paid in Full |
| 6 | General Unsecured Claims | 28 | Impaired | Paid pro-rata share of |

---

[4] The Debtor filed a Motion to Sell (Docket No. 91), which is set for hearing on January 14, 2020 at 9:30 p.m. To date there are no objections to the Debtor's Motion to Sell 6421 Buffalo Speedway.

| | | | | Available Cash from sale of non-exempt assets |
|---|---|---|---|---|
| 7 | Subordinated Claims | 0 | Impaired | Discharged |

Only holders of claims that are "impaired" have the right to vote to accept or reject the plan.  If a claim is not marked as impaired, it will be paid in accordance with the pre-petition contract that governs the claim.  If there is a discrepancy between the payments reflected in the above chart and the pre-petition contract, the pre-petition contract will control.

**6.1.1   Impaired Classes Entitled to Vote.**  Holders of claims which are in impaired classes may vote on the plan.  The following classes of claims are impaired under the plan and entitled to vote:

Class 2 – Secured Claims/Mortgages (impaired).

Class 3 – Other Secured Claims

Class 4 – Ad Valorem Tax Claims

Class 5 – Priority Tax Claims

Class 6 – General Unsecured Claims

Class 7 – Subordinated Claims

**6.1.2   Unimpaired Classes and Classes Not Entitled to Vote.**  Holders of the claims that are unimpaired are deemed to have accepted the proposed plan and are not entitled to vote on the plan.  The following classes of claims are not impaired or not entitled to vote on the plan:

Class 1(a) – Secured Claims/Mortgages (not impaired) – Vehicle Loans

Class 1(b) – Secured Claims/Mortgages (not impaired) – Trustmark

**6.1.3   Claim Controversies.**  Should a controversy or dispute arise relating to classification, impairment, or voting rights of any creditor or interest holder under the plan, prior to confirmation, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  The Bankruptcy Court may estimate, for voting purposes, the amount of any contingent or unliquidated claim, if fixing or liquidating such claim would unduly delay the administration of the bankruptcy case.  The Bankruptcy Court may conduct a valuation hearing pursuant to 11 U.S.C. §506(b) to determine the allowed amount of any secured claim.

**6.2     Classification of Specific Claims Against The Estate and Claim Objections.**  The following claims have been made and/or scheduled in this case.   The Debtor

indicates in the chart below if there is a dispute regarding the claim and the anticipated amount of the allowed claim.

| Class | Holder of Claim | Amount of Claim Asserted by Holder | Amount of Claim Agreed by Debtor | Claim No. | Description of Dispute |
|---|---|---|---|---|---|
| 1 | Trustmark | $1,008,363.71 | $1,008,363.71 | 10 | No dispute. |
| 1 | JP Morgan Chase | $21,867.88 | $21,867.88 | 9 | No dispute. |
| 1 | Elbar Investments, Inc. | $1,445,143.5 | $1,445,143.75 | 15 Order Dkt. No. 61 | No dispute. |
| 2 | New Residential d/b/a Mr. Cooper | $285,940.94 | $285,940.94 | 11 | No dispute. |
| 3 | 1 Stop Cooling | $6,126.95 | $6,126.95 | D2.1 | No dispute. |
| 3 | Custom Home Maintenance | $12,417.40 | $12,417.40 | D2.7 | No dispute. |
| 4 | Harris County | $343,189.36 | $300,174.10 | 1 | No dispute. Harris County has indicated that it plans to amend its claim downward to reflect a previously unapplied credit. The claim is now expected to be $300,174.10. |
| 4 | Harris County (costs) | $1,481.75 | $1,481.75 | 3 | No dispute. |
| 5 | Internal Revenue Service | $44,500.00 | TBD | 8 | Potential dispute depending on outcome of appeal regarding assessment. The Debtor reserves the right to file a claim objection pursuant to the terms of this plan. |
| 6 | American Express (Acct 4003) | $17,835.77 | $17,835.77 | 4 | No dispute. |
| 6 | American Express | $3,450.17 | $3,450.17 | 5 | No dispute. |

| Class | Holder of Claim | Amount of Claim Asserted by Holder | Amount of Claim Agreed by Debtor | Claim No. | Description of Dispute |
|---|---|---|---|---|---|
| | (Acct 7009) | | | | |
| 6 | American Express (Acct 4009) | $3,715.02 | $3,715.02 | 6 | No dispute. |
| 6 | American Express (Acct 6006) | $21,938.95 | $21,938.95 | 7 | No dispute. |
| 6 | DeLage Landen Financial Services, Inc | $200,342.31 | TBD | 12 | The Debtor does not have sufficient information to determine if he disputes this claim. The Debtor reserves the right to file a claim objection pursuant to the terms of this plan. |
| 6 | Total Lime LLC | $33,402.38 | $0.00 | 13 | The Debtor has filed a claim objection at Docket No. 110. |
| 6 | Tejano Trucking | $107,501.00 | $64,500.60 | 14 | The Debtor and Tejano Trucking have agreed to an allowed claim in the amount of $64,500.60, subject to Court approval. |
| 6 | Hassell Construction Company, Inc. | $465,740.00 | $0.00 | 16 | The Debtor has filed a claim objection at Docket No. 103. |
| 6 | Jason Hassell | $1,000,000.00 | $0.00 | 17 | The Debtor has removed a state court case into Adv. No. 19-03452. The Debtor's live pleading states the Debtor's basis for objecting to this claim. The Debtor has additional bases for objecting to this claim, including the fact that the claim is precluded by the final judgment confirming the arbitration award. When the Bankruptcy Court grants leave for the parties to amend pleadings in Adv. No. 19- |

| Class | Holder of Claim | Amount of Claim Asserted by Holder | Amount of Claim Agreed by Debtor | Claim No. | Description of Dispute |
|---|---|---|---|---|---|
| | | | | | 03452, the Debtor intends to amend his live pleading to include a count that would encompass his objection to this claim. |
| 6 | Michael Hassell (as Trustee) | $1,000,000.00 | $0.00 | 18 | The Debtor has removed a state court case into Adv. No. 19-03452. The Debtor's live pleading states the Debtor's basis for objecting to this claim. The Debtor has additional bases for objecting to this claim, including the fact that the claim is precluded by the final judgment confirming the arbitration award. When the Bankruptcy Court grants leave for the parties to amend pleadings in Adv. No. 19-03452, the Debtor intends to amend his live pleading to include a count that would encompass his objection to this claim. |
| 6 | Michael Hassell (individually) | $1,000,000.00 | $0.00 | 19 | The Debtor has removed a state court case into Adv. No. 19-03452. The Debtor's live pleading states the Debtor's basis for objecting to this claim. The Debtor has additional bases for objecting to this claim, including the fact that the claim is precluded by the final judgment confirming the arbitration award. When the Bankruptcy Court grants leave for the parties to amend pleadings in Adv. No. 19-03452, the Debtor intends to amend his live pleading to include a count that would encompass his objection to this claim. |

| Class | Holder of Claim | Amount of Claim Asserted by Holder | Amount of Claim Agreed by Debtor | Claim No. | Description of Dispute |
|---|---|---|---|---|---|
| 6 | Phillip Hassell | $1,000,000.00 | $0.00 | 20 | The Debtor has removed a state court case into Adv. No. 19-03452. The Debtor's live pleading states the Debtor's basis for objecting to this claim. The Debtor has additional bases for objecting to this claim, including the fact that the claim is precluded by the final judgment confirming the arbitration award. When the Bankruptcy Court grants leave for the parties to amend pleadings in Adv. No. 19-03452, the Debtor intends to amend his live pleading to include a count that would encompass his objection to this claim. |
| 6 | Shawn Hassell Potts | $1,000,000.00 | $0.00 | 21 | The Debtor has removed a state court case into Adv. No. 19-03452. The Debtor's live pleading states the Debtor's basis for objecting to this claim. The Debtor has additional bases for objecting to this claim, including the fact that the claim is precluded by the final judgment confirming the arbitration award. When the Bankruptcy Court grants leave for the parties to amend pleadings in Adv. No. 19-03452, the Debtor intends to amend his live pleading to include a count that would encompass his objection to this claim. |
| 6 | Texas Capital Bank | $304,518.94 | $304,518.94 | 22 | No objection. |
| 6 | Pendergraft & Simon | $142,316.20 | $0.00 | 23 | The Debtor has filed a claim objection at Docket No. 101. |

| Class | Holder of Claim | Amount of Claim Asserted by Holder | Amount of Claim Agreed by Debtor | Claim No. | Description of Dispute |
|---|---|---|---|---|---|
| | LLP | | | | |
| 6 | Locke Lord LLP | $1,053,074.68 | $0.00 | 24 | The Debtor has filed a claim objection at Docket No. 99. |
| 6 | Procon Enterprises, Inc. | $202,317.48 | $160,000.00 | 25 | The Debtor and Procon have agreed to an allowed claim in the amount of $160,000.00, subject to Court approval. |
| 6 | Argos USA, LLP | $1,536,642.55 | $0.00 | 26 | The Debtor has filed a claim objection at Docket No. 118. |
| 6 | Hanover Insurance Company | $3,070,477.00 | $0.00 | 27 | The Debtor has filed a claim objection at Docket No. 103. |
| 6 | Jasso Sawing & Sealing, Inc. | $182,799.11 | $54,839.73 | 28 | The Debtor and Jasso have agreed to an allowed claim in the amount of $54,839.73, subject to Court approval. |
| 6 | John Deere Construction & Forestry Company | $53,254.38 | $53,254.38 | 29 | No dispute. |
| 6 | John Deere Construction & Forestry Company | $17,685.91 | $17,685.91 | 30 | No dispute. |
| 6 | Baylor College of Medicine | $389.00 | $389.00 | F4.6 | No dispute. |
| 6 | Chase-Ink | $25,296.77 | $25,296.77 | F4.8 | No dispute. |
| 6 | Chase-United | $18,757.18 | $18,757.18 | F4.9 | No dispute. |
| 6 | Paul Eckhoff | $135,000.00 | $135,000.00 | F4.19 | No dispute. |
| 6 | Sunshine Pool Service | $1,673.17 | $1,673.17 | F4.22 | No dispute. |
| 6 | Zukowski, Bresenhan & Piazza, LLP | $1,062.50 | $1,062.50 | F | No dispute. |

At this time, the Debtor is not aware of any other disputes over claims.

### 7    Payment/Treatment of Administrative Claims Under the Plan

Administrative claims are unclassified claims that are neither impaired nor unimpaired. Holders of administrative claims are not entitled to vote on the Plan. They may, however, object to the plan if they believe their treatment under the Plan does not comply with the Bankruptcy Code.

Administrative claims are the claims allowed under §503(b) of the Bankruptcy Code for administration of this bankruptcy case. These claims will be paid in cash on the earlier of the Effective Date of the plan or the date the administrative claim becomes and allowed claim by order of the Court, unless a written agreement to the contrary is made with the holder of any such allowed claim.

The Court must approve all professional fees listed in this table. Professionals must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this plan. All applications for administrative claims shall be filed no later than 30 days after the Effective Date.

The United States Trustee fees will continue to be paid through the date this case is closed and the Debtor shall continue to file all required reporting.

The following are the estimated administrative claims:

| Claimant | Nature of Claim | Amount Claimed by Claimant | Amount Forecast to be Paid by the Debtor | Total payable in Months 1-12 |
|---|---|---|---|---|
| Jones Murray & Beatty, LLP | Bankruptcy Counsel | $150,000.00 (estimate) | $150,000.00 (estimate) | $150,000.00 (estimate) |
| The Wilson Law Firm | Special Counsel - Tax | $25,000.00 (estimate) | $25,000.00 (estimate) | $25,000.00 (estimate) |
| Accountant – TBD | Accountant | $25,000.00 (estimate) | $25,000.00 (estimate) | $25,000.00 (estimate) |
|  |  |  |  | **$200,000.00** |

### 8    Payment/Treatment of Class 1 - Secured Claims/Mortgages (without Arrearage) Under the Plan

**Class 1(a) – Vehicle Loan**

**J.P. Morgan Chase, N.A.** – filed a pre-petition claim of $21,867.88 and has a first lien on a 2016 Chevrolet Suburban. This amount will be paid in full under this plan

as the Debtor will continue to make the regular monthly payments until the debt is paid in full. This creditor will retain a lien on its collateral until its loan is paid in full.

This claim is not impaired.

**Class 1(b) – Secured Claims/Mortgages (Not Impaired)**

**Trustmark National Bank** – filed a pre-petition claim in the amount of $1,008,363.71 and has a first lien on 5302 Maple, the Debtor's homestead which is exempt. Regular monthly payments of principal and interest at the contractual rate will continue to be made through the May 1, 2048 maturity date. This creditor will retain its lien on its collateral until its loan is paid in full. Nothing herein shall alter or modify its contractual rights. This creditor is entitled to credit bid pursuant to 11 U.S.C. §363(k) at any sale of its collateral.

This claim is not impaired.

9    **Payment/Treatment of Class 2 - Secured Claims/Mortgages (Impaired) Under the Plan**

**New Residential Mortgage Trust d/b/a Mr. Cooper** – filed a pre-petition claim of $285,940.94 and has a first lien on 10181 Valley Drive S, Willis Texas. Regular monthly payments of principal and interest at its contractual rate will continue to be made through the February 01, 2033 maturity date. Any arrears will be paid in sixty (60) equal monthly installments payments of $427.55, including 0% interest, with the first payment being due and payable on the 1st day of the 1st month following the Effective Date of the plan. This creditor will retain its lien on its collateral until its loan is paid in full. This creditor is entitled to credit bit pursuant to 11 U.S.C. §363(k) at any sale of its collateral.

This claim is impaired and entitled to vote on the plan.

**Elbar Investments, Inc.** – Pursuant to this Court's order at Docket No. 66, Elbar has a pre-petition claim as follows:

| Description | Amount | Interest Rate |
|---|---|---|
| Notes 1, 2, 4 | $1,120,908.54 | 6.0% |
| Note 3 | $304,653.78 | 5.25% |
| Note 5 | $19,591.43 | 5.8% |
| **TOTAL** | **$1,445,153.75** | |

Elbar will be paid the full amount of its claim with interest at the contractual rate noted above upon a sale of its collateral. Until its claim is paid in full, Elbar will receive monthly payments at the contractual interest rate noted above and any monthly principal payments due. Elbar will retain a lien on its collateral until is claim is paid in full. This creditor is entitled to credit bid pursuant to 11 U.S.C. §363(k) at any sale of its collateral. This plan incorporates an agreement with Elbar to forbear on exercising its contractual foreclosure rights for a period of eight (8) months after the Effective Date. If Elbar's

claim is not paid in full, including all contractual interest, eight (8) months after the Effective Date, Elbar shall be entitled, but is not required, to seek relief from the Bankruptcy Court to proceed with its contractual right of foreclosure.

This claim is impaired and is entitled to vote.

## 10    Payment/Treatment of Class 3 – Other Secured Claims Under the Plan

**1 Stop Cooling** – has a pre-petition claim of $6,126.95 and has a statutory lien on 6417 Buffalo Speedway.  This claim will be paid in sixty (60) equal monthly installments payments of $102.11, including 0% interest, with the first payment being due and payable on the 1st day of the 1st month following the Effective Date of the plan.  This creditor will retain its lien on its collateral until its loan is paid in full.  This creditor is entitled to credit bit pursuant to 11 U.S.C. §363(k) at any sale of its collateral.

This claim is impaired and entitled to vote on the plan.

**Custom Home Maintenance** – has a pre-petition claim of $12,417.40 and has a statutory lien on 6417 Buffalo Speedway.  This claim will be paid in sixty (60) equal monthly installments payments of $206.96, including 0% interest, with the first payment being due and payable on the 1st day of the 1st month following the Effective Date of the plan.  This creditor will retain its lien on its collateral until its loan is paid in full.  This creditor is entitled to credit bit pursuant to 11 U.S.C. §363(k) at any sale of its collateral.

This claim is impaired and entitled to vote on the plan.

## 11    Payment/Treatment of Class 4 - Ad Valorem Tax Claims Under the Plan

**Harris County** – filed pre-petition claim in the amount of $343,189.36 with statutory liens on 6417 Buffalo Speedway and 6421 Buffalo Speedway.  Harris County has informed the Debtor that the tax amounts attributable to 5302 Maple Street, which were included in its claim, has been paid and they intend to amend the proof of claim to reflect a lower amount due, which is $300,174.10.  The Debtor will satisfy this claim as follows:

6417 and 6421 Buffalo Speedway - This secured ad valorem tax claim shall be paid at closing from sale proceeds from the sale of the collateral along with interest at the rate of 12% per annum in accordance with 11 U.S.C. §511 and Texas Property Tax Code Section 33.01(c). Such interest shall be paid from the Petition Date and shall continue to accrue until such time as the taxes are paid in full. This creditor will retain its lien on its collateral until its claim is paid in full.

The Debtor shall pay all post-petition ad valorem taxes (tax year 2020 and subsequent tax years) owing to Harris County and Montgomery County in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes

becoming delinquent without the need of Harris County and Montgomery County to file an administrative expense claim and/or request for payment.

Harris County (Costs) – Harris County has a claim for costs in the amount of $1,481.75 with statutory liens on 6417 Buffalo Speedway and 6421 Buffalo Speedway. This claim will be paid in full on the Effective Date, if not paid at the closing of the sale of 6421 Buffalo Speedway. This creditor will retain its lien on its collateral until its claim is paid in full.

This claim is impaired and is entitled to vote.

## 12   Payment/Treatment of Class 5 - Priority, Unsecured Tax Claims of Governmental Units Under the Plan

Claims held by governmental units of the type described in §507(a)(8) of the Bankruptcy Code will be paid in full, with interest at the applicable statutory rate pursuant to 11 U.S.C. §511 (currently an annual rate of 5%)(or such other rate as noted below) either in full on the Effective Date or in equal monthly installments over a period beginning 30 days after the Effective Date of the plan and ending five years after the date of the filing of the petition with payment of applicable statutory interest.   Notwithstanding the foregoing treatment, any holder of a § 507(a)(8) claim may file a written election to be treated on the same basis as any nonpriority unsecured claim.  Any such election must be filed in writing not later than 14 days after entry of the order confirming the plan.

The following claims are in this category:

| Claimant | Nature of Claim | Interest Rate | Amount Claimed by Claimant | Amount and nature of any dispute by the Debtor | Total payable in Months 1-60 |
|---|---|---|---|---|---|
| Internal Revenue Service | Income Tax | 5% | $44,500.00 | Currently on Appeal | $10,077.24 |

## 13   Payment/Treatment of Class 6 - General Unsecured Claims Under the Plan

Class 6 consists of holders of allowed general unsecured claims. Under the Plan, Class 6 claims shall be treated as follows: each holder of an allowed general unsecured claim in Class 6 shall receive a pro-rata distribution from the "Available Cash", which means the net proceeds available from the liquidation of the Debtor's non-exempt assets identified in this plan after payment in full of all allowed secured claims, ad valorem tax claims, administrative claims (pre-confirmation and post-confirmation), and priority claims.  Class 6 Claims are impaired and are entitled to vote to support the plan.  Claims in this class are as follows:

| |
|---|
| American Express (Acct 4003) |
| American Express (Acct 7009) |
| American Express (Acct 4009) |
| American Express (Acct 6006) |
| DeLage Landen Financial Services, Inc |
| Total Lime LLC |
| Tejano Trucking |
| Hassell Construction Company, Inc. |
| Jason Hassell |
| Michael Hassell (as Trustee) |
| Michael Hassell (individually) |
| Phillip Hassell |
| Shawn Hassell Potts |
| Texas Capital Bank |
| Pendergraft & Simon LLP |
| Locke Lord LLP |
| Procon Enterprises, Inc. |
| Argos USA, LLP |
| Hanover Insurance Company |
| Jasso Sawing & Sealing, Inc. |
| John Deere Construction & Forestry Company |
| John Deere Construction & Forestry Company |
| Baylor College of Medicine |
| Chase-Ink |
| Chase-United |
| Paul Eckhoff |
| Sunshine Pool Service |
| Zukowski, Bresenhan & Piazza, LLP |

Class 6 claims are impaired and entitled to vote on the Plan.

### 14   Payment/Treatment of Class 7 - Subordinated Claims Under the Plan

There are no claims in this Class 7.  Class 7 claims are discharged pursuant to section 22 of the Plan.

### 15   Means of Implementation, Forecasts, & Risks Associated with the Plan

**15.1      Source of Payments.**  Payments made under this plan to holders of allowed claims will be funded by the sale of non-exempt assets of the Debtor identified in the paragraphs

above.  The Debtor does not currently have wage income at this time and therefore does not anticipate that the plan will be currently funded with disposable income but may in the future. The Debtor has looked for employment and will continue to look for employment.  To the extent that the Debtor finds employment and there is disposable income, it would be contributed to the plan to pay holders of allowed claims after the Debtor seeks approval from the Bankruptcy Court to modify the plan accordingly to account for any new sources of income.

   **15.2**      **Forecast**.  The Debtor believes this plan is feasible based on the following forecast of income and expenses:

|  | Months |
| --- | --- |
|  | 1-24 |
| Beginning cash balance | $54,068 |
| Income from Employment* (anticipated) | - |
| Gross Income from operation of business | - |
| Net Income from sale of assets (net of secured claims) | $3,518,567.54 |
| Other income | - |
| **TOTAL NET INCOME** | **$3,572,635** |
| Taxes on income | $0 |
| Property taxes | $380,000 |
| Insurance | $12,000 |
| Household expenses | $67,000 |
| U.S. Trustee Fees | $35,186 |
| Administrative Expenses Ch.11 | $200,000 |
| Transportation expenses | $35,000 |
| Medical and dental | $14,000 |
| Recreation and entertainment | $5,000 |
| Other expenditures (service debt) | $30,000 |
| **TOTAL EXPENDITURES** | **$778,186** |
| **NET CASH FLOW THIS PERIOD** | **$2,794,449** |

| | |
|---|---|
| **ESTIMATED  PAYMENTS PURSUANT TO PLAN** | $1,084,304.80 |
| **ENDING CASH BALANCE** | $1,468,649.00 |

Monthly reports have been filed showing actual income and expenses during the period of the bankruptcy case.  These forecasts vary somewhat from the monthly reports based on actual monthly figures and due to sale of assets during case, which changes expenditures associated with same.

**15.3    Post-Confirmation Management.**  The post-confirmation management of the Debtor will remain with the Debtor.

**15.4    Risk Factors.**  While the risk of non-payment is diminished by the fact that this plan contemplates the liquidation of non-exempt assets, primarily comprised of real estate, the plan is contingent upon the sale of those assets.  If the Debtor is unable to sell any of the real property, then it may not be possible to make all the payments contemplated by the plan.  The Debtor has retained a professional real estate broker as to two properties and has filed an application to retain a broker for a third property.  Based on information provided by those brokers, the Debtor does not anticipate difficulty selling the various properties but does expect that it will take some time, which he currently estimates to be six to twelve months.  If there is any volatility in the real estate market or financial markets, that could present some risk that should be taken into consideration.

**15.5    Preservation of Claims and Rights.**  The Debtor shall retain any and all claims, rights and/or causes of action under Chapter 5 of the Bankruptcy Code, any and all claims, rights and/or causes of action under fraudulent conveyance and fraudulent transfer laws, and any and all claims, rights and/or causes of action under non-bankruptcy laws vesting in creditors rights to avoid, rescind, or recover on account of transfers including but not limited to all preference laws and any other causes of action against third parties.  All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of Section 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, claims for subordination, and causes of action arising under Chapter 5 of the Bankruptcy Code (including without limitation Avoidance Actions, Subordination Claims, and Claim Objections) with respect to the Debtor or his Estate, shall be and hereby are preserved for the benefit of the Reorganized Debtor, and shall be and hereby are deemed to be part of the Assets which shall vest in the Reorganized Debtor and which shall be managed for the benefit of holders of Allowed Claims as set forth in the Plan.  The foregoing includes, but is not limited to, all claims and causes of action referenced in the Debtor's Schedules, Statement of Financial Affairs, and disclosure statement as presently existing or as may be amended hereafter.  For purposes of standing to assert and prosecute claims and causes of action, the Debtor is the successor to the Debtor under the Bankruptcy Code.

Confirmation of the Plan effects no settlement, compromise, waiver, or release of any claim, cause of action, right of action or claim for relief of the Debtor, his Estate, or the Reorganized Debtor unless expressly and unambiguously provided for in the Plan or the Confirmation Order.   The non-disclosure or non-discussion of any particular claim, cause of action, right of action or claim for relief of the Debtor, his Estate or the Reorganized Debtor shall not be construed as a settlement, compromise, waiver or release of such claim, cause of action, right of action or claim for relief.

The Debtor will only prosecute preserved claims and causes of action with non-estate assets or by retaining an attorney on a contingent fee basis.   No estate assets will be used to prosecute preserved claims and causes of action.   All preserved claims and causes of action belong to the estate and the Debtor has not claimed any exemption.   Thus, any recovery from any claim or cause of action shall be contributed under this plan to the extent of any allowed claims.

**15.6    Retention of Professionals.**   The Debtor will retain professionals, as needed, to effectuate the purposes of this plan.   The Debtor will obtain Bankruptcy Court approval to retain professionals on a post-confirmation basis.   The Debtor will retain on a post-confirmation basis his pre-confirmation general bankruptcy counsel, Jones Murray & Beatty, LLP ("JMBLLP") to assist with matters concerning administration of the estate assets and to handle claim objections. The Debtor anticipates that JMBLLP will be retained on the same terms as previously approved by this Court, on an hourly basis.   JMBLLP's employment will not include representation of the Debtor to pursue any litigation claims (except as related to pending claim objections).   If the scope of JMBLLP's engagement should change, an amended or additional employment application will be filed with the Bankruptcy Court.

## 16   Disposable Income Test

If an unsecured creditor objects to confirmation, the plan can be confirmed only if it provides for (x) a 100% distribution to creditors; or (y) a distribution to creditors that is of a value of not less than the debtor's projected disposable income to be received during the longer of (i) the 5-year period beginning on the date that the first payment is due under the plan; or (ii) the term of the plan.   Disposable income is the difference between income and necessary expenses.

Notwithstanding any provision in this plan to the contrary, the Debtor commits to make payments of a value not less than required by the preceding paragraph.

## 17   Cramdown

If a class of creditors does not accept the plan, the Debtor will seek to obtain confirmation through the cramdown provisions of § 1129(b).   This means that the plan must be fair and equitable to the class that does not accept the plan.   The definition of whether the plan is fair and equitable may be found in § 1129(b) of the Bankruptcy Code.

## 18    Liquidation Analysis

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor's assets.

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate in Liquidation | Basis of Estimate of Value |
|---|---|---|---|---|---|
| 6417 and 6421 Buffalo Speedway | $2,565,000.00 | $1,850,000.00 | $0.00 | **$715,000.00** | HCAD Bank Appraisal Offer Broker Opinion |
| 10181 Valley D. South | $2,150,000.00 | | $0.00 | **$1,850,319.24** | MCAD Broker Opinion |
| Trinity Ranch Property | $879,248.30 | | $0.00 | **$879,248.30** | Sold Per Order at Dkt. No. 38 |
| Koontz Road | $74,000.00 | $0.00 | $0.00 | **$74,000.00** | Walker County Appraisal District |
| **TOTAL** | | | | **$3,518,567.54** | |

As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest. This treatment satisfies the liquidation test under § 1129(a)(7)(A). Holders of priority claims are paid in full, with interest. This also satisfies the requirements of § 1129(a)(7).

Holders of general unsecured claims are forecast to receive a dividend of 100% of their allowed claim, subject to the outcome of the claim objections identified by the Debtor. The Debtor has estimated that his assets, after payment of liens would generate a similar, but slightly less amount, in a chapter 7 liquidation. In a chapter 7 liquidation, the estimated liquidation value of $3,518,567.54 would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims. This would produce the following:

| | |
|---|---|
| Liquidation Value | $3,518,567.54 |
| Estimated Trustee's Fees and expenses (including professional fees) | $250,000.00 |
| Estimated priority claims | $44,500.00 |

| | |
|---|---|
| Total available for holders of unsecured claims | $3,224,067.54 |
| Estimated unsecured claims | $1,084,304.80 |
| Estimated percentage recovery in liquidation | 100% |

Because the plan forecasts to pay holders of unsecured claims 100% of the amount of their claims and a chapter 7 liquidation is forecast to pay 100%, this plan satisfies the liquidation test as to holders of unsecured claims.

For purposes of the liquidation analysis in this plan, the Debtor uses the same liquidation values as he believes he can achieve in a chapter 11 plan as well as the same claim amounts. The Debtor believes, however, in a chapter 7, a trustee would liquidate his property for less than the liquidation amount he can achieve. Depending on the outcome of the claim objections identified in this plan, the Debtor believes that liquidation in a chapter 7 case could result in a less than 100% distribution to general unsecured creditors. Additionally, because this case has been pending in a chapter 11, there could be allowed chapter 11 administrative claims, in the estimated amount of $200,000.00, in addition to any trustee fees and chapter 7 administrative claims. This could make liquidation in a chapter 7 case less cost effective than finalizing the liquidation through this chapter 11 plan.

## 19   Prepayment

Any claim may be prepaid at any time, without penalty. Interest as provided in this plan must be paid through the date of prepayment.

## 20   Tax Issues

The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes. For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss. This will depend on the holder's own tax characteristics and cannot be assured. Conversely, if the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under the plan.

Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the plan on you.

The Debtor may also have a federal income tax effect from the plan. To the extent that indebtedness is discharged, the Debtor may have a basis adjustment in their assets. Moreover, any sale of assets may produce taxable income. The forecasts set forth above incorporate the Debtor's best estimate of the federal income tax effect of the plan.

## 21   Executory Contracts and Leases

Except for the assumed contracts and leases listed in the following chart, all executory leases and contracts are rejected as of the Effective Date.  Proofs of claim for damages arising from the rejection of an executory lease or contract must be filed not later than 30 days after the Effective Date.  Claims filed after that date will not be paid.

| Contracting Party | Description of Contract | Amount Required to Cure Any Default |
|---|---|---|
| JP Morgan Chase | Suburban Vehicle Lease | $0.00 |
| HCCI | Buy-Sell Agreement / 101 Shares | $0.00 |

The amount shown under "Amount Required to Cure Any Default", if any, will be paid not later than 30 days after the Effective Date of the Plan.

If you are the Contracting Party on an assumed contract and disagree with the cure amounts shown, you must file an objection prior to the objection deadline of [*****************, 2020].  If you do not file an objection prior to the objection deadline, the Court may confirm the plan and you will be bound by the terms of the confirmed plan as to the cure amount.

## 22   Claims Objections and Distributions

**22.1   Deadline to Object to Claims.**  Except to the extent that claims are already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Claims objections must be filed not later than 60 days after entry of the order confirming the plan.  This deadline may be extended by the Court, on motion by a party in interest.  Any such motion must be filed not later than 60 days after entry of the order confirming the plan or the expiration of any previously extended deadline.

**22.2   Disputed Claim Reserve.**  A disputed claim reserve shall be established by the Debtor for treatment of disputed claims and held in a separate bank account from all other funds ("Disputed Claim Reserve").  The Debtor will deposit into the Disputed Claim Reserve an amount equal to the pro-rata share allocable to such disputed claim.  Once a disputed claim is determined by a final non-appealable order of the Bankruptcy Court, the Debtor is authorized to pay the amount allowed by that order from the Disputed Claim Reserve within twenty (20) days after entry of that order.  The disallowed or reduced portion of any disputed claim can also be distributed from the Disputed Claim Reserve to holders of allowed claims without further approval.

**22.3   Disallowance of Late Filed Claims.**  Except as otherwise provided in the Plan, any proof of claim filed after the Claims Bar Date is disallowed.

**22.4**   **Distribution Process.**

**22.4.1 Record Date.**   The "Record Date" for distribution of allowed claims under this Plan shall be the date the Bankruptcy Court enters its order approving this disclosure statement and the Debtor will rely on the official claims register maintained by the Clerk of the Court in this Bankruptcy Case.

**22.4.2 Distribution to Allowed Claims.**   Holders of any type of allowed secured claim, administrative expense claim (including U.S. Trustee fees), and priority unsecured claim will be paid as expressly set forth in this Plan.  Holders of allowed general unsecured claims will receive a distribution on a quarterly basis from Available Cash (as that term is defined herein).   The Debtor will file a "Notice of Distribution" no later than the 10th day of month following the close of the quarter (i.e. for 1Q – April 10th, for 2Q – July 10th, for 3Q – October 10th, for 4Q – January 10th) setting forth the receipts for the preceding quarter and the proposed distribution to be made to holders of allowed general unsecured claims.  If no objections are made within fourteen (14) days of filing the Notice of Distribution, the Debtor shall be authorized to make the scheduled distribution.  Distributions will be mailed via U.S. Mail first class postage pre-paid to holders of allowed claims at the address set forth on the proof of claim filed by the creditor (or as set forth in the Debtor's schedules if no proof of claim was filed), unless the Debtor receives written notification of a change in address.  If the holder's distribution is returned as undeliverable or is otherwise unclaimed, it will be treated as a disallowed disputed claim as provided in section 22.2 above.  The Debtor will file a notice of any undeliverable or unclaimed distributions, after which the holder of an allowed claim will have forty-five (45) days to claim such funds or such allowed claims will be discharged and forever barred.

**22.4.3   Undeposited Checks.**   Checks issued with respect to distributions for holders of Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance.  Undeposited checks will be treated as undeliverable or unclaimed distributions and shall be treated as set forth in section 22.4.2 of the Plan.

## 23   Additional Provisions

**18.1**   **Retention of Jurisdiction**.   The Bankruptcy Court will retain exclusive jurisdiction over the Chapter 11 Case to the maximum extent provided by law for the following purposes after Confirmation of the Plan: (i) to determine any and all objections to the allowance of a claim, classification of a claim, or distribution on account of a claim or interest; (ii) to determine the validity and priority of any lien; (iii) to determine the allowed amount of any claim; (iv) to hear, determine, and allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate; (v) to determine any and all applications or motions pending before the Court on the Effective Date or filed after the Effective Date, including but not limited to, any motions for the rejection, assumption and or assignment of any executory contract or unexpired lease; (vi) to consider and approve any modification of the Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order or any transactions or payments contemplated in the Plan; (vii) to consider and act on the compromise or settlement of any claim or cause of action by or against the Debtor; (viii) to enforce the provisions of the Plan and Disclosure Statement and to

issue orders in aid of the execution and implementation of the Plan and Confirmation Order; (ix) to hear and determine matters concerning federal or local taxes; (x) to hear any and all controversies, suits and disputes filed in the Court; (xi) to hear and enter orders in any adversary proceeding pending before the Court.

**18.2    <u>Modification of Plan.</u>**  The Debtor may modify only the plan after confirmation if (i) the plan has not been substantially consummated; and (ii) the Court authorizes the proposed modifications after notice and hearing.

## 24    Discharge, Vesting and Effective Date

Upon completion of all payments, the Debtor must file a motion for discharge, served on all holders of allowed claims, in which they will certify that (i) they meet the standards set forth in § 1141(d)(5)(C) of the Bankruptcy Code; and (ii) have completed all payments under the plan. Unless a party objects and the Court sustains the objection to the motion for discharge, the Debtor will be discharged of their liability on debts to the maximum extent allowed by § 1142 of the Bankruptcy Code.

Pending completion of the payments under the plan, the plan's provisions bind all persons to the extent allowed by § 1141(a) of the Bankruptcy Code.

All estate property is vested in the Debtor on the Effective Date of the plan, free and clear of all claims and interests except (i) as provided in this plan; and (ii) for claims and interests that are excepted from discharge under § 523 of the Bankruptcy Code.

This Effective Date of this plan is the 15th day after entry of the order confirming the plan, unless the confirmation order is stayed.  If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay.  No party may act pursuant to this plan prior to the Effective Date.

## 25    Obligations to United States Trustee

The Debtor will be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  Any fees due as of the date of confirmation will be paid on the Effective Date.  After confirmation, the Debtor will continue to file timely financial reports in the format required by the United States Trustee and continue to pay quarterly fees as accrued until the case is closed, converted to a case under chapter 7, or dismissed.

## 26    Default

If there is a default in payment to a creditor under this plan, the default must be cured within 21 days of written notice sent by the affected creditor.  If the default is not cured within the 21-day period, the creditor may seek any rights available under the Bankruptcy Code or under applicable non-bankruptcy law.

## 27   Conclusion

The Debtor has filed this plan and disclosure statement.  He represents that he believes the information contained in this document to be true and correct in all respects.

Dated: January 13, 2020.

Respectfully submitted,

*/s/ Royce J. Hassell*

Submitted through counsel:

**JONES MURRAY BEATTY, LLP**
Erin E. Jones
State Bar No. 24032478
erin@jmbllp.com
4119 Montrose Suite 230
Houston, Texas 77006
Telephone: 713-529-1999
Fax: 713-529-3393
**COUNSEL TO ROYCE J. HASSELL,
DEBTOR IN POSSESSION**