**EXHIBIT A**



February 1, 2022

Baker Tilly US, LLP
3655 Nobel Drive, Suite 300
San Diego, CA 92122

+1 (858) 597 4100
bakertilly.com

Royce J. Hassell
5302 Maple
Houston, TX 77401

RE:  *In re Royce J. Hassell, 19-30694, United States Bankruptcy Court for the Southern District of Texas (Houston)*

Dear Mr. Hassell:

Thank you for the opportunity to provide accounting, tax and financial advisory services on your behalf as Debtor in Possession ("Debtor-in-Possession" or "Debtor") in the above captioned bankruptcy case ("Matter"). This letter ("Engagement Letter") and the attached *Standard Terms and Conditions*, along with the *Application to Employ Baker Tilly US, LLP to Act as Accountants and Consultants to the Estate* ("Application") to which it is attached, confirm the understanding and agreement between Baker Tilly US, LLP ("Baker Tilly") and you, solely in your capacity as Debtor-in-Possession, with regard to the advisory and testimonial services Baker Tilly will provide to or for the benefit of the bankruptcy estate ("Estate") in this Matter. Stacy Elledge Chiang will lead the engagement team in the Matter.

**SCOPE OF SERVICES**

1.  You, in your capacity as Debtor-in-Possession, have asked that Baker Tilly provide financial advisory services to you to assist with the completion of your duties. These tasks may include, but are not limited to:

    a.  Advice and services regarding the Estate's tax liabilities and assistance with preparation of the Estate's annual federal and state tax returns, as required;

    b.  Review of potential deductions, loss carrybacks and other tax attributes of the Estate;

    c.  Review and analysis of information provided by entities in which the Debtor has an interest, specifically the closely held corporations in bankruptcy cases in which a chapter 7 trustee been appointed; and,

    d.  Such other accounting, tax and consulting services required and as permitted by the United States Bankruptcy Court for the Southern District of Texas (Houston) ("Court").

2.  You, as Debtor-in-Possession, have also indicated that you may need to designate one or more Baker Tilly principals, partners or employees as a possible witness in the above referenced Matter. The subject and scope of any such testimony will be subject to your direction; however, you understand that Baker Tilly shall undertake all work we deem necessary to deliver such testimony.

Royce J. Hassell
February 1, 2022
Page 2

3. Furthermore, you also understand that the professional conclusions reached regarding this matter are those of the Baker Tilly professionals. Accordingly, Baker Tilly has not and cannot predict what conclusions the Baker Tilly professionals will reach concerning the specific questions or issues for which the potential expert's opinion testimony may be requested.

**CONFLICTS OF INTEREST**

4. You have requested that Baker Tilly determine if any work currently being performed by Baker Tilly would pose a conflict with the work that is the subject of this Engagement Letter. As of the date of this Engagement Letter, we have determined that we can perform the work contemplated herein, free of any conflict of interest.

5. During the course of this Matter, you agree to inform Baker Tilly of additional parties to the dispute or name changes for those parties provided to the extent such additional parties or name changes come your attention. Should this information or any other circumstance that comes to our attention have the potential to change our prior conclusion with regard to a conflict of interest, we will advise you as soon as possible.

**FEES AND BILLING ARRANGEMENTS**

6. Our fees are based upon the hours actually expended by each engagement team member at each member's applicable hourly billing rate. Our hourly billing rates by professional level for the personnel to be assigned to the Matter for these services are:

| Position | Hourly Rate |
|---|---|
| Managing Directors, Principals, and Partners | $400 - $650 |
| Senior Managers and Directors | $250 - $430 |
| Managers | $230 - $360 |
| Senior Consultants | $210 - $320 |
| Staff Consultants | $150 - $270 |
| Paraprofessionals | $95 - $260 |

7. In the normal course of business, Baker Tilly revises its hourly billing rates annually. You understand that, to the extent allowed by the Court, the hourly rates charged for the work on this engagement will reflect the hourly rates in effect at the time services are rendered.

8. You agree to that the reimburse Baker Tilly for any reasonable and documented out-of-pocket expenses, including, without limitation, travel, photocopying, delivery services, postage, vendor changes and other reasonable and documented out-of-pocket expenses incurred in providing professional services. All such charges shall be consistent with the guidelines of the United States Trustee. Additionally, payment for such expenses shall be made only after approval by and authorization from the Court.

9. Baker Tilly acknowledges that its fees and expenses in the Matter are governed by Title 11 of the United States Code ("Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (Houston) ("Local Rules"), and any orders entered by the Court regarding professional compensation. Baker Tilly further agrees to accept compensation as awarded by the Court in accordance with the above.

**OTHER MATTERS**

10. You agree that you will prepare and file the papers necessary to ensure Baker Tilly is properly retained by the Court in the Matter. Further, you agree to take the steps necessary to notify Baker Tilly to file any papers necessary to ensure that Baker Tilly is paid in the Matter.

11. To the extent of any inconsistency between the terms of the Application, this Engagement Letter, and the *Standard Terms and Conditions*, the terms of the Application and the resultant order from the Court shall govern. You acknowledge your agreement with the terms stated herein and acknowledge that you have reviewed and agreed to be bound to the terms of this Engagement Letter and the attached *Standard Terms and Conditions* to the extent not inconsistent with the Application and order approving the Application, as evidenced by your signature below, which may be executed in counterparts. Please return to me the signed copy of this Engagement Letter by facsimile or portable document format ("pdf"). Facsimile and pdf signatures shall be deemed original, binding signatures.

We appreciate the opportunity to work with you. Should you have any questions, please do not hesitate to contact me at (949) 222-2999 or Stacy Elledge Chiang at (858) 597-4100.

Very truly yours,

Baker Tilly US, LLP
By:

Katherine Gough
Partner

**Acceptance by Royce J. Hassell, Debtor in Possession**

The Application, the above Engagement Letter, and the attached *Standard Terms and Conditions* confirm my understanding of the services Baker Tilly US, LLP will perform relating to the above referenced matter, the fee arrangement, and my understanding and agreement to such terms. Also, I, solely in my capacity as Debtor-in-Possession, accept responsibility for payment of Baker Tilly US, LLP's fees, as described above.

Accepted by: _____
                Royce J. Hassell, Debtor-in-Possession
                Chapter 11 Bankruptcy Estate of Royce J. Hassell

Date: __2/21/22_____

# Baker Tilly US, LLP
# Consulting Standard Terms and Conditions

**1. Services.** It is understood and agreed that while Baker Tilly US, LLP's ("Baker Tilly") services may include advice and recommendations, all decisions in connection with the use thereof shall be the responsibility of, and made by the Client. References herein to "Client" shall refer collectively to all of the entities on whose behalf services are being rendered as identified in the engagement letter (the "Engagement Letter") to which these Standard Terms and Conditions are attached, including but not limited to the entity(s) responsible for paying Baker Tilly's fees. "Attorney" shall refer collectively to the law firm or firms retaining Baker Tilly on behalf of Client and/or the law firm or firms representing Client with regard to the matter for which Baker Tilly is retained. The Engagement Letter and these Terms and Conditions shall be collectively referred to as the "Agreement."

**2. Not Assurance Services.** Baker Tilly's work generally will involve the financial analyses of accounting books and records and other financial information/ documents. Our Engagement does not include an audit, review, or compilation in accordance with Generally Accepted Auditing Standards ("GASS") of any financial statements.

**3. Privilege.** All communications between Baker Tilly and Attorney, either oral or written, as well as any materials or information developed or received by us pursuant to this Engagement, are intended to be protected by all applicable legal privileges, including attorney–client and work–product privileges, and therefore, will be treated as confidential. If access to any of the materials in Baker Tilly's possession relating to this matter is sought by a third-party, we will promptly notify Attorney of such action and cooperate with Attorney and Client concerning our response thereto. In the event that any person or entity serves a subpoena upon Baker Tilly for testimony or the production of documents or records relating to or arising from any work performed for Client in connection with this Engagement, Client shall reimburse Baker Tilly for all time, costs, and attorneys' fees incurred in responding to such subpoena(s).

**4. Payment of Invoices.** Client agrees to pay properly submitted invoices within thirty (30) days of the invoice date or such other due date as may be indicated in the Engagement Letter. Baker Tilly shall have the right to halt or terminate entirely its services under the Agreement until payment is received on past due invoices. Baker Tilly may impose interest at a rate equal to one percent (1%) per month on any outstanding balance that remains unpaid for more than 30 days after issuance of the invoice(s). In the event that collection procedures are required, Client shall pay all expenses of collection and any attorneys' fees and costs actually incurred by Baker Tilly, including costs of Baker Tilly personnel at their then published rate, in connection with such collection efforts, whether or not suit or arbitration is filed thereon.

**5. Taxes.** All fees, charges, and other amounts payable to Baker Tilly under the Agreement do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on Baker Tilly's net income or taxes arising from the employment or independent contractor relationship between Baker Tilly and its personnel.

**6. Term of Engagement**

a. Commencement. Baker Tilly will commence work at your direction (written or oral). If the Client or Attorney requests that we begin work on the Engagement, but we have not received the fully executed Engagement Letter and any requested retainer, Attorney and Client agree that they accept the terms of the Engagement Letter as stated herein. We reserve the right to cease rendering services if the fully executed Engagement Letter is not received by us within 10 days of the date of this Engagement Letter. Client will be responsible for all fees and expenses incurred prior to our stopping work.

b. Termination. Unless terminated sooner in accordance with the terms set forth below, the Agreement shall terminate on the completion of Baker Tilly's services thereunder. In addition, either party may terminate the Agreement at any time by giving written notice to the other party not less than ten (10) calendar days (or as otherwise provided in the Engagement Letter) before the effective date of termination. Baker Tilly shall be paid in full for all services rendered or expenses incurred as of the date of termination. Further, we may terminate the Engagement in the event that: (i) we are asked to reach conclusions with which we disagree; (ii) critical information previously unavailable becomes known to us that impacts our conclusions; (iii) information that was expected by us becomes unavailable; (iv) a party or parties to the litigation hire alternate counsel, which makes continued involvement in the litigation inappropriate due to conflicts of interest; and/or (v) Client fails to pay our fees and expenses on a timely basis. Client will be responsible for all fees and expenses incurred prior to termination.

**7. Ownership.**

a. Baker Tilly Property. Baker Tilly has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Agreement, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques, models, templates; software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods of operation of systems (collectively, the "Baker Tilly Property"). Baker Tilly retains all ownership rights in the Baker Tilly Property. Client shall acquire no right or interest in such property. In addition, Baker Tilly shall be free to provide services of any kind to any other party as Baker Tilly deems appropriate, and may use the Baker Tilly Property to do so. Baker Tilly acknowledges that Baker Tilly Property shall not include any of Client's confidential information or tangible or intangible property and Baker Tilly shall have no ownership rights in such property.

**Baker Tilly US, LLP**
**Consulting Standard Terms and Conditions (cont.)**

b. <u>Ownership of Deliverables</u>. All documents, materials or information of any kind created by Baker Tilly in connection with this Engagement, including, without limitation, any written reports, memoranda, work papers or status summaries, are work product (collectively, "<u>Work Product</u>"). All Work Product shall be owned and maintained by Baker Tilly. It is agreed that all Work Product and all other working papers and other documents prepared by Baker Tilly pursuant to this Engagement will be maintained as confidential materials and will not be disclosed to third parties without the Client's consent, except as may be required by law, regulation or judicial or administrative process. Baker Tilly agrees to notify the Client promptly of any of the following events: (i) a request by anyone to examine, inspect or copy any Work Product or other working papers, documents or records relating to this Engagement, unless prohibited by law; or (ii) any attempt to serve, or the actual service of, any court order, subpoena or summons upon Baker Tilly that requires the production of such documents or records.

c. <u>Use of Work Product</u>. Attorney and Client agrees not to use Baker Tilly Work Product in connection with any other litigated matter, nor to share/publish our Work Product with any third-party without our express written consent.

**8.     Limitation on Warranties.**

a. <u>Admissibility of Testimony</u>. Attorney and Client acknowledge that it is common for litigants to challenge the basis, experience and credentials of opposition experts. The admissibility of testimony is a legal matter and we make no warranties that our testimony or work product will be admitted into evidence by the court or trier of fact. As a condition to the release of any opinions to the opposition and the rendering of any testimony by us, Attorney and Client will review the facts and circumstances surrounding our work and opinions and agree that, in fact, Baker Tilly was retained because of the experience and credentials of its professionals. Further, Attorney and Client will review and agree, prior to the release of any expert opinion and the rendering of any expert testimony, that the anticipated testimony has a basis in fact and such testimony is both relevant and reliable. Attorney, as counsel, retains sole responsibility for assessing other factors that may bear upon the question of admissibility. As such, should testimony be excluded as a result of any evidentiary challenge (e.g., a Daubert or similar challenge), Baker Tilly shall be held harmless for any damages, losses, or negative results in the Matter unless incurred because of willful misconduct on the part of Baker Tilly. Further, even if testimony is excluded, any and all professional fees and expenses are still due and owing upon presentation of Baker Tilly's invoice(s) and Client is not relieved of liability for such fees and expenses

b. <u>Services Agreement</u>. **This is a services Engagement. Baker Tilly warrants that it will perform services under the agreement in good faith, with qualified personnel in a competent and workmanlike manner. Baker Tilly disclaims all other warranties, either express or implied, including, without limitation, warranties of merchantability and fitness for a particular purpose.**

**9.     Limitation on Damages.** The liability (including attorneys' fees and all other costs) of Baker Tilly and its present or former partners, owners, principals, agents or employees related to any claim for damages relating to the services performed under this Agreement shall not exceed the fees paid to Baker Tilly for the portion of the work to which the claim relates, except to the extent finally determined to have resulted from the willful misconduct or fraudulent behavior of Baker Tilly relating to such services. This limitation of liability is intended to apply to the full extent allowed by law, regardless of the grounds or nature of any claim asserted, including the negligence of either party. Additionally, in no event shall any party be liable for any lost profits, lost business opportunity, lost data, consequential, special, incidental, exemplary or punitive damages delays, or interruptions arising out of or related to this Agreement even if the other party has been advised of the possibility of such damages. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense or loss, whether in contract, statute, tort or otherwise.

**10.    Indemnification.**

a. Client will indemnify, defend and hold harmless Baker Tilly, its partners, owners, affiliates, principals, members, managers, officers, directors, employees, subcontractors, attorneys, professionals, representatives and agents (collectively, the "<u>Indemnified Parties</u>" or, individually, the "<u>Indemnified Party</u>") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including, without limitation, the costs and expenses for counsel or others (including employees of Baker Tilly, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation, in which any Indemnified Party is a party, as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Agreement; provided, however, that such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.

b. No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) for or in connection with the Engagement or this Agreement except for any liabilities and related expenses incurred by Client that are finally judicially determined to have resulted from the willful misconduct or gross negligence of such Indemnified Party. In no event will any Indemnified Party be liable for incidental or consequential damages even if such Indemnified Party has been advised of the possibility of such damages.

c. Client acknowledges and agrees that any advice, recommendations, information or Work Product provided to Client (through Attorney or otherwise) by Baker Tilly in connection with this Engagement is for the confidential use

**Baker Tilly US, LLP**
**Consulting Standard Terms and Conditions (cont.)**

of Client only and, (except as otherwise required by law or permitted by the Agreement), Client will not disclose or permit access to such advice, recommendations, information or Work Product to any third party (other than Attorney) or summarize or refer to such advice, recommendations, information or Work Product or to Baker Tilly's Engagement without, in each case, Baker Tilly's prior written consent. Client is responsible for all information it provides to third parties directly, or indirectly through Baker Tilly, and agrees to clearly acknowledge such responsibility in writing to all such third parties. In furtherance of the foregoing, Client will indemnify, defend and hold harmless the Indemnified Parties from and against any and all liabilities suffered by or asserted against the Indemnified Parties in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon Baker Tilly's advice, recommendations, information or Work Product as a result of Client's use or disclosure of such advice, recommendations, information or Work Product.

d.     The Indemnified Parties shall promptly notify Client of any claim for which they seek indemnification provided that any failure to notify the Client or timely notify the Client shall not impact, in any way, the applicability of the indemnification provisions contained herein.

**11.    Cooperation; Use of Information.**
a.     Client agrees to cooperate with Baker Tilly in the performance of the services under the Agreement and shall provide Baker Tilly with timely access to and use of Client's personnel, facilities, equipment, data and information or such other personnel, facilities, equipment, data and information to the extent necessary for Baker Tilly to perform the services under the Agreement. The Engagement Letter may set forth additional obligations of Client in connection with the Engagement. As requested by Baker Tilly, Client acknowledges that Client's failure to assign Client personnel having skills commensurate with their role with respect to this Engagement could adversely affect Baker Tilly's ability to provide the services under the Agreement.

b.     Client acknowledges and agrees that Baker Tilly may, in performing its obligations pursuant to this Agreement, use data, material and other information furnished by Client without any independent investigation or verification and that Baker Tilly shall be entitled to rely upon the accuracy and completeness of such information in performing the services under the Agreement.

c.     To the extent the Services require Baker Tilly receive personal data or personal information from Client, Baker Tilly may process any personal data or personal information, as those terms are defined in applicable privacy laws, in accordance with the requirements of the applicable privacy law relevant to the processing in providing services hereunder. Applicable privacy laws may include any local, state, federal, or international laws, standards, guidelines, policies, or regulations governing the collection, use, disclosure, sharing, or other processing of personal data or personal information with which Baker Tilly or its Clients must comply. Such privacy laws may include (i) the EU General Data Protection Regulation 2016/679 (GDPR); (ii) the California Consumer Privacy Act of 2018 (CCPA); and/or (iii) other laws regulating marketing communications, requiring security breach notification, imposing minimum security requirements, requiring the secure disposal of records, and other similar requirements applicable to the processing of personal data or personal information. Baker Tilly is acting as a Service Provider/Data Processor in relation to Client personal data and personal information, as those terms are defined respectively under the CCPA/GDPR. Client is responsible for notifying Baker Tilly of any data privacy laws the data provided to Baker Tilly is subject to and Client represents and warrants it has all necessary authority (including any legally required consent from data subjects) to transfer such information and authorize Baker Tilly to process such information in connection with the Services described herein.

d.     Baker Tilly has established information security related operational requirements that support the achievement of our information security commitments, relevant information security related laws and regulations, and other information security related system requirements. Such requirements are communicated in Baker Tilly's policies and procedures, system design documentation, and contracts with customers. Information security policies have been implemented that define our approach to how systems and data are protected. Client is responsible for providing timely written notification to Baker Tilly of any additions, changes, or removals of access for Client personnel to Baker Tilly provided systems or applications. If Client becomes aware of any known or suspected information security or privacy related incidents or breaches related to this agreement, Client should timely notify Baker Tilly via email at dataprotectionofficer@bakertilly.com.

e.     Baker Tilly does not treat de-identified data or aggregate consumer information as personal data or personal information, and we reserve the right to convert Client personal data or personal information into de-identified data or aggregate consumer information for our own purposes. As a benefit of benchmarking your Company to others in your industry, you allow us to enter your confidential accounting and/or financial data into the third party benchmarking software that we utilize. By signing this Engagement Letter, you expressly authorize us to make such disclosure of your confidential accounting and/or financial data, as we may elect within our discretion, with the understanding that, in doing so, you will not be specifically identified.

**12.    Force Majeure.** Neither Client nor Baker Tilly shall be liable for any delays resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence or any law, order or requirement of any governmental agency or authority.

**13.    Limitation on Actions**. No action, regardless of form, arising out of or relating to this Engagement, may be

**Baker Tilly US, LLP**
**Consulting Standard Terms and Conditions (cont.)**

brought by Client more than one year after the cause of action has accrued.

**14. Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of or in the name of, the other.

**15. Confidentiality.**

a. "Confidential Information" means all documents, software, reports, data, records, forms and other materials (including without limitation Work Product as defined herein) obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") in the course of performing the services under the Agreement: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (i) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (ii) is or becomes publicly known through no wrongful act of the Receiving Party; (iii) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; or (iv) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

b. The Receiving Party shall not use or disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent required pursuant to a statutory or regulatory provision or court order or to fulfill professional obligations and standards.

c. Each party shall be deemed to have met its nondisclosure obligations under this Paragraph 15 as long as it exercises the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

d. If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall provide prompt written notice, unless legally prohibited, to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent permitted by law, subject to any protective order or the like that may have been entered in the matter.

e. Notwithstanding anything to the contrary set forth herein, no provision in the Agreement is or is intended to be construed as a condition of confidentiality within the meaning of Internal Revenue Code sections 6011, 6111, 6112 or the regulations thereunder. Client (and each employee, representative or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this Engagement that reduces or defers Federal tax and all materials of any kind (including opinions or other tax analyses) that are provided to Client relating to such tax treatment and tax structure.

**16. Document Retention.**

a. It is not our practice to retain work papers, e-mails, notes or data files that have been updated or superseded, unless shared with you or a third-party working with you. However, we will retain certain copies of e-mails, analyses, draft reports, or other materials provided by Attorney, Client or any third party, or provided by us to Attorney, Client or any third-party. Any requests for other document retention policies must be made in writing at the time of the execution of the Engagement Letter.

b. We may maintain copies of all our work product and related materials for our files. If we choose not to retain copies, Attorney and Client will provide access to the work papers upon reasonable notice. Baker Tilly has a file retention policy requiring the destruction of all client files seven years after each case is "resolved" and/or appeals have been completed as it pertains to this type of Engagement, unless otherwise dictated by a valid protective order issued by an appropriate court of law. Baker Tilly makes no representation of retention of files after this date, and shall have no liability for not retaining information or data after such date, regardless of any obligation of Attorney or Client to maintain information or data beyond that time, and regardless of whether there may be important tax or financial information in the files that will be destroyed. Both Attorney and Client will have access to our files and may request all or part of our records to be copied at their expense, or returned prior to destruction so long as all fees and expenses have been paid in full. By signing the Engagement Letter, Attorney and Client acknowledge their understanding of, and agree to, Baker Tilly's retention policy.

**17. Survival.** The provisions herein that, by its nature, including without limitation provisions relating to limitations on liability and indemnification, should survive the termination of the Engagement are intended to and do survive the termination of the Engagement.

**18. Assignment.** Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld. However, Baker Tilly may use subcontractors to provide services under the Agreement.

**19. Severability**. In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected and each such term and provision of this

**Baker Tilly US, LLP**
**Consulting Standard Terms and Conditions (cont.)**

Agreement shall be valid and enforceable to the fullest extent permitted by law.

**20.    Governing Law.** The Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without regard to the conflict of laws provisions thereof.

**21.    Arbitration.**

a.    Except for disputes related to confidentiality or intellectual property rights, all disputes and controversies between the parties hereto of every kind and nature arising out of or in connection with this Agreement as to the existence, construction, validity, interpretation or meaning, performance, nonperformance, enforcement, operation, breach, continuation, or termination of this Agreement shall be resolved as set forth in this Section using the following procedure: In the unlikely event that differences concerning the Services or fees should arise that are not resolved by mutual agreement, both parties agree to attempt in good faith to settle the dispute by engaging in mediation administered by the American Arbitration Association ("AAA") under its mediation rules for professional accounting and related services disputes before resorting to litigation or any other dispute-resolution procedure. Each party shall bear their own expenses from mediation and the fees and expenses of the mediator shall be shared equally by the parties. If the dispute is not resolved by mediation, then the parties agree that the dispute or claim shall be settled by binding arbitration. The arbitration proceeding shall take place in the city in which the Baker Tilly office providing the relevant services is located, unless the parties mutually agree to a different location. The proceeding shall be governed by the provisions of the Federal Arbitration Act ("FAA") and will proceed in accordance with the then current Arbitration Rules for Professional Accounting and Related Disputes of the AAA, except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitrator. The arbitrator will be selected from AAA, JAMS, the Center for Public Resources, or any other internationally or nationally-recognized organization mutually agreed upon by the parties. Potential arbitrator names will be exchanged within fifteen (15) days of the parties' agreement to settle the dispute or claim by binding arbitration, and arbitration will thereafter proceed expeditiously. The arbitration will be conducted before a single arbitrator, experienced in accounting and financial advisory matters. The arbitrator shall have no authority to award non-monetary or equitable relief and will not have the right to award punitive damages. The award of the arbitration shall be in writing and shall be accompanied by a well-reasoned opinion. The award issued by the arbitrator may be confirmed in a judgment by any federal or state court of competent jurisdiction. Each party shall be responsible for their own costs associated with the arbitration, except that the costs of the arbitrator shall be equally divided by the parties. The arbitration proceeding and all information disclosed during the arbitration shall be maintained as confidential, except as may be required for disclosure to professional or regulatory bodies or in a related confidential arbitration. In no event shall a demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim would be barred under the applicable statute of limitations.

b.    Because a breach of any the provisions of this Agreement concerning confidentiality or intellectual property rights will irreparably harm the non-breaching party, Client and Baker Tilly agree that if a party breaches any of its obligations thereunder, the non-breaching party shall, without limiting its other rights or remedies, be entitled to seek equitable relief (including, but not limited to, injunctive relief) to enforce its rights thereunder, including without limitation protection of its proprietary rights. The parties agree that the parties need not invoke the mediation procedures set forth in this section in order to seek injunctive or declaratory relief.

**22.    Miscellaneous**.

a.    Sarbanes-Oxley. In accepting this Engagement, Client acknowledges that completion of this Engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX"). This Engagement shall not be construed to support Client's responsibilities under Section 404 of SOX requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

b.    Electronic Communication. Baker Tilly may communicate with Client by electronic mail or otherwise transmit documents in electronic form during the course of this Engagement. Client accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that Baker Tilly transmits to Client.

c.    Notices. Any notices given pursuant to this Agreement shall be in writing, delivered to the address (es) set forth in the Engagement Letter and shall be considered given when received.

d.    Entire Agreement. This Agreement, including the Engagement Letter and all Exhibits, constitute the entire agreement between Baker Tilly and Client with respect to this Engagement and supersede all other oral and written representation, understandings or agreements relating to this Engagement.

e.    Failure to Enforce Not a Waiver. The failure of either party at any time to enforce any of the provisions of this Agreement will in no way be construed as a waiver of such provisions and will not affect the right of party thereafter to enforce each and every provision thereof in accordance with its terms.

f.    Baker Tilly International Limited. Baker Tilly US, LLP is an independent member of Baker Tilly

**Baker Tilly US, LLP**
**Consulting Standard Terms and Conditions (cont.)**

International. Baker Tilly International Limited is an English company. Baker Tilly International provides no professional services to clients. Each member firm is a separate and independent legal entity and each describes itself as such. Baker Tilly US, LLP is not Baker Tilly International's agent and does not have the authority to bind Baker Tilly International or act on Baker Tilly International's behalf. None of Baker Tilly International, Baker Tilly US, LLP, nor any of the other member firms of Baker Tilly International has any liability for each other's acts or omissions. The name Baker Tilly and its associated logo is used under license from Baker Tilly International Limited.